# Exhibit A

**ORIGINAL**

1 **LARSON O'BRIEN LLP**
ROBERT C. O'BRIEN (SBN 154372)
2 R.C. HARLAN (SBN 234279)
555 South Flower Street, Suite 4400
3 Los Angeles, CA 90071
Telephone: 213.436.4888
4 Facsimile: 213.623.2000
Email: robrien@larsonobrienlaw.com
5
**WHEELER TRIGG O'DONNELL LLP**
6 MICHAEL T. WILLIAMS (admitted *pro hac vice*)
370 Seventeenth Street
7 Suite 4500
Denver, Colorado 80202
8 Tel: (303) 244-1800
Fax: (303) 244-1879
9 Email: williams@wtotrial.com

10 Attorneys for Plaintiffs LA PARK LA BREA A LLC,
LA PARK LA BREA B LLC, LA PARK LA BREA C LLC,
11 and AIMCO VENEZIA, LLC

**FILED**
Superior Court Of California
County Of Los Angeles

**JUN 06 2017**

Sherri R. Carter, Executive Officer/Clerk
By _Cristina Grijalva_, Deputy
Cristina Grijalva

12

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13

**FOR THE COUNTY OF LOS ANGELES**

14

| | |
|---|---|
| 15 LA PARK LA BREA A LLC, LA PARK LA BREA B LLC, LA PARK LA BREA C LLC, and AIMCO VENEZIA, LLC, ) ) ) ) | Case No: BC650575 |
| 16 | **[CLASS ACTION]** |
| 17 Plaintiffs, ) ) | Assigned to the Honorable Frederick C. Shaller, Dept. 46 |
| 18 vs. ) | |
| 19 AIRBNB INC. and AIRBNB PAYMENTS, INC., ) ) ) | **FIRST AMENDED COMPLAINT:** |
| 20 Defendants. ) ) | 1. **Tortious Interference With Contract;** |
| 21 ) ) | 2. **California Business & Professionals Code Section 17200,** *et seq.***;** |
| 22 ) | 3. **Unjust Enrichment;** |
| 23 ) ) | 4. **Intentional Interference With Prospective Economic Advantage;** |
| 24 ) | 5. **Negligent Interference With Prospective Economic Advantage;** |
| 25 ) ) | 6. **Trespass;** |
| 26 ) | 7. **Aiding And Abetting Trespass; and** |
| 27 ) | 8. **Private Nuisance** |
| 28 ) ) | **DEMAND FOR JURY TRIAL** |
| | Complaint Filed: 2/15/2017 |

1       Plaintiffs, LA Park LA Brea A LLC, LA Park LA Brea B LLC, LA Park LA Brea C LLC,

2 and AIMCO Venezia, LLC (collectively, "Plaintiffs"), individually and, as to certain claims for

3 relief on behalf of others similarly situated, for their First Amended Class Action Complaint against

4 Defendants Airbnb, Inc., Airbnb Payments, Inc., and DOES 1-10, state as follows:

5 **THE PARTIES**

6     1.     Plaintiff LA Park LA Brea A LLC, ("LaBrea A") is, and at all times herein mentioned

7 was, a Delaware limited liability company with offices in Denver, Colorado.  LaBrea A owns and

8 operates apartment buildings with 521 units located at 6220 W. 3rd St., 6240 W. 3rd St., 6260 W.

9 3rd. St. and 6280 W. 3rd St., Los Angeles CA 90036 and commonly known as The Palazzo at Park

10 La Brea.

11     2.     Plaintiff LA Park LA Brea B LLC, ("LaBrea B") is, and at all times herein mentioned

12 was, a Delaware limited liability company with offices in Denver, Colorado. LaBrea B owns and

13 operates apartment buildings with 611 apartments located at 6220 W. 3rd St., 348 S. Hauser Blvd.,

14 356 S. Hauser Blvd., 342 S. Hauser Blvd., 340 S. Hauser Blvd., and 344 S. Hauser Blvd., Los

15 Angeles CA 90036 and commonly known as The Palazzo East at Park La Brea.

16     3.     Plaintiff LA Park LA Brea C LLC, ("LaBrea C") is, and at all times herein mentioned

17 was, a Delaware limited liability company with offices in Denver, Colorado. LaBrea C owns and

18 operates apartment buildings with 250 units located at 5555 W. 6th St., 5557 W. 6th St., 5553 W. 6th

19 St., and 5551 W. 6th St. Los Angeles CA, Los Angeles, CA 90036 and commonly known as The

20 Villas at Park La Brea.

21     4.     Plaintiff AIMCO Venezia, LLC ("Venezia") is, and at all times herein mentioned

22 was, a Delaware limited liability company with its offices in Denver, Colorado. Venezia owns and

23 operates apartment buildings with 795 units located at 1002 Frederick Street, 1008 Frederick Street,

24 1012 Frederick Street, 1032 Frederick Street, 1042 Frederick Street, 1056 Frederick Street, 1070

25 Frederick Street, 973 Elkhart Place, 977 Elkhart Place, 970 Elkhart Place, 974 Elkhart Place, 978

26 Elkhart Place, 1000 Doreen Place, 1002 Doreen Place, 1004 Doreen Place, 1006 Doreen Place, 1008

27 Doreen Place, 1010 Doreen Place, 1012 Doreen Place, 1014 Doreen Place, 1018 Doreen Place, 1020

28 Doreen Place, 1022 Doreen Place, 1021 Doreen Place, 1023 Doreen Place, 1027 Doreen Place, 1033

FIRST AMENDED CLASS ACTION COMPLAINT

Doreen Place, 1037 Doreen Place, 1032 Doreen Place, 1034 Doreen Place, 1036 Doreen Place, 1036 Doreen Place, 1040 Doreen Place, 1042 Doreen Place, 1044 Doreen Place, 1048 Doreen Place, 1050 Doreen Place, 1052 Doreen Place, 1054 Doreen Place, 1056 Doreen Place, 1058 Doreen Place, 960 Elkland Place, 962 Elkland Place, 964 Elkland Place, 966 Elkland Place, 968 Elkland Place, 972 Elkland Place, 974 Elkland Place, 976 Elkland Place, 978 Elkland Place, 980 Elkland Place, 971 Elkland Place, 973 Elkland Place, 979 Elkland Place, 1002 Elkgrove Ave, 1006 Elkgrove Ave, 1008 Elkgrove Ave, 1010 Elkgrove Ave, 1012 Elkgrove Ave, 1016 Elkgrove Ave, 1018 Elkgrove Ave, 1020 Elkgrove Ave, 1022 Elkgrove Ave, 1026 Elkgrove Ave, 1034 Elkgrove Ave, 1036 Elkgrove Ave, 1038 Elkgrove Ave, 1040 Elkgrove Ave, 1042 Elkgrove Ave, 1046 Elkgrove Ave, 1048 Elkgrove Ave, 1050 Elkgrove Ave, 1052 Elkgrove Ave, 1054 Elkgrove Ave, 1056 Elkgrove Ave, 1058 Elkgrove Ave, 1060 Elkgrove Ave, 1062 Elkgrove Ave, 1064 Elkgrove Ave, 1066 Elkgrove Ave, 1068 Elkgrove Ave, 1070 Elkgrove Ave, 1072 Elkgrove Ave, 1074 Elkgrove Ave, 1076 Elkgrove Ave, 1080 Elkgrove Ave, 1082 Elkgrove Ave, 1084 Elkgrove Ave, 1086 Elkgrove Ave, 1088 Elkgrove Ave, 1090 Elkgrove Ave, 1092 Elkgrove Ave, 1003 Elkgrove Ave, 1007 Elkgrove Ave, 1009 Elkgrove Ave, 1011 Elkgrove Ave, 1013 Elkgrove Ave, 1017 Elkgrove Ave, 1019 Elkgrove Ave, 1021 Elkgrove Ave, 1023 Elkgrove Ave, 1025 Elkgrove Ave, 1027 Elkgrove Ave, 1029 Elkgrove Ave, 1033 Elkgrove Ave, 1035 Elkgrove Ave, 1037 Elkgrove Ave, 1039 Elkgrove Ave, 1041 Elkgrove Ave, 1049 Elkgrove Ave, 1051 Elkgrove Ave, 1053 Elkgrove Ave, 1055 Elkgrove Ave, 1057 Elkgrove Ave, 1061 Elkgrove Ave, 1065 Elkgrove Ave, 1067 Elkgrove Ave, 1069 Elkgrove Ave, 1073 Elkgrove Ave, 1077 Elkgrove Ave, 934 Lake Street , 936 Lake Street, 942 Lake Street, 948 Lake Street, 956 Lake Street, 982 Lake Street, 1000 Lake Street, 1008 Lake Street, 1016 Lake Street, 1020 Lake Street, 1030 Lake Street, 1034 Lake Street, 1038 Lake Street, 1110 Lake Street, 1114 Lake Street, 1118 Lake Street, 1120 Lake Street, 1130 Lake Street, 1134 Lake Street, 1138 Lake Street, 1403 Elkgrove Circle, 1405 Elkgrove Circle, 1407 Elkgrove Circle, 1411 Elkgrove Circle, 1413 Elkgrove Circle, 1415 Elkgrove Circle, 1417 Elkgrove Circle, 1419 Elkgrove Circle, 1421 Elkgrove Circle, 1423 Elkgrove Circle, 1425 Elkgrove Circle, 1427 Elkgrove Circle, 1431 Elkgrove Circle, 1433 Elkgrove Circle, 1435 Elkgrove Circle, 1437 Elkgrove Circle, 1402 Elkgrove Circle, 1404 Elkgrove Circle, 1406 Elkgrove Circle, 1410 Elkgrove Circle, 1412 Elkgrove

FIRST AMENDED CLASS ACTION COMPLAINT

1  Circle, 1414 Elkgrove Circle, 1416 Elkgrove Circle, 1418 Elkgrove Circle, 1422 Elkgrove Circle,

2  1424 Elkgrove Circle, 1426 Elkgrove Circle, 1430 Elkgrove Circle, 1432 Elkgrove Circle, 1434

3  Elkgrove Circle, 1438 Elkgrove Circle, 1440 Elkgrove Circle, 1442 Elkgrove Circle, 1444 Elkgrove

4  Circle, 1446 Elkgrove Circle, 1505 Penmar Ave, 1507 Penmar Ave, 1509 Penmar Ave, 1511

5  Penmar Ave, 1513 Penmar Ave, 1515 Penmar Ave, 1521 Penmar Ave, 1523 Penmar Ave, 1525

6  Penmar Ave, 1527 Penmar Ave, 1529 Penmar Ave, 1531 Penmar Ave, 1533 Penmar Ave, 1601

7  Penmar Ave, 1603 Penmar Ave, 1605 Penmar Ave, 1607 Penmar Ave, 1609 Penmar Ave, 1611

8  Penmar Ave, 1613 Penmar Ave, 1621 Penmar Ave, 1623 Penmar Ave, 1625 Penmar Ave, 1627

9  Penmar Ave, 1629 Penmar Ave, 1631 Penmar Ave, 1633 Penmar Ave, 1701 Penmar Ave, 1703

10  Penmar Ave, 1705 Penmar Ave, 1707 Penmar Ave, 1709 Penmar Ave, 1711 Penmar Ave, 1713

11  Penmar Ave, 1721 Penmar Ave, 1723 Penmar Ave, 1725 Penmar Ave, 1727 Penmar Ave, 1729

12  Penmar Ave, 1731 Penmar Ave, 1733 Penmar Ave, 1741 Penmar Ave, 1743 Penmar Ave, 1745

13  Penmar Ave, 1747 Penmar Ave, 1749 Penmar Ave, 1751 Penmar Ave, and 1753 Penmar Ave,

14  Venice, CA 90291  and commonly known as Lincoln Place.

15      5.      Defendant Airbnb, Inc. is a Delaware corporation with its principal executive offices

16  in San Francisco, California. It maintains a website that provides an online marketplace for people to

17  list, explore, and book both short-term and long-term housing accommodations.

18      6.      Defendant, Airbnb Payments, Inc. is a Delaware corporation with its principal

19  executive offices in San Francisco, California. Airbnb Payments, Inc. collects and processes

20  payments in connection with bookings obtained through Airbnb, Inc.'s website, including payments

21  of taxes from "guests" that Airbnb Payments, in turn, pays to tax authorities, such as various

22  counties in California.

23      7.      Each of the fictitiously named Defendants sued herein as Does 1 through 10

24  (hereinafter "DOES 1-10"), inclusive, is in some manner responsible and legally liable for the

25  events, actions, and circumstances alleged in this Complaint, and is liable to Plaintiffs for the

26  damages and other relief to which Plaintiffs are entitled. Plaintiffs are presently unaware of the true

27  names and capacities of DOES 1-10, and will amend this Complaint to add the true names and

28  capacities of DOES 1-10 when they have been ascertained.

4

FIRST AMENDED CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

8.      Airbnb, Inc. and Airbnb Payments, Inc., and DOES 1-10 (collectively, "Airbnb") are subject to the jurisdiction of this Court because they operate, conduct, engage in, and carry on business or business ventures in California and because they committed tortious acts within or directed to California.

9.      Venue is proper in this County pursuant to California Code of Civil Procedure §392(a) because the real property that is the subject of this litigation is located in this County, or in the alternative, pursuant to California Code of Civil Procedure §395.5 as the liability arises in this County.

## GENERAL ALLEGATIONS

**A.      Airbnb: An Overview**

10.      Airbnb is an alternative accommodations company that operates an Internet website with the domain name www.airbnb.com. Airbnb is in the business of providing rental brokerage and booking services for short-term rental transactions between owners or renters of property and prospective tourists or transient users of property.

11.      Airbnb facilitates short-term rental transactions. According to its website, "Airbnb is a trusted community marketplace for people to list, discover, and book unique accommodations" at any price point, in more than 65,000 cities across 191 countries. Airbnb boasts that it "is the easiest way for people to monetize their space and showcase it to an audience of millions." Airbnb currently advertises over 3 million listings worldwide and has facilitated rentals for more than 150 million guests.

12.      Airbnb brokers short- and long-term leases between persons seeking to lease or sublease their space ("hosts") and persons desiring to book accommodations ("guests"). To become a host, Airbnb requires users to create an Internet listing for the available space. Airbnb requires the prospective host to include certain information (*e.g.*, home type, room type, number of guests the rental will accommodate, location, description, at least one photo, pricing, etc.) and to provide certain personal information (name, email, and phone number). The prospective host then finalizes his or her listing by clicking the "sign up" button on Airbnb's website, which also signifies the host's

5

1  "agree[ment] to Airbnb's Terms of Service, Privacy Policy, Guest Refund Policy, and Host

2  Guarantee Terms." The host's listing is then viewable on Airbnb's rental database, which is made

3  publicly available to guests looking to book accommodations.

4       13.    Airbnb does not charge fees for publishing rental listings.

5       14.    Instead, like a traditional rental broker, Airbnb collects a percentage commission

6  from both hosts and guests for all accommodations booked through its website. Thus, Airbnb solicits

7  prospective lessors and tenants and collects both commissions and rent from the lease of real

8  property.

9       15.    Airbnb does considerably more than simply contract with prospective lessors and

10  tenants to facilitate short-term rental transactions. In addition to acting as a rental broker, Airbnb

11  provides a range of services and guarantees to hosts and guests in order to encourage and facilitate

12  listings and bookings from its global audience.

13       16.    Boasting that Airbnb "is built on trust," Airbnb's website advertises that "Airbnb

14  helps make sharing easy, enjoyable, and safe. We verify personal profiles and listings, maintain a

15  smart messaging system so hosts and guests can communicate with certainty, and manage a trusted

16  platform to collect and transfer payments." Elsewhere, Airbnb states that "[w]e require verified

17  information from both hosts and guests."

18       17.    Airbnb also markets itself as a dependable resource for its hosts: "From getting your

19  home ready and choosing a price, to understanding your responsibilities under local laws — we've

20  got tools and resources for you." For instance, Airbnb offers free professional photography to hosts

21  "[t]o make it easier for hosts to get access to beautiful, professional photographs" that can enhance

22  their listings and maximize appeal. Airbnb also "take[s] care of calculating, collecting, and remitting

23  local occupancy tax on [hosts'] behalf" in some jurisdictions. On information and belief, since

24  August 2016, Airbnb has collected applicable lodging taxes in Los Angeles County and remitted

25  them to the appropriate taxing authorities.

26       18.    Airbnb offers algorithms—which it advertises as its "Smart Pricing" tool—to help

27  prospective lessors set booking prices by automatically adjusting prices to match demand.

28

FIRST AMENDED CLASS ACTION COMPLAINT

19.     Further, Airbnb assures hosts that it has "got your back" by "plan[ning] ahead to protect you and your home." Airbnb provides every host with a "$1,000,000 Host Guarantee" at no additional cost, as well as "Host Protection Insurance" that is automatically included as part of a host's Airbnb account. According to Airbnb's website, "[t]he Airbnb Host Guarantee protects hosts in the unlikely event of property damage to their listing, and the Host Protection Insurance Program provides coverage for eligible third-party claims against Airbnb, hosts, and landlords (as additional insureds) related to both property damage and bodily injury."

20.     Airbnb also provides a "Guest Refund Policy" that offers to reimburse guests the amount paid through Airbnb if the guest experiences a "travel issue," such as the host's failure to provide reasonable access to or the host's material misrepresentation about the accommodation.

21.     Airbnb reserves the right, at any time and without prior notice, to remove or disable access to any listing for any reason, including listings that Airbnb, in its "sole discretion," considers to be "objectionable for any reason, or in violation of the Terms of Service." Airbnb recently exercised this right by removing a listing in Miami after receiving complaints from a homeowners' association that a tenant in the neighborhood was essentially running an illegal hostel, renting out beds for as little as $28 per night. Responding to the complaints, Airbnb stated that it "has no tolerance for hosts who abuse the trust of their neighbors and within 24 hours of this issue being brought to our attention, we removed the listing from our platform."[1]

22.     Airbnb has the ability to "ban" hosts or guests who violate Airbnb's standards and policies. It has exercised this right when the actions of a host or guest run afoul of a core pillar of Airbnb's image, such as its anti-discrimination policy.[2]

---

[1] David Smiley, *When Airbnb goes wrong: A Miami story*, Miami Herald, Apr. 23, 2017 (last visited Apr. 24, 2017).

[2] *See, e.g.*, Amy B. Wang, *'One word says it all. Asian': Airbnb host reportedly leaves a guest stranded because of her race*, Wash. Post, Apr. 7, 2017, available at https://www.washington post.com/news/business/wp/2017/04/07/one-word-says-it-all-asian-airbnb-host-reportedly-leaves-guest-stranded-because-of-her-race/?utm_term=.5bc3a5a1feff&wpisrc=nl_most&wpmm=1 (last visited Apr. 20, 2017).

23.     Aware of growing concerns among property owners and residential communities regarding illegal subleasing activity and disruptive guest behavior, Airbnb recently launched a "Friendly Buildings Program," a pilot program directed to homeowner's associations ("HOAs") and owners of multi-family residential buildings. Airbnb markets this program as a way in which HOAs and building owners can obtain control over subleasing within their communities, increase the transparency of Airbnb activity, and obtain a commission on all Airbnb activity within their communities. Through the program, Airbnb provides "friendly" HOAs and property owners (*i.e.*, those who agree to participate in the program by allowing rentals through Airbnb) specific tools to actively oversee and manage those rentals, such as "a customized dashboard that lets you know when residents participating in the program are hosting, how many guests are staying with them, and how much money is being earned." Participants also "receive certain aggregate, non-personal information about the hosting taking place in your building by residents not participating in the program." Airbnb, however, refuses to provide similar information to property owners who are not willing to authorize subleasing activity through Airbnb's Friendly Buildings Program and generally refuses property owners' requests that Airbnb cease engaging in rental transactions with tenants whom Airbnb learns are violating their leases through Airbnb short-term rentals.

**B.      Plaintiffs' Efforts to Establish Safe, Peaceful, and Desirable Residential Communities and to Promote Goodwill Among Current and Potential Tenants**

24.     Plaintiffs own and operate residential apartment buildings in Los Angeles County known as The Villas at Park La Brea, The Palazzo at Park La Brea, The Palazzo East at Park La Brea, and Lincoln Place Apartments (collectively, the "Properties"). Each of the Properties is located in a highly desirable neighborhood.

25.     Plaintiffs strive to provide exceptional customer service and to offer residents a safe living environment free from disruption.  Safety, security, respect, and community are of the utmost importance, and Plaintiffs' leasing practices reflect their commitment to these values.

26.     Plaintiffs qualify each tenant, who is required to complete a lease application for residency, meeting all applicable leasing requirements of Plaintiffs.  The qualification process includes, but is not limited to, investigations of criminal and credit history.  Plaintiffs then execute a

1  standard form lease with each of their approved tenants.  Plaintiffs' residents sign a Good Neighbor

2  Policy as part of their lease—a promise to do their part in maintaining a welcoming, positive, and

3  relaxing experience for their neighbors.

4      27.    Every tenant's lease includes an anti-subleasing clause. Paragraph 18 of Plaintiffs'

5  standard form lease provides:

6          **ASSIGNMENT**. Resident shall not sublet the Apartment or assign this

7          Lease for any length of time, including, but not limited to, renting out the

8          Apartment using a short term rental service such as airbnb.com,

9          VRBO.com or homeaway.com. Any purported assignment or sublet of this

10          Lease or the Apartment Home without the prior written consent of

11          Landlord is null and void.

12      28.    This anti-assignment clause is an essential aspect of Plaintiffs' commitment to their

13  tenants. Subletting, particularly with short-term vacation rentals, causes stress and disruption to

14  Plaintiffs and Plaintiffs' tenants. Short-term rentals result in increased non-residential use;

15  trespassing; noise and party disturbances; increased wear and tear in lobbies, pools, gyms, and other

16  common areas; increased traffic at the Properties; increased concerns for tenants' and employees'

17  personal safety; general loss of the Properties' residential character; and the potential for increased

18  criminal activity associated with unlawful guests whom Plaintiffs have not qualified or vetted.

19      29.    Plaintiffs' concerns regarding short-term subletting through Airbnb are not

20  hypothetical. Many of Plaintiffs' tenants have complained to Plaintiffs about unwanted noise,

21  disturbances, property damage, and other concerns regarding unauthorized short-term renters who

22  were Airbnb "guests" of Plaintiffs' tenants who sublet their apartments in breach of their lease.

23  Plaintiffs have incurred costs and damages as a result of their need to increase security patrols and

24  sweeps to prevent unauthorized access to the Properties and trespassing by Airbnb guests and to

25  ensure the safety of Plaintiffs' tenants; to evict Airbnb guests and tenants who engage in short-term

26  rentals through Airbnb in violation of their leases; to repair damage to the Properties caused by

27  Airbnb guests; to provide customer satisfaction resolutions to other tenants who were upset about

28  intrusions or disturbances by Airbnb guests; to pay legal fees and costs associated with legal

9

1    proceedings involving Airbnb guests or tenants who sublet their apartments to Airbnb guests; and to

2    pay legal fees and costs incurred as a result of Airbnb's continued actions in facilitating, brokering,

3    and profiting from unlawful subleases of Plaintiffs' Properties even after Plaintiffs expressly

4    informed Airbnb of the terms of Plaintiffs' leases and forwarded copies of the standard lease to

5    Airbnb.

6         30.    A single adverse event involving an Airbnb guest who is subletting one of Plaintiffs'

7    apartments in violation of Plaintiffs' lease with a tenant—such as a violent crime or death—could

8    cause one or more of Plaintiffs' tenants or employees to suffer a personal tragedy and cause

9    Plaintiffs to suffer a catastrophic, irreparable loss of real property value and rental income value.

10        31.    News stories describing illicit use, serious property damage, and community

11   disturbances due to Airbnb guest activities abound, which shows the substantial risk of irreparable

12   and continuing harm to Plaintiffs.

13        32.    For example, in July 2011, *Time* magazine reported that one woman's San Francisco

14   home was ransacked and robbed by an Airbnb guest.[3] A month later, another news outlet reported

15   that a different Airbnb guest "did thousands of dollars of bizarre damage to [the host's] rented home

16   and left it littered with meth pipes."[4]

17        33.    In April 2014, the *New York Post* reported that "[h]ookers are using the controversial

18   Airbnb home-sharing Web site to turn prime Manhattan apartments into temporary brothels," noting

19   that Airbnb had been "plagued" by incidents of so-called "guests" using Airbnb for illicit sexual

20   escapades.[5]

21   _____

22        [3] Frances Romero, *Airbnb Renter Wrecks Woman's San Francisco Home*, Time, July 29,
     2011, available at http://newsfeed.time.com/2011/07/29/airbnb-renter-wrecks-womans-san-

23   francisco-home/ (last visited Apr. 20, 2017).

24        [4] Michael Arrington, *Another Airbnb Victim Tells His Story: "There Were Meth Pipes*
     *Everywhere"*, Tech Crunch, July 31, 2011, available at https://techcrunch.com/2011/07/31/another-

25   airbnb-victim-tells-his-story-there-were-meth-pipes-everywhere/) (last visited Apr. 20, 2017).

26
          [5] Dana Sauchelli and Bruce Golding, *Hookers turning Airbnb apartments into brothels*, N.Y.

27   Post, Apr. 14, 2014, at http://nypost.com/2014/04/14/hookers-using-airbnb-to-use-apartments-for-
     sex-sessions/ (last visited Apr. 20, 2017).

28

FIRST AMENDED CLASS ACTION COMPLAINT

34.  Recently, *The Guardian* reported that "[a]n Airbnb rental was turned into a pop-up nightclub . . . for a 200-person party that sleep-deprived neighbours" compared to a London nightclub. The article also referred to *The Guardian*'s previous reports of "homes being overrun by drunk 18-year-olds, all-night cocaine sessions and 'drug fueled orgies.'"[6]

35.  Under the Los Angeles Municipal Code, apartments at Properties may not be rented for a period of less than 30 days. A short-term rental would be a "transient occupancy facility." LAMC §§ 12.13; 12.03. The Villas at Park La Brea, The Palazzo at Park La Brea, The Palazzo East at Park La Brea are each located in a C-1 "Limited Commercial Zone." Lincoln Place Apartments is located in a similar C2-2D zone. LAMC § 12.13A(1.5) prohibits a "transient occupancy facility" if it is located within 500 feet of any A or R zone. Each of the Properties is within 500 feet of an A or R zone, or both. Thus, transient occupancy facilities are not permitted and requests for approval "shall not be permitted." *See* CPC-2016-1243-CA, p. 6.

36.  A tenant's use of an apartment in violation of law is a default under section 16.A(ii) of Plaintiffs' standard form lease, which defines a tenant's default to include a circumstance in which the tenant "violates this Lease, the Community Rules, or fire, safety, heath, or criminal laws, regardless of whether arrest occurs."

**C.  Airbnb Knowingly Permits and Facilitates Subleasing of the Properties' Apartments in Violation of Airbnb's Terms of Service and in Breach of Plaintiffs' Standard Lease with Their Tenants**

37.  Despite the anti-assignment clause in Plaintiffs' standard lease, Plaintiffs have identified increasing short-term subleasing activity—brokered by Airbnb—at the Properties and have substantially increased their efforts to remedy and prevent such unauthorized short-term rental activities and trespassing. Based on their investigation, Plaintiffs believe that Airbnb has brokered hundreds of unlawful subleases at the Properties during the past several years.

---

[6] Will Coldwell, *'It sounded like Fabric upstairs' – Airbnb rental used for all-night party*, The Guardian, Mar. 10, 2017, available at https://www.theguardian.com/travel/2017/mar/10/airbnb-london-rental-used-for-all-night-party (last visited Apr. 20, 2017).

FIRST AMENDED CLASS ACTION COMPLAINT

38.     These unauthorized subleases have resulted in real and personal property damage to and criminal activity at the Properties, police intervention, and disruption of the quiet enjoyment of Plaintiffs' tenants' homes.

39.     By way of example, among several other disturbances, on October 23, 2016, a group of individuals engaged in a short-term Airbnb rental of an apartment at the Palazzo returned to the property at approximately 3:00 a.m. A member of the group apparently got lost and began banging on a permanent resident's door. When that resident answered the door, the Airbnb guest ran away. Meanwhile, the other members of that guest's party became involved in a physical altercation, which required that the property's security personnel contact the police.

40.     In another incident at the Palazzo, on May 31, 2017, Plaintiffs discovered that a tenant was illegally subletting his apartment through Airbnb as part of his efforts to run a commercial short-term rental company.

41.     At Lincoln Place, including during the weekend of January 21, 2017, residents called security to report a loud, late-night party, only to discover that the individuals hosting the party were unlawfully subletting the apartment through Airbnb.

42.     Due to excessive use of the Lincoln Place pool by non-residents, Plaintiff was forced to hire security for the months of June, July, and August 2016 to check in permanent residents and turn away unauthorized short-term renters. These expenses were incurred because a substantial number of non-residents were renting apartments through Airbnb and using the pool with blatant disregard for community rules, including individuals who were smoking, visibly drunk, and otherwise making residents uncomfortable.

43.     As a result of the unauthorized Airbnb rentals, Plaintiffs have lost tenants at their Properties who were frustrated by the Airbnb activity. Plaintiffs also have incurred property damage, additional costs, and reputational harm to themselves and their Properties.

44.     It is difficult for Plaintiffs to connect an Airbnb rental listing to a specific apartment unit because the Airbnb listing usually does not include a resident's real name or disclose the apartment number. Without that information Plaintiffs cannot, as a practical matter, enforce the sublease prohibition against the breaching tenant unless and until such time that Plaintiffs or their

FIRST AMENDED CLASS ACTION COMPLAINT

1   security services either identify illegal or unauthorized activities by an Airbnb guest in or near a

2   particular apartment unit or another tenant reports an Airbnb guest is present at a particular

3   apartment.

4       45.    Because Airbnb operates through anonymity of its hosts, Plaintiffs reached out to

5   Airbnb through Plaintiffs' parent company, Apartment Investment and Management Company

6   ("Aimco"), to obtain more information about the ways in which Airbnb could prevent unlawful

7   subleasing at Plaintiffs' properties through Airbnb's booking or payment processing services.

8       46.    In July 2016, Airbnb advised Aimco that it would soon be launching the "Friendly

9   Buildings Program," which would give landlords an opportunity to work with Airbnb in setting

10   parameters for home sharing and short-term rental activities. Recognizing that policing buildings and

11   evicting tenants for violating their leases by subletting through Airbnb "is an expensive proposition,"

12   Airbnb informed Plaintiffs that it would be offering new features under the Friendly Buildings

13   Program that would allow building owners to "gain transparency into home sharing activity in a

14   building," "exercise control over home sharing activity," and earn a commission from any Airbnb

15   activity at an apartment building. Airbnb also informed Plaintiffs that, as enrollees in the program,

16   they would be able to enforce restrictions on Airbnb activity "with [Airbnb's] help at the platform

17   level" and that Airbnb would take down impermissible listings "quickly."

18       47.    In the context of these discussions, Airbnb advised Plaintiffs that, even outside the

19   Friendly Buildings Program, Airbnb could "definitely" help Plaintiffs remove unwanted Airbnb

20   listings for their Properties, thereby indicating that Airbnb would stop facilitating unlawful

21   subleasing at the Properties.

22       48.    In September 2016, Plaintiffs informed Airbnb that they were aware of several

23   Airbnb listings that violated the Properties' standard lease agreement and asked how to initiate the

24   process for removing those listings and further precluding unlawful subleases. Airbnb instructed

25   Plaintiffs to send Airbnb a copy of Plaintiffs' lease agreement and a copy of the Airbnb listings and

26   identification numbers.

27       49.    On October 6, 2016, Plaintiffs provided Airbnb with a copy of the Properties'

28   standard lease agreement and a listing of all Airbnb listings that Plaintiffs suspected were for

13

1  Plaintiffs' Properties in violation of their leases with the permanent tenants. Airbnb responded by

2  reversing course, advising Plaintiffs that Airbnb does not review agreements or mediate disputes

3  regarding leases between the Airbnb host and the property owner.

4       50.     On December 20, 2016, Plaintiffs again advised Airbnb that any and all listings that

5  appeared on Airbnb's platform for the Properties—and, by implication, all related transactions with

6  Plaintiffs' tenants—were in violation of Section 18 of Plaintiffs' standard lease and requested that

7  Airbnb cease and desist its unlawful activities and its tortious interference with Plaintiffs' contracts

8  with its tenants. With this correspondence, Plaintiffs provided Airbnb a list identifying every street

9  address associated with the Properties so that Airbnb could cease engaging in rental transactions

10  involving Plaintiffs' Properties.

11       51.     On January 5, 2017, after months of communications between Airbnb and Plaintiffs

12  regarding Plaintiffs' concerns, Airbnb responded to Plaintiffs' cease-and-desist letter with the

13  following generic message, showing Airbnb's refusal to discontinue entering into rental transactions

14  in breach of Plaintiffs' leases and Airbnb's willful and intentional disregard of its own commercial

15  conduct that violates the law and its own Terms of Service:

16-28
From: response@airbnb.com
Date: January 5, 2017 at 6:40:44 PM CST
To: New User <cherris@hrwhlegal.com>
Subject: Airbnb: Airbnb Listings
Reply-To: response@airbnb.com

**airbnb**

Airbnb Customer Experience

Evan, Jan 5, 18:40 CST:

Greetings,

Evan here at Airbnb, I hope this message finds you well.

Thank you for the letter (attached)

Airbnb is an online platform and does not own, operate, manage or control accommodations.
We do, however, require hosts to represent that they have all the rights to list their accommodations. As such, we take these types of complaints seriously and are committed to notifying hosts when we receive them.

Please reply to this email with a link to the Airbnb listing and a scanned copy of a letter detailing your specific allegation or request, including your contact information.

I am happy to send the document you provided, but I do need the URL link to the listing of the user(s) in question.

Although we are unable to evaluate private contract terms and cannot arbitrate these disputes, we will share your letter with the user responsible for the listing.

Let me know what I can clarify or how I can be of further support.

Evan
www.airbnb.com/help

Attachment(s)
Airbnb.pdf

THIS EMAIL IS A SERVICE FROM AIRBNB CUSTOMER EXPERIENCE

14

FIRST AMENDED CLASS ACTION COMPLAINT

52.     With respect to the Properties, Airbnb knows that all hosts who rent Plaintiffs' apartments are not authorized to sublet their apartments to Airbnb guests and do not have Plaintiffs' permission to do so. Airbnb also knows that the short-term rental transactions it brokered and participated in with Plaintiffs' tenants breached the terms of Plaintiffs' leases.

53.     Airbnb is aware that numerous Airbnb hosts have violated, and continue to violate, the terms of their leases with Plaintiffs by subletting their apartments through and with the assistance of Airbnb. This shows Airbnb's actual knowledge that Plaintiffs' tenants made false representations when they agreed to Airbnb's Terms of Service, which purport to require that hosts represent and warrant that any posted listing, and the booking of a rental accommodation, will not breach any agreements with third parties. Airbnb has entered into, and continues to enter into, commercial transactions in violation of its own Terms of Use and intentionally has interfered with Plaintiffs' leases with their tenants and Plaintiffs' property rights.

54.     Despite Airbnb's actual knowledge, Airbnb continues to actively promote, participate in, and receive compensation for the illicit subleasing of apartments at the Properties and derives value from Plaintiffs' properties to which Airbnb is not entitled. In fact, when the term "villas at" is typed into Airbnb's search engine, the user is given an autocomplete option for one of Plaintiffs' properties, The Villas at Park La Brea, which facilitates illegal subletting that Airbnb knows to be in breach of Plaintiffs' leases and that violates Plaintiffs' property rights and Airbnb's own Terms of Use:



FIRST AMENDED CLASS ACTION COMPLAINT

55.     A similar option is available if users enter "palazzo east" in the Airbnb search engine, which produces an autocomplete option for The Palazzo at Park La Brea:



56.     In addition to taking steps to direct prospective guest traffic to Plaintiffs' Properties that are not legally available for short-term rentals, Airbnb's customer service has called the Properties to complain that Airbnb guests have been denied access to the Properties and to request that the Properties' personnel allow the Airbnb guests access to Plaintiffs' apartments in violation of Plaintiffs' leases with the hosts.

**D.      Airbnb's Activities Harm Consumers**

57.     To combat any uneasiness that hosts and guests may have, Airbnb strives to establish a relationship of trust between and among hosts, guests, and Airbnb. "Trust," according to Airbnb, "is what makes us work." Throughout its website, Airbnb expresses its commitment to trust, safety, and security, telling hosts and guests that whether they are listing a space or booking accommodations, "you should trust that you will feel secure."

58.     To establish trust, Airbnb advises hosts and guests that "[w]e require verified information from both hosts and guests," and that "[w]e verify personal profiles and listings." Airbnb also provides "24/7 customer support" with "Trust and Safety Specialists." Airbnb further boasts of its "supportive worldwide community." Given these pronouncements, reasonable

16

1   consumers would believe that Airbnb takes reasonable measures to verify the legality of listings and,

2   at a minimum, remove listings or otherwise prevent transactions it learns to be unlawful or

3   unauthorized by the actual property owner. Airbnb, however, does neither of those things.

4        59.   With respect to subleasing, Airbnb takes a decidedly hands-off approach that amounts

5   to willful ignorance. Although Airbnb's Terms of Service purport to require that hosts represent and

6   warrant that any posted listing and associated booking does not violate agreements with third parties,

7   Airbnb never specifically asks the prospective host whether the host owns the property or has the

8   owner's permission to rent the property. Airbnb also declines to enforce its own Terms of Use when

9   it learns that a host is not the property owner and does not have the property owner's permission to

10   rent or sublet the property. Instead, Airbnb continues to engage in unlawful and unauthorized

11   transactions with the tenant, continues to allow the rental listing to persist on Airbnb.com, continues

12   book the apartment for short-term rentals, and continues to contract with hosts they know to be in

13   violation of the host's lease agreement with the actual property owner.

14        60.   Further, Airbnb fails to warn guests that they may be booking an apartment that is

15   being sublet without the apartment owner's permission, even when Airbnb is aware that the

16   apartment owner has refused to provide permission to the subletting activity and knows that the

17   short-term rental violates the host's lease agreement and is unlawful. Although the fine print in

18   Airbnb's Terms of Service disclaims any responsibility by Airbnb for the "legality or suitability of

19   any accommodations" and states that bookings are "made or accepted at the member's own risk,"

20   Airbnb does not notify guests at the time of booking that Airbnb does nothing to confirm that a host

21   has the legal right to rent or sublease the apartment.

22        61.   Airbnb's hands-off approach also harms hosts. Although the fine print of Airbnb's

23   Terms of Service require hosts to represent and warrant that listings and associated bookings do not

24   violate agreements with third-parties, Airbnb does not expressly call attention to the likely

25   possibility of an anti-subleasing clause when a host signs up with Airbnb, even after Airbnb has been

26   notified by a property owner that the lease prohibits subleasing and short-term rentals to third

27   parties. Aside from requiring hosts to agree generally to Airbnb's Terms of Service, which

28   individual hosts may or may not read and which most hosts likely do not read in full, Airbnb does

1   not require hosts to affirmatively state in their listing, or in response to any specific prompt during

2   the Airbnb registration process, that the host either owns the property or has the owner's permission

3   to rent the space that is being offered for short-term rentals. Nor does Airbnb warn hosts that they

4   may be evicted under the terms of their leases if they engage in impermissible subleasing.

5        **E.**    **Airbnb Is Liable for Its Own Commercial Conduct and Unlawful Transactions,**

6                  **and the Communications Decency Act Is Irrelevant**

7        62.     Airbnb is liable for its conduct in contracting with tenants of the Properties in

8   violation of the anti-subleasing clauses of Plaintiffs' leases, including by knowingly providing, and

9   collecting fees for, a wide range of booking services in violation of the tenants' leases. As described

10   in detail below, this conduct tortiously interferes with Plaintiffs' existing contracts, intentionally

11   interferes with Plaintiffs' prospective economic advantage, violates California's Unfair Competition

12   Law, violates Plaintiffs' property rights, and unjustly enriches Airbnb.

13        63.     Information posted by prospective hosts on Airbnb's website is not the basis for

14   Airbnb's liability here. Plaintiffs do not seek to hold Airbnb liable as a publisher or speaker of any

15   such information generated by third parties. Instead, Plaintiffs' claims are premised on Airbnb's own

16   conduct as a rental broker that knowingly and wrongfully induces breaches of existing contracts,

17   interferes with Plaintiffs' prospective economic advantage, and violates Plaintiffs' property rights.

18        64.     That Airbnb's liability results from its misconduct as a rental broker and payments

19   processor—not from any third-party content it may have published on its website—is apparent from

20   Plaintiffs' requested relief. As set forth below, Plaintiffs request that the Court enjoin Airbnb from

21   <u>contracting</u> with Plaintiffs' tenants (*i.e.*, refraining from entering into short-term rental transactions

22   with hosts and guests seeking to rent Plaintiffs' apartments) and processing payments for the rental

23   of Plaintiffs' apartments, not any sort of restriction on what content Airbnb may publish on its

24   website.

25        65.     Airbnb apparently intends to argue that such injunctive relief would implicate the

26   Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), because it would be tantamount to

27   requiring Airbnb to screen its listings—a publishing activity—to determine which prospective hosts

28   have anti-subleasing clauses in their leases with Plaintiffs. But in a closely related context, another

1 | court has already rejected precisely that argument. *See Airbnb, Inc. v. City & Cty. of San Francisco*,

2 | No. 3:16-CV-03615-JD, 2016 WL 6599821, at *5 (N.D. Cal. Nov. 8, 2016) ("[Airbnb has] failed to

3 | submit evidence showing that the Ordinance will in fact inevitably or perforce require them to

4 | monitor, remove or do anything at all to the content that hosts post. . . . [Airbnb] might indeed

5 | voluntarily choose to screen its listings, and the facts show that Airbnb already reviews and

6 | 'discretionarily removes listings' for other reasons.").

7 | 66.    When acting solely as a publisher of rental listings, Airbnb may, under the CDA,

8 | charge fees for publishing third-party rental listings. *See id.* ("[Airbnb] may consider charging fees

9 | for publishing listings, rather than for facilitating transactions—a measure [defendant] concedes is

10 | lawful."). After Airbnb engages in its own <u>conduct</u> by contracting with tenants, brokering rentals,

11 | and facilitating transactions, however, the CDA is inapplicable because Airbnb is no longer acting

12 | simply as a "publisher or speaker" and no longer serving merely as a pass-through for third-party-

13 | created content.

14 | 67.    Because Plaintiffs are not seeking to hold Airbnb liable as a publisher or speaker of

15 | third-party content, the CDA is inapplicable here. Airbnb may not use § 230(c)(1) as a shield from

16 | liability for its wrongful conduct in consummating short-term rentals of Plaintiffs' apartments and

17 | from processing payments to facilitate those short-term rentals.

18 | **CLASS ACTION ALLEGATIONS**

19 | 68.    Plaintiffs bring the Second Claim for Relief (violation of the California Business &

20 | Professionals Code Section 17200, et seq.), Third Claim for Relief (unjust enrichment), Sixth Claim

21 | for Relief (Trespass), and Seventh Claim for Relief (Aiding and Abetting Trespass) individually and

22 | on behalf of a class of other similarly situated persons defined as follows:

23 |     All owners of multi-unit apartment complexes located in the United States (1) at

24 |     which Airbnb's business records show that Airbnb rental activity was conducted for

25 |     one or more apartments, (2) the host was not the owner of the apartment, and (3)

26 |     Airbnb did not pay all or any portion of Airbnb's commission to the real property

27 |     owner for the Airbnb rental activity. Employees of the Court, employees of Airbnb,

28 |     and property owners who participate in Airbnb's Friendly Buildings Program are

FIRST AMENDED CLASS ACTION COMPLAINT

1   excluded from the class.

2      69.   The members of the class are so numerous that joinder of all members is

3   impracticable. Although the exact number of class members is not known at this time, Plaintiffs

4   believe that the class comprises thousands of property owners throughout the United States.

5      70.   The standard form leases used by owners of multi-unit apartment complexes in the

6   United States prohibit subleasing of apartments without the owner's permission or express consent.

7      71.   For example, the standard form lease available from the Apartment Owners

8   Association of California provides that the resident "agrees not to transfer, assign, or sublet the

9   premises or any part thereof . . . ."

10      72.   The Texas Apartment Association model lease provides that "Replacing a resident,

11   subletting, or assignment is allowed only when we consent in writing."

12      73.   The Landlord Association of Pennsylvania publishes a model residential lease that

13   provides: "The tenant cannot lease the property to any other person . . . unless the landlord first gives

14   written approval."

15      74.   The Chicago Association of Realtors standard form lease provides that "Tenant shall

16   not sublease this Lease without the prior written consent of the Landlord, which shall not be

17   unreasonably withheld."

18      75.   There are common issues of law and fact in this class action that relate to and affect

19   the rights of each member of the class, including:

20         a.   The nature of Airbnb's business model, including its decision making processes and

21             strategies, that has resulted in widespread, illegal subleasing activity at rental units in

22             Class Members' properties across the country;

23         b.   The amount of income that Airbnb has received from facilitating and brokering illegal

24             subleases at rental units at Class Members' properties;

25         c.   Airbnb's financial, business growth, and other motivations for facilitating and

26             brokering subleases at rental units owned by Class Members;

27         d.   The conduct of Airbnb that facilitates and encourages illegal subleases at Class

28             Members' properties;

FIRST AMENDED CLASS ACTION COMPLAINT

e. Airbnb's knowledge and decision making process that resulted in the creation of the Friendly Buildings Program, which itself is an acknowledgment by Airbnb that there is widespread, unauthorized subletting of apartments accomplished through Airbnb;

f. Airbnb's knowledge of the extent of unauthorized subleasing of Class Members' apartments;

g. The substance of Airbnb's contractual transactions with Airbnb hosts and guests;

h. The legal relationship between Airbnb and Airbnb hosts;

i. The inapplicability of section 230 of the Communications Decency Act to the claims alleged against Airbnb;

j. Whether Airbnb's conduct in facilitating and brokering subleases of Class Members' apartments violates one or more statutory or common laws or regulations;

k. Whether Airbnb failed to properly warn Airbnb hosts and guests that subleasing activity at Class Members' properties is illegal;

l. Whether Airbnb sought permission from any Plaintiff or Class Member to participate in or facilitate the use of Plaintiffs' and Class Members' property for profit.

76. The claims of Plaintiffs are typical of the claims of all Class Members. Plaintiffs are similarly situated to all Class Members with respect to the issues presented in this case. The two class claims pled by Plaintiffs are based on the same fundamental factual allegations and legal theories as the claims of all other Class Members.

77. All Class Members have been adversely affected by the wrongful conduct of Airbnb alleged herein.

78. Plaintiffs will adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of the Class.

79. The lawyers for Plaintiffs are experienced and capable of prosecuting complex, class litigation such as this case.

80. A class action is superior to any other method available for the fair and efficient adjudication of this controversy.

21

FIRST AMENDED CLASS ACTION COMPLAINT

81.     Questions of law and fact common to Class Members predominate over any question affecting only individual Class Members.

### FIRST CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH CONTRACT

#### (On Behalf of Plaintiffs Individually)

82.     Paragraphs 1 through 80, above, are realleged.

83.     There are valid lease agreements between Plaintiffs and each of their individual tenants.

84.     Airbnb knew of the leases between Plaintiffs and their tenants, and that the leases precluded subleasing through Airbnb and similar short-term rental booking services.

85.     Airbnb took intentional acts that facilitated the breach of Plaintiffs' lease agreements and disrupted Plaintiffs' commercial relationships under their leases.

86.     Airbnb's conduct resulted in a breach of numerous lease agreements between Plaintiffs and their tenants, and made it more difficult for Plaintiffs to enforce the obligations under their lease agreements.

87.     As a direct and proximate result, Plaintiffs have suffered damages including, without limitation, property damage, nuisance and disturbance, loss of rental income, apartment turnover and marketing costs, costs of providing heightened security and monitoring Plaintiffs' Properties for unauthorized short-term rentals, legal fees, and reputational damage to Plaintiffs' Properties.

### SECOND CLAIM FOR RELIEF – CALIFORNIA BUSINESS & PROFESSIONALS CODE SECTION 17200, ET SEQ.

#### (On Behalf of Plaintiffs Individually and the Class)

88.     Paragraphs 1 through 86, above, are realleged.

89.     California Business & Professionals Code Section 17200, *et seq.*, prohibits acts of unfair competition, which includes any fraudulent, unfair, or unlawful business act or practice within the meaning of Section 17200.

90.     As described more fully above, Airbnb has, and continues to, engage in unfair competition by, among other things:

FIRST AMENDED CLASS ACTION COMPLAINT

a.   Allowing, enabling, encouraging, and profiting from tenants' unauthorized short-term rentals of apartments at Plaintiffs' Properties and violations of lease agreements with the Plaintiffs;

b.   Committing trespasses on Plaintiffs' Properties and aiding and abetting trespasses committed by others;

c.   Allowing, enabling, encouraging, and profiting from tenants' illegally subleasing their apartments at the Properties in violation of the Los Angeles Municipal Code;

d.   Deriving value from Plaintiffs' real property without first obtaining Plaintiffs' permission and without compensating Plaintiffs for the value Airbnb derives from Airbnb's unauthorized uses of Plaintiffs' Properties;

e.   Committing the other torts alleged in this Complaint; and

f.   Other fraudulent, unfair, or unlawful business acts or practices.

91.   Airbnb's actions and inaction violate California law and regulations and therefore such predicate acts are per se violations of the California Business and Professions Code Section 17200, *et seq.*

92.   Airbnb's misconduct has, and continues to, provide Airbnb an unfair advantage over its competitors. The scheme is designed to defraud and violate the property and contractual rights of California property owners and enrich Airbnb, along with its hosts and guests.

93.   The foregoing acts and practices have caused substantial harm to California consumers and California property owners.

94.   Airbnb has benefitted by collecting rents and rental commissions for the subleasing of Plaintiffs' Properties without Plaintiffs' permission.

95.   Airbnb has been, and continues to be, unjustly enriched from collecting rents and rental commissions for Plaintiffs' Properties in violation of Plaintiffs' leases and without Plaintiffs' permission. Plaintiffs and Class Members are entitled to restitution of the monies Airbnb has derived from short-term rentals of Plaintiffs' and Class Members' apartments.

FIRST AMENDED CLASS ACTION COMPLAINT

96.     The Court should enjoin Airbnb from continuing with such practices by ordering as follows:

 a. That Airbnb may not enter contracts with Plaintiffs' and Class Members' tenants to provide services related in any way to subletting Plaintiffs' and Class Members' apartments;

 b. That Airbnb Payments may not process financial transactions involving Plaintiffs' and Class Members' tenants to facilitate the unauthorized subletting of apartments; and

 c. That Airbnb must warn prospective guests of Plaintiffs' and Class Members' tenants that the short-term rentals and subletting of apartments is not authorized and that Plaintiffs and Class Members may take legal and other actions to prevent trespassing and to prevent unauthorized access to facilities and premises at their properties, including the apartments listed for rent on Airbnb's website and smartphone app.

97.     As a direct and proximate result of Airbnb's conduct, Plaintiffs and Class Members have suffered damages including, without limitation, property damage, nuisance and disturbance, loss of rental income and other revenue, costs of providing additional security and monitoring for short-term rental activity, legal fees, and reputational damage. Other members of the public who have fallen victim to Airbnb's scheme have been, and are likely in the future to be, injured by this conduct as well.

98.     The harm to Plaintiffs, Class Members, and to the members of the general public outweighs the utility of Airbnb's policy and practices.

99.     Airbnb's practices were and are likely to mislead the general public. These practices present a continuing threat to member of the public in that, among other things, other property owners will be defrauded into having their properties improperly rented and sublet by Airbnb. Plaintiffs, Class Members, and other members of the general public do not have an adequate remedy at law.

///

///

**THIRD CLAIM FOR RELIEF – UNJUST ENRICHMENT**

**(On Behalf of Plaintiffs Individually and the Class)**

100.   Paragraphs 1 through 98, above, are realleged.

101.   Plaintiffs and Class Members have conferred a benefit on Airbnb in that Plaintiffs and Class Members own property from which Airbnb has monetarily benefited through short-term rentals facilitated by Airbnb without Airbnb's obtaining the permission of Plaintiffs or Class Members.

102.   Airbnb has knowingly and voluntarily accepted and retained the benefits reaped from facilitating short-term rentals of Plaintiffs' and Class Members' properties.

103.   Under the circumstances described above, in which Airbnb knowingly has profited, and continues to profit, from its actions in facilitating and brokering illegal subleasing of Plaintiffs' and Class Members' properties, it would be unjust and inequitable for Airbnb to retain the benefits without paying the value of those benefits to Plaintiffs and Class Members.

104.   Plaintiffs and Class Members have been damaged by Airbnb's facilitating and brokering illegal subleasing of Plaintiffs' and Class Members' properties.

**FOURTH CLAIM FOR RELIEF – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(On Behalf of Plaintiffs Individually)**

105.   Paragraphs 1 through 103, above, are realleged.

106.   An economic relationship existed between Plaintiffs and their tenants that contained a reasonably probable future economic benefit or advantage to Plaintiffs.

107.   Airbnb was aware of the relationship with Plaintiffs and their individual tenants, with the probability of future economic benefit to the Plaintiffs

108.   Airbnb undertook intentional wrongful acts that disrupted the relationship between Plaintiffs and their tenants, including, without limitation, wrongfully renting apartments in the Properties with knowledge that doing so violated the terms of the underlying leases, and, in turn, Airbnb's own Terms of Service and Airbnb Payment's wrongfully processing financial transactions to facilitate the unauthorized short-term rentals.

1   109.   Airbnb's actions interrupted the relationships between Plaintiffs and their tenants.

2   110.   Airbnb's actions caused damage to Plaintiffs in that the relationships were actually

3   interfered with or disrupted and Plaintiffs lost, in whole or in part, the economic benefits or

4   advantage reasonably expected from the relationships.

5   **FIFTH CLAIM FOR RELIEF – NEGLIGENT INTERFERENCE WITH**

6   **PROSPECTIVE ECONOMIC ADVANTAGE**

7   **(On Behalf of Plaintiffs Individually)**

8   111.   Paragraphs 1 through 109, above, are realleged.

9   112.   Airbnb owed a duty to use due care not to participate in leasing of apartments for rent

10   in the Properties with knowledge that doing so violated the terms of Plaintiffs' underlying leases

11   with their tenants.

12   113.   Airbnb wrongfully participated in the leasing of apartments for rent in the Properties

13   with knowledge that doing so violated the terms of Plaintiffs' underlying leases, causing damage to

14   Plaintiffs and Plaintiffs' other tenants who are permanent residents of the Properties.

15   114.   Economic relationships existed between Plaintiffs and their tenants that contained a

16   reasonably probable future economic benefits or advantages to Plaintiffs.

17   115.   Airbnb knew of the existence of the relationships and was aware, or should have been

18   aware, that if Airbnb did not act with due care its actions would interfere with these relationships and

19   cause Plaintiffs to lose, in whole or in part, the probable future economic benefits or advantages of

20   the relationships.

21   116.   Airbnb was negligent in actively participating in subleasing apartments for rent at the

22   Properties with knowledge that doing so violated the terms of the underlying leases and local laws.

23   117.   Airbnb's negligence caused damage to Plaintiffs in that their relationships with their

24   tenants was actually interfered with or disrupted and Plaintiffs lost, in whole or in part, the economic

25   benefits or advantages reasonably expected from their relationships with their tenants.

26   **SIXTH CLAIM FOR RELIEF – TRESPASS**

27   **(On Behalf of Plaintiffs Individually and the Class)**

28   118.   Paragraphs 1 through 116, above, are realleged.

26

119.   Plaintiffs are owners of the Properties.

120.   Airbnb's intentional acts of encouraging, facilitating, brokering, and profiting from short-term rentals of Plaintiffs' apartments caused Airbnb guests to enter onto the Properties and otherwise make use of Plaintiffs' Properties.

121.   Plaintiffs did not give permission for the entry or use.

122.   As a direct and proximate result of Airbnb's conduct, Plaintiffs have been harmed and damaged, including, without limitation, in the amount of the reasonable rental value of the units subject to the illegal subletting, the amount of the benefits received by Airbnb as a result of the illegal subletting transactions, property damage, nuisance and disturbance, loss of rental income and other revenue, costs of providing additional security and monitoring for short-term rental activities, legal fees, and reputational damage to Plaintiffs' Properties.

123.   Airbnb's intentional actions were a substantial factor in causing the harm to Plaintiffs.

## SEVENTH CLAIM FOR RELIEF – AIDING AND ABETTING TRESPASS

### (On Behalf of Plaintiffs Individually and the Class)

124.   Paragraphs 1 through 122, above, are realleged.

125.   Plaintiffs' tenants and Airbnb guests have committed trespasses on Plaintiffs' Properties by entering into unauthorized short-term rental transactions.

126.   Airbnb had, and continues to have, actual knowledge of these short-term rental transactions that occur, and have continued to occur, without the permission of Plaintiffs.

127.   Airbnb and Airbnb Payments have provided substantial assistance to Plaintiffs' tenants and Airbnb guests by facilitating, brokering, and profiting from the illegal subletting on Plaintiffs' Properties.

128.   As a direct and proximate result of Airbnb's conduct, Plaintiffs have been harmed and damaged, including, without limitation, in the amount of the reasonable rental value of the units subject to the illegal subletting, the amount of the benefits received by Airbnb and Airbnb Payments as a result of the illegal subletting, property damage, nuisance and disturbance, loss of rental income and other revenue, the costs of providing additional security and monitoring for short-term rental activities, legal fees, and reputational damage to Plaintiffs and their Properties.

27

## EIGHTH CLAIM FOR RELIEF – PRIVATE NUISANCE

### (On Behalf of Plaintiffs Individually)

129.  Paragraphs 1 through 127, above, are realleged.

130.  Plaintiffs are owners of the Properties.

131.  As alleged above, Airbnb, by acting or failing to act, created a condition or permitted a condition to exist, that was an obstruction to Plaintiffs' free use of their Properties, so as to interfere with comfortable enjoyment of life or property.

132.  The condition interfered with Plaintiffs' use or enjoyment of the Properties in that, as more particularly alleged above, it defeats Plaintiffs' ability to control the identity of the residents at their Properties and results in property damage, reputational harm, and disruption to lawful tenants.

133.  Plaintiffs did not consent to or permit Airbnb's conduct.

134.  An ordinary person would be reasonably annoyed or disturbed by Airbnb's conduct.

135.  Plaintiffs have been harmed and damaged by Airbnb's conduct, including, without limitation, in the amount of the reasonable rental value of the units subject to the illegal subletting, the amount of the benefits received by Airbnb as a result of the illegal subletting, property damage, nuisance and disturbance, loss of rental income and other revenue, the costs of providing additional security and monitoring short-term rental activities, legal fees, and reputational damage to Plaintiffs and their Properties.

136.  Airbnb's conduct was a substantial factor in causing Plaintiffs' harm.

137.  The seriousness of the harm outweighs the public benefit of Airbnb's conduct. No public benefit outweighs the intentional, unpermitted use of Plaintiffs' private property by Airbnb for monetary gain.

///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs LA Park LA Brea A LLC, LA Park LA Brea B LLC, LA Park LA Brea C LLC, and AIMCO Venezia, LLC demand judgment in their favor and against Defendants Airbnb, Inc. and Airbnb Payments, Inc., for damages, disgorgement, and rescission in an amount to be determined at trial in excess of $25,000, the costs of this suit, interest, reasonable attorney fees to the extent permitted by law or otherwise, injunctive relief, and such other relief as the Court deems proper.

Dated:  June 6, 2017

**LARSON O'BRIEN LLP**

By: _____
Robert C. O'Brien
R.C. Harlan

and

**WHEELER TRIGG O'DONNELL LLP**
Michael T. Williams (admitted *Pro Hac Vice*)


Attorneys for Plaintiffs
LA PARK LA BREA A LLC,
LA PARK LA BREA B LLC,
LA PARK LA BREA C LLC,
and AIMCO VENEZIA, LLC

FIRST AMENDED CLASS ACTION COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiffs and Class Members hereby demand a trial by jury on all issues so triable.

Dated: June 6, 2017

**LARSON O'BRIEN LLP**

By: _____
Robert C. O'Brien
R.C. Harlan

and

**WHEELER TRIGG O'DONNELL LLP**
Michael T. Williams (admitted *Pro Hac Vice*)

Attorneys for Plaintiffs
LA PARK LA BREA A LLC,
LA PARK LA BREA B LLC,
LA PARK LA BREA C LLC,
and AIMCO VENEZIA, LLC

30

FIRST AMENDED CLASS ACTION COMPLAINT

**PROOF OF SERVICE**

I am a citizen of the United States. My business address is Larson O'Brien LLP, 555 S. Flower Street, Suite 4400, Los Angeles, CA 90071. I am employed in the County of Los Angeles where this service occurs. I am over the age of 18 and not a party to this action.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as: **FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**

☐ (BY FAX) I transmitted via facsimile, from facsimile number 213-623-2000, the document(s) to the person(s) on the attached service list at the fax number(s) set forth therein, on this date before 5:00 p.m. A statement that this transmission was reported as complete and properly issued by the sending fax machine without error is attached to this Proof of Service.

☐ (BY E-MAIL) On this date, I personally transmitted the foregoing document(s) via electronic mail to the e-mail address(es) of the person(s) on the attached service list.

☒ (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party, as stated on the attached service list. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Larson O'Brien LLP, Los Angeles, California. I am readily familiar with Larson O'Brien LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☐ (BY PERSONAL SERVICE) On this date, I delivered by hand envelope(s) containing the document(s) to the persons(s) on the attached service list.

☐ (BY OVERNIGHT DELIVERY) On this date, I placed the documents in envelope(s) addressed to the person(s) on the attached service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 6, 2017 at Los Angeles, California.

_____
Jacqueline Neal

*LA Park LA Brea A LLC, ET AL. v. AIRBNB, INC., ET AL.*
**Los Angeles Superior Court – Central District Case No. BC650575**

## SERVICE LIST

| | |
|---|---|
| Gregory Evans, Esq. | Jonathan D. Urick, Esq. |
| Keola Robert Whittaker, Esq. | Katherine Mims Crocker, Esq. |
| MCGUIREWOODS LLP | Lyle D. Kossis, Esq. |
| Wells Fargo Center - South Tower | MCGUIREWOODS LLP |
| 355 S. Grand Avenue, Suite 4200 | Gateway Plaza |
| Los Angeles, California 90071-3103 | 800 East Canal Street |
| Telephone: (213) 457-9840 | Richmond, Virginia 23219-3916 |
| Facsimile: (213) 457-9877 | Telephone: (804) 775-1000 |
| | Facsimile: (804) 775-1061 |

Email: gevans@mcguirewoods.com
Email: kwhittaker@mcguirewoods.com

Email: jurick@mcguirewoods.com
Email: kcrocker@mcguirewoods.com
Email: lkossis@mcguirewoods.com

*Attorneys for AIRBNB, INC. and AIRBNB PAYMENTS, INC.*

*Attorneys for AIRBNB, INC. and AIRBNB PAYMENTS, INC.*

2