1  MICHAEL T. WILLIAMS (*pro hac vice*)
   WHEELER TRIGG O'DONNELL LLP
2  370 Seventeenth Street, Suite 4500
   Denver, Colorado 80202
3  Telephone:  303.244.1800
   Facsimile:  303.244.1879
4  Email:      williams@wtotrial.com

5  LARSON O'BRIEN LLP
   ROBERT C. O'BRIEN (SBN 154372)
6  R.C. HARLAN (SBN 234279)
   555 South Flower Street, Suite 4400
7  Los Angeles, California 90071
   Telephone:  213.436.4888
8  Facsimile:  213.623.2000
   Email:      robrien@larsonobrienlaw.com

9
   Attorneys for Plaintiffs LA PARK LA BREA A LLC,
10 LA PARK LA BREA B LLC, LA PARK LA BREA C LLC,
   and AIMCO VENEZIA, LLC

11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16 LA PARK LA BREA A LLC, LA PARK       Case No.:  2:17-cv-04885
   LA BREA B LLC, LA PARK LA BREA
17 C LLC, and AIMCO VENEZIA, LLC,       The Honorable Dolly M. Gee

18        Plaintiffs,                   **PLAINTIFFS' OPPOSITION TO**
                                        **DEFENDANTS' MOTION TO**
19 v.                                   **DISMISS FIRST AMENDED**
                                        **COMPLAINT**
20 AIRBNB, INC. and AIRBNB
   PAYMENTS, INC.,
21        Defendants

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................1

STATEMENT OF PLAINTIFFS' ALLEGED FACTS .............................................2

ARGUMENT ............................................................................................................4

I.   PLAINTIFFS ALLEGE COGNIZABLE BREACHES OF LEASES................4

II.  PLAINTIFFS ADEQUATELY ALLEGE THAT AIRBNB
     INTERFERED WITH PLAINTIFFS' CONTRACTS AND BUSINESS
     RELATIONSHIPS ...........................................................................................6

     A.   Plaintiffs Adequately Plead Facts Showing Proximate Causation ...........6

     B.   Plaintiffs Allege that Defendants Acted with the Requisite Intent...........9

     C.   Plaintiffs Plead Defendants' Independently Wrongful Acts...................10

     D.   Plaintiffs Allege Facts Showing Defendants Owe a Duty of Care..........11

III. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE UCL...............12

     A.   Plaintiffs Plead a UCL Claim Regardless Whether They Are
          Defendants' Consumers or Competitors.................................................12

     B.   Plaintiffs Allege that Defendants Engages in Unlawful Practices..........14

     C.   Plaintiffs Allege that Defendants Engage in Unfair Business
          Practices .............................................................................................15

IV.  PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT ................17

V.   PLAINTIFFS ADEQUATELY PLEAD THEIR TRESPASS CLAIMS .........18

     A.   Defendants Caused the Unauthorized Entry of Third Parties.................18

     B.   Plaintiffs Adequately Allege Aiding and Abetting Trespass..................18

VI.  PLAINTIFFS STATE A CLAIM FOR NUISANCE ......................................20

     A.   A Duty of Care Is Not Required to State a Claim for Nuisance..............20

     B.   Plaintiffs Allege that Defendants' Conduct Caused Their Harm ...........21

     C.   Plaintiffs Adequately Allege a Substantial Property Invasion................23

VII. THE CDA DOES NOT IMMUNIZE DEFENDANTS' CONDUCT ...............23

CONCLUSION.........................................................................................................25

# **TABLE OF AUTHORITIES**

Page

## **Cases**

*Acad. of Mot. Pictures Arts & Scis. v. GoDaddy.com, Inc.,*
2010 WL 11463989 (C.D. Cal. Dec. 15, 2010) ..................................14

*Airbnb, Inc. v. City & Cnty. of S.F.,*
217 F. Supp. 3d 1066 (N.D. Cal. 2016) ..........................................1, 24, 25

*Aliya Medcare Fin., LLC v. Nickell,*
2015 WL 11072180 (C.D. Cal. Sept. 25, 2015) ..........................10

*Almasi v. Equilon Enters., LLC,*
2012 WL 3945528 (N.D. Cal. Sept. 10, 2012) ..........................12

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ......................................................17

*Augustine v. Trucco,*
124 Cal. App. 2d 229 (1954) ........................................................7

*Bank of N.Y. v. Fremont Gen. Corp.,*
523 F.3d 902 (9th Cir. 2008) ..............................................6-7, 22

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ................................................23, 24

*Bauer v. Interpublic Grp. of Cos., Inc.,*
255 F. Supp. 2d 1086 (N.D. Cal. 2003) ....................................8

*Bekins v. Zheleznyak,*
2016 WL 1091057 (C.D. Cal. Mar. 21, 2016) ............................16

*Birke v. Oakwood Worldwide,*
169 Cal. App. 4th 1540 (2009) ....................................................21

*Brazil v. Dole Packaged Foods, LLC,*
660 F. App'x 531 (9th Cir. 2016) ..............................................17

*Bruton v. Gerber Prod. Co.,*
2017 WL 3016740 (9th Cir. July 17, 2017) ..............................17

*Burkheimer v. Thrifty Inv. Co.,*
533 P.2d 449 (Wash. App. 1975) ..............................................8

*Cassinos v. Union Oil Co.,*
14 Cal. App. 4th 1770 (1993) ....................................................19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ..............................................................12

| | |
|---|---|
| 1 | **Cases (cont.)** <div align=right>Page</div> |

*Charles C. Chapman Bldg. Co. v. Cal. Mart*,
2 Cal. App. 3d 846 (1969) ...................................................................8

*Chen v. Kraft*,
243 Cal. App. 4th Supp. 13 (2016) .....................................................15

*Chicago v. StubHub!, Inc.*,
624 F.3d 363 (7th Cir. 2010) ..............................................................25

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
2015 WL 6638929 (N.D. Cal. Oct. 30, 2015) ....................................12

*Citizens for Odor Nuisance Abatement v. City of San Diego*,
8 Cal. App. 5th 350 (2017) .................................................................22

*City of Modesto Redev. Agency v. Super. Ct.*,
119 Cal. App. 4th 28 (2004) ...............................................................21

*Cobb v. City of Stockton*,
192 Cal. App. 4th 65 (2011) ...............................................................18

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ............................................................15

*Ctr. for Neuro Skills v. Blue Cross of Cal.*,
2013 WL 5670889 (E.D. Cal. Oct. 15, 2013) ....................................12

*Cty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (2006) .............................................................21

*Delgado v. Trax Bar & Grill*,
36 Cal. 4th 224 (2005) ........................................................................20

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ..............................................................5

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ...................................................1, 23, 24

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
232 Cal. App. 4th 1171 (2014) ......................................................18, 19

*Dryden v. Tri-Valley Growers*,
65 Cal. App. 3d 990 (1977) ..................................................................8

*Evans v. Hewlett-Packard Co.*,
2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) ....................................25

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ......................................................23, 24

*Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*,
2017 WL 745871 (N.D. Cal. Feb. 27, 2017) ........................................5

**Cases (cont.)** <u>Page</u>

*Gamache v. Airbnb, Inc.*,
2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017) ....................................14, 22

*Gomez v. Nationstar Mortg., LLC*,
2015 WL 966224 (E.D. Cal. Mar. 4, 2015) .................................................17

*Grace v. Apple Inc.*,
2017 WL 3232464 (N.D. Cal. July 28, 2017) ........................................15, 17

*Hayes v. Kardosh*,
2017 WL 1382566 (Cal. Ct. App. Apr. 18, 2017) .........................................5

*Hill v. StubHub, Inc.*,
727 S.E.2d 550 (N.C. App. 2012)...............................................................25

*Hinton v. Amazon.com.dedc, LLC*,
72 F. Supp. 3d 685 (S.D. Miss. 2014) .......................................................25

*Hous. Rights Comm. of S.F. v. HomeAway, Inc.*,
2017 WL 2730028 (Cal. Ct. App. June 26, 2017)....................................11, 22

*Hsu v. OZ Optics Ltd.*,
211 F.R.D. 615 (N.D. Cal. 2002)..................................................................9

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) ................................................................6, 22

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................17

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................17

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ...............................................................15, 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................16

*In re Vizio, Inc., Consumer Privacy Litig.*,
2017 WL 1836366 (C.D. Cal. Mar. 2, 2017)................................................17

*In re Webkinz Antitrust Litig.*,
695 F. Supp. 2d 987 (N.D. Cal. 2010)................................................ 12-13, 14

*Inman v. Techn. USA, Inc.*,
2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ..............................................25

*Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014) .......................................................................7

*IV Solutions, Inc. v. Conn. Gen. Life Ins. Co.*,
2015 WL 12843822 (C.D. Cal. Jan. 29, 2015)..............................................12

**Cases (cont.)**                                                                                          Page

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) ................................................................................ 11

*James v. UMG Recordings*,
2011 WL 5192476 (N.D. Cal. Nov. 1, 2011) ............................................. 14

*Kendall v. Ernest Pestana, Inc.*,
40 Cal. 3d 488 (1985) ................................................................................... 6

*Klee v. United States*,
53 F.2d 58 (9th Cir. 1931) .......................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......................................................................... 9, 10

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......................................................................... 13, 14

*Lawson v. Safeway Inc.*,
191 Cal. App. 4th 400 (2010) ................................................................... 8-9

*Lussier v. San Lorenzo Valley Water Dist.*,
206 Cal. App. 3d 92 (1988) ....................................................................... 20

*M&M Media Grp., Inc. v. Regency Outdoor Advert., Inc.*,
2013 WL 5533189 (Cal. Ct. App. Oct. 8, 2013) ....................................... 19

*Martin Marietta Corp. v. Ins. Co. of N. Am.*,
40 Cal. App. 4th 1113 (1995) ................................................................... 18

*Martinez v. Pacific Bell*,
225 Cal. App. 3d 1557 (1990) ................................................................... 21

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events LP*,
2009 WL 10671400 (C.D. Cal. Aug. 12, 2009) ........................................ 18

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................... 12

*Nolte v. Cedars Sinai Med. Ctr.*,
236 Cal. App. 4th 1401 (2015) ................................................................. 15

*NPS LLC v. StubHub, Inc.*,
2009 WL 995483 (Mass. Super. Jan. 26, 2009) ....................................... 25

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ............................................................................... 4

*Paulus v. Bob Lynch Ford, Inc.*,
139 Cal. App. 4th 659 (2006) ............................................................... 14-15

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................... 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Cases (cont.)** Page

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) ................................................................. 9

*Rex Inv. Co. Ltd v. S.M.E., Inc.*,
2016 WL 4507463 (S.D. Cal. Aug. 29, 2016) ............................. 19

*Rutherford v. Owens-Ill., Inc.*,
16 Cal. 4th 953 (1997) ................................................................. 7

*San Diego Gas & Elec. Co. v. Super. Ct.*,
13 Cal. 4th 893 (1996) ............................................................... 23

*Saunders v. Super. Ct.*,
27 Cal. App. 4th 832 (1994) ...................................................... 14

*Siewert v. Casey*,
80 So.3d 1114 (Fla. Ct. App. 2012) ............................................ 6

*Smith v. State Farm Mutual Auto. Ins. Co.*,
93 Cal. App. 4th 700 (2001) ...................................................... 15

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*,
195 Cal. App. 3d 1032 (1987) ..................................................... 5

*Thrifty Oil Co. v. Batarse*,
174 Cal. App. 3d 770 (1985) ....................................................... 5

*Transamerica Leasing, Inc v. Compania Anonima Venezolana de Navegacion*,
93 F.3d 675 (9th Cir. 1996) ....................................................... 17

*Upasani v. State Farm Gen. Ins. Co.*,
227 Cal. App. 4th 509 (2014) ................................................ 19-20

*Vallely Invs., L.P. v. BancAmerica Comm. Corp.*,
88 Cal. App. 4th 816 (2001) ...................................................... 19

*Velazquez v. GMAC Mortg. Corp.*,
605 F. Supp. 2d 1049 (C.D. Cal. 2008) ...................................... 15

*Yee Chuck v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
179 Cal. App. 2d 405 (1960) ................................................. 18-19

**Statutes, Rules, and Regulations**

47 U.S.C. § 230(c)(1) ................................................................. 23

47 U.S.C. § 230(f)(3) ................................................................. 24

Cal. Bus. & Prof. Code § 17200 ........................................ *passim*

Cal. Bus. & Prof. Code § 17201 ................................................ 12

Cal. Bus. & Prof. Code § 17203 ................................................ 12

**Statutes, Rules, and Regulations (cont.)**                                    Page

Cal. Bus. & Prof. Code § 17204 ................................................................12

Fed. R. Civ. P. 12 ......................................................................................10

Fed. R. Civ. P. 8 .........................................................................................4

**Other Authorities**

Judicial Council of Cal. Civil Jury Instr. No. 2201 ..................................7

Judicial Council of Cal. Civil Jury Instr. No. 2202 ..................................7

Judicial Council of Cal. Civil Jury Instr. No. 2204 ..................................7

# **INTRODUCTION**

Defendants wrongly claim this suit is about Plaintiffs' attempt to force an innocent "Internet platform" to "police" third parties and enforce "anti-tenant" lease provisions. (Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss ("Mem.") 1-2.) In reality, this case is about Defendants' knowing, intentional, and unlawful business practices that systematically harm Plaintiffs, Plaintiffs' permanent residents, similarly-situated apartment owners, and even some of Defendants' own customers. As alleged in the Complaint, Defendants broker, and directly profit from, short-term vacation accommodations at Plaintiffs' rental apartment homes, despite knowing that those rentals are done without Plaintiffs' consent and violate municipal laws. Plaintiffs advised Defendants of the problems caused by the rentals and asked them to stop brokering rentals involving Plaintiffs' apartments. While Defendants initially responded constructively to the request, Defendants later changed their tune and refused to help, forcing this lawsuit. Defendants have no legal right to profit from Plaintiffs' properties, yet they continue to systematically interfere with private contracts between Plaintiffs and a minority of Plaintiffs' tenants who operate without Plaintiffs' consent as Airbnb "Hosts."

Now, Defendants urge this Court to ignore Plaintiffs' well-pled allegations showing their improper conduct and to hold—as a matter of law—that Defendants are somehow exempt from California law because they are an "Internet platform" and participate in the "sharing economy." Although Defendants may wish that to be true, California law does not permit Defendants' conduct, and the Communications Decency Act does not give Defendants an "all purpose get-out-of-jail-free card for businesses that publish user content on the internet." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016); *see also Airbnb, Inc. v. City & Cnty. of S.F.*, 217 F. Supp. 3d 1066, 1072-74 (N.D. Cal. 2016) (rejecting CDA preemption defense where the City ordinance "regulates [Airbnb's] own conduct as Booking Service providers").

The remainder of Defendants' Motion improperly raises factual issues, ignores

the well-pled facts in Plaintiffs' Complaint, and misconstrues California law. Defendants claim that Plaintiffs' prohibition of Airbnb rentals is not reasonable, but that is legally wrong and inappropriate for resolution on the pleadings. So, too, are the questions whether Defendants proximately caused Plaintiffs' harm, whether their business practices are unfair under Business & Professions Code 17200 (the "UCL"), and whether Defendants' actions are intentional. The erroneous outcome Defendants urge would allow Defendants to continue, unchecked, their systematic harm to Plaintiffs and their interference with the quiet peace, enjoyment, and safety of Plaintiffs' residents. The Court should deny Defendants' Motion.

## STATEMENT OF PLAINTIFFS' ALLEGED FACTS

Defendants are an "alternative accommodations company" that provide rental brokerage and booking services for short-term rentals between owners or renters of property and so-called "Guests." (1st Am. Compl. ("Compl.") ¶¶ 10-12.) Defendants' conduct involves more than facilitating rental transactions. The Complaint describes "range of services and guarantees" that Defendants provide, including:

- Verifying Host identities and listings before posting rental listings;
- Maintaining a messaging system so Hosts and Guests can communicate;
- Collecting and transferring payments between Hosts and Guests;
- Offering to Hosts free professional photography of their apartments;
- Calculating, collecting, and remitting local occupancy taxes;
- Assisting Hosts in setting booking prices; and
- Directing prospective Guest traffic to Plaintiffs' properties.

(*Id*. ¶¶ 15-20, 54-55.) Defendants engage in other challenged conduct, including calling Plaintiffs to request access for Guests who are denied entry. (*Id*. ¶¶ 15-19, 56.)

Defendants market themselves as a trustworthy company that verifies listings and users and bans Hosts who "abuse the trust of their neighbors." (*Id*. ¶¶ 16-17, 21-22, 54-55, 57-58.) Although Defendants have banned Hosts who run afoul of their anti-discrimination policy (*id*. ¶¶ 21-22), they refuse to discontinue transactions with

1    Hosts whom Defendants <u>knows</u> are acting without permission. (*Id*. ¶¶ 52-53, 59).

2           Plaintiffs own and operate residential apartment buildings in Los Angeles

3    County. (*Id*. ¶ 24.) Plaintiffs strive to provide their permanent residents a safe living

4    environment free from disruption. (*Id*. ¶ 25.) As part of Plaintiffs' commitment to

5    their residents, they vet applicants before allowing them to move in. (*Id*. ¶¶ 25-26.)

6           Because Plaintiffs' apartments are located in neighborhoods that are attractive

7    to travelers, Plaintiffs have experienced increasing Airbnb activity at their buildings.

8    (*Id*. ¶ 37.) Those unauthorized short-term rentals are the antithesis of a safe and

9    peaceful residential community and turn Plaintiffs' properties into illegal hotels for

10   the economic benefit of Defendants. Plaintiffs have not vetted Airbnb Guests. (*Id*. ¶

11   28.) The Guests are trespassers, and they cause stress and disruption to Plaintiffs'

12   residents, as shown by the complaints Plaintiffs have received and the fact that

13   Plaintiffs have lost some residents because of Airbnb activity. (*Id*. ¶¶ 29, 43.) For

14   these reasons, Plaintiffs' standard lease with all of their residents contains an anti-

15   sublet clause that prohibits residents from "using a short term rental service such as

16   www.airbnb.com." (*Id*. ¶ 27.) Far from being "anti-tenant," this provision is a

17   necessary part of Plaintiffs' commitment to their residents, and Plaintiffs' residents

18   support enforcement of it against Hosts who breach their leases. (*Id*. ¶¶ 28-29.)

19          Despite this prohibition, some of Plaintiffs' tenants have rented their apartments

20   through Airbnb. (*Id*. ¶ 37.) Because the tenants do not ask for Plaintiffs' permission,

21   and because Defendants promote the anonymity of Hosts, Plaintiffs asked Defendants

22   to stop unauthorized rentals in their buildings and provided Defendants with a copy of

23   their standard lease and the offending apartment listings. (*Id*. ¶¶ 44-51.) Defendants

24   agreed to work with Plaintiffs at first, but later changed their tune. (*Id*. ¶¶ 47-51.)

25   Despite knowing that Plaintiffs' tenants are not permitted to rent on Airbnb, and

26   despite the fact that Defendants' own Terms of Service prohibit (in fine print)

27   unauthorized bookings, Defendants continue to contract with the tenants and to

28   promote, broker, and profit from the prohibited accommodations. (*Id*. ¶¶ 52-54.) As a

result, Plaintiffs have been forced to implement expensive and burdensome self-help remedies to monitor and stop Airbnb activity, including increasing security patrols to prevent trespassing and evicting tenants who breach their leases. (*Id*. ¶ 29.)

## ARGUMENT

## I. PLAINTIFFS ALLEGE COGNIZABLE BREACHES OF LEASES

Defendants argue that the Court should dismiss all of Plaintiffs' claims because Plaintiffs have not alleged "an underlying breach" of lease by their tenants. (Mem. at 5.) Defendants' argument is wrong—even frivolous—as a matter of both fact and law.

First, Defendants incorrectly argue that Plaintiffs must allege a breach of a contract between Plaintiffs and a third party to succeed on <u>each</u> of Plaintiffs' claims. (*Id.* at 5.) But California law does <u>not</u> require an "actual or inevitable breach" to state a claim for interference with contract or prospective business advantage, and Defendants do not even cite any case that supports their argument for the other claims. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1129 & n.8 (1990) (interference claim requires only a "disruption" of contract or business relationship). Plaintiffs allege that Defendants have disrupted Plaintiffs' leases and made Plaintiffs' performance more costly. (*E.g.*, Compl. ¶ 37.) That is sufficient.

Second, the Complaint does allege facts showing the existence of a contract between Plaintiffs and their tenants. Plaintiffs "execute a standard form lease with <u>each</u> . . . approved tenant[]," and "Paragraph 18 of Plaintiffs' standard form lease provides [that] Resident shall not sublet the Apartment or assign this Lease for any length of time, including, but not limited to, renting out the Apartment using a short term rental service such as airbnb.com." (Compl. ¶¶ 26-27 (emphasis added); *see also id.* ¶¶ 37, 49, 52, 83-84.) Defendants ignore those facts, arguing that Plaintiffs' allegation that "[e]very tenant's lease includes <u>an</u> anti-subleasing clause" somehow implies that <u>some</u> of Plaintiffs' leases do not prohibit Airbnb rentals. (Mem. at 5 (emphasis added).) Defendants' erroneous construction of Plaintiffs' well-pled allegations is inconsistent with Rule 8's notice pleading standard and contradicted by

1  the plain language of the Complaint. *See Doe v. Holy See*, 557 F.3d 1066, 1081-82

2  (9th Cir. 2009) (courts "do not engage in a hypertechnical reading of the complaint

3  inconsistent with the generous notice pleading standard").

4        Third, Defendants incorrectly argue that the Court should <u>assume</u> that there

5  were no lease breaches—despite Plaintiffs' express allegations to the contrary (*see*

6  Compl. ¶¶ 29, 44, 52, 86)—because the anti-assignment clause voids only sublets

7  obtained without "prior written consent" (*id*. ¶ 27) and because Plaintiffs supposedly

8  have "not alleged that it did *not* consent" (Mem. at 6). Plaintiffs <u>repeatedly</u> allege that

9  "hosts who rent Plaintiffs' apartments are not authorized to sublet their apartments to

10  Airbnb guests and do not have Plaintiffs' permission to do so." (Compl. ¶ 52; *see also*

11  *id*. ¶¶ 37-38, 42-43.) The fact that the Complaint uses the words "not authorized"

12  rather than "consent" is irrelevant. *See Doe*, 557 F.3d at 1081. Under California law,

13  "every instance of noncompliance with a contract's terms constitutes a breach."

14  *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987).

15  Here, Plaintiffs allege facts showing that tenants who sublet through Airbnb breach

16  their leases. (*E.g.*, Compl. ¶ 52.) That is enough to plausibly establish a breach.

17        Finally, Defendants' argument that Plaintiffs are somehow unreasonably

18  withholding consent from their tenants is wholly improper at this stage and, in any

19  event, contrary to the well-pled allegations. Landlords cannot be charged with

20  unreasonably withholding consent where their tenants did not ask to sublet in the first

21  instance. *E.g.*, *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*,

22  2017 WL 745871, at *7 (N.D. Cal. Feb. 27, 2017); *Hayes v. Kardosh*, 2017 WL

23  1382566, at *14 (Cal. Ct. App. Apr. 18, 2017). The requirement that the landlord not

24  "unreasonably" withhold consent only applies where "consent has been sought."

25  *Thrifty Oil Co. v. Batarse*, 174 Cal. App. 3d 770, 775-76 (1985). Here, Plaintiffs

26  allege that their tenants who are Hosts do <u>not</u> seek Plaintiffs' permission but instead

27  offer their apartments in secret and try to avoid Plaintiffs' detection. (Compl. ¶¶ 40,

28  43.) That is why Plaintiffs have incurred security and monitoring costs and requested

1    Defendants stop the unauthorized short-term rentals. (*Id.* ¶¶ 29, 37, 45).

2          Even if Defendants could find some evidence that Plaintiffs' tenants sought

3    Plaintiffs' consent to short-term Airbnb rentals, whether Plaintiffs <u>unreasonably</u>

4    withheld consent is a fact question inappropriate for resolution on the pleadings.[1] *See*

5    *Kendall v. Ernest Pestana, Inc.*, 40 Cal. 3d 488, 501 (1985). The Complaint alleges

6    facts that, if true, are sufficient for a jury to find that Plaintiffs' prohibition of short-

7    term vacation rentals is reasonable and <u>not</u> made "on the basis of personal taste,

8    convenience or sensibility." (*Compare* Mem. at 6, *with* Compl. ¶ 29 (residents

9    complained "about unwanted noise, disturbances, property damage, and other

10   concerns regarding . . . Airbnb 'guests'"), *id.* ¶¶ 31-34, 39-42 (examples of problems

11   caused by Airbnb Guests), *and id.* ¶¶ 42-43 (Plaintiffs lost tenants "who were

12   frustrated by the Airbnb activity" and incurred damages and reputational harm).)

13   **II.   PLAINTIFFS ADEQUATELY ALLEGE THAT AIRBNB INTERFERED**

14   **WITH PLAINTIFFS' CONTRACTS AND BUSINESS RELATIONSHIPS**

15       **A.   Plaintiffs Adequately Plead Facts Showing Proximate Causation**

16         Defendants ignore that proximate causation is "a question of fact" to be decided

17   by the jury, *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003), and argues that

18   the Court should dismiss Plaintiffs' three interference claims because "the tenants'

19   actions," not Defendants' conduct, proximately caused the breaches of Plaintiffs'

20   leases. (Mem. at 7.) Defendants are dead wrong. The Complaint alleges facts showing

21   that Defendants' own conduct, together with the tenants, caused the breaches.

22   Defendants' own conduct is a critical causal link in each of the breaches.

23         California "employs the 'substantial factor' test for determining causation" for

24   interference claims.[2] *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir.

25   _____

26   [1] Defendants cite Florida law, arguing that a "blanket refusal to consent to any
     sublease" is "unreasonable." (Mem. at 6 (quoting *Siewert v. Casey*, 80 So.3d 1114,
27   1116 (Fla. Ct. App. 2012)). *Siewert* does <u>not</u> state California law, merely affirmed the
     trial court's findings of fact following trial, 80 So.3d at 1116, and is irrelevant because
     Plaintiffs allege that they prohibit Airbnb short-term rentals, not all sub-leasing.

28   [2] Defendants argue that Plaintiffs must allege that Defendants' conduct was the

2008); *accord* Judicial Council of Cal. Civil Jury Instr. ("CACI") Nos. 2201, 2202, 2204. Courts should not place "undue emphasis" on the ordinary meaning of the word "substantial," as California defines that term "expansively." *Rutherford v. Owens-Ill., Inc.*, 16 Cal. 4th 953, 969 (1997). "Substantial factor" is a "broader rule of causality than the 'but for' test," embracing situations "involving independent or concurrent causes in fact." *Id.* "[T]he fact that the actor's conduct becomes effective in harm only through the intervention of new and independent forces for which the actor is not responsible is of no importance." *Bank of N.Y.*, 523 F.3d at 910 (citation omitted).

The Ninth Circuit summarized the rule as follows: "[A] party who acts knowing that his conduct is highly likely to cause a violation . . . may not avoid liability simply because another person outside his immediate control actually carried out the violation." *Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 951 (9th Cir. 2014). Thus, the proximate cause inquiry focuses on whether "there is a factual chain of causation" responsible for the plaintiff's injury, "not whether there has been an intervening act" by a third party. *Bank of N.Y.*, 523 F.3d at 910.

The Complaint satisfies this standard. Defendants have "brokered hundreds of unlawful subleases" at Plaintiffs' properties, including "after Plaintiffs expressly informed Defendants of the terms of Plaintiffs' leases," and these transactions have caused substantial harm. (Compl. ¶¶ 29, 37-38, 53-54.) Plaintiffs also detail the "range of services and guarantees" Defendants provide, showing that Defendants do "more than simply . . . facilitate short-term rental transactions." (*Id.* ¶¶ 12-21, 54-56.)

Moreover, Defendants incorrectly claim a tenant's supposed "predisposition" to breach is fatal to interference claims and can be decided at the pleading stage. Nearly all of Defendants' cited cases rejected an interference claim based on <u>evidence</u> showing that the third party breached the contract, or at least took definitive steps to

---

"moving cause" of the breach of lease. (Mem. at 7 (quoting *Augustine v. Trucco*, 124 Cal. App. 2d 229, 246 (1954)).) But the Ninth Circuit has rejected use of any standard other than the "substantial factor" test. *Bank of N.Y.*, 523 F.3d at 909.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  breach, <u>before</u> the defendants became involved. *See Bauer v. Interpublic Grp. of Cos.,*
2  *Inc.*, 255 F. Supp. 2d 1086, 1095 (N.D. Cal. 2003) (summary judgment where
3  <u>undisputed evidence</u> showed that third party "had already decided to terminate the
4  contract" and notified the plaintiff of termination <u>before</u> speaking to the defendants);
5  *Charles C. Chapman Bldg. Co. v. Cal. Mart*, 2 Cal. App. 3d 846, 854 (1969) (<u>trial</u>
6  <u>evidence</u> showed that competitor "did not intend to induce any breach" and that none
7  of tenants actually breached the lease); *Burkheimer v. Thrifty Inv. Co.*, 533 P.2d 449,
8  451 (Wash. App. 1975) (applying Washington's "moving cause" standard and finding
9  that <u>trial evidence</u> showed that Thrifty spoke with defendants only <u>after</u> third party
10 decided to terminate). The Complaint's alleged facts here are unlike Defendants' cited
11 cases because Defendants induced, encouraged, and facilitated the breaches before
12 they occurred, and there is no allegation showing that Plaintiffs' tenants inevitably
13 would have breached without Defendants' encouragement. After Plaintiffs' prove that
14 their tenant-Hosts breached their leases with Defendants' active encouragement and
15 help, the burden would shift back to Defendants to prove that each of those hundreds
16 of tenants inevitably would have breached without Defendants. That is something that
17 Defendants cannot prove at all, let alone on the pleadings.

18      In *Dryden v. Tri-Valley Growers*, cited by Defendants, the court affirmed
19 dismissal because judicially-noticed documents and the allegations "conclusively"
20 showed that "performance of the disputed contracts had been abandoned and
21 discontinued by the [breaching party] many months prior to" the defendant's
22 involvement. 65 Cal. App. 3d 990, 997 (1977). The court noted that the allegations
23 seemingly supported an interference claim, but failed "when read in light of the record
24 as a whole." *Id*. at 996-97. Unlike there, Defendants cannot point to any conclusive
25 proof in the Complaint that Plaintiffs' tenants decided to breach before Defendants
26 created the market for short-term rentals and actively encouraged them. Rather, all
27 Defendants can say is that they have several competitors and Hosts created their own
28 profiles. (Mem. at 7.) That is not enough. *See Lawson v. Safeway Inc.*, 191 Cal. App.

4th 400, 418 (2010) ("The allegedly remote connection between [defendant's] conduct and plaintiffs' injuries was an argument for the jury because the evaluation of cause as a substantial factor . . . is ordinarily a question of fact for the jury.").

### B.   Plaintiffs Allege that Defendants Acted with the Requisite Intent

Defendants argue that the intentional interference claims fail because Plaintiffs do "not allege that Airbnb intended to procure the breach of any of Aimco's leases." (Mem. at 8-9.) But Plaintiffs do not need to plead that Defendants "engaged in wrongful acts with the specific intent of interfering with the plaintiff's business expectancy" or contract. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003). Plaintiffs "may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Id.* "The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998).

Defendants admit this low legal standard but claim that Plaintiffs fail to meet it because they do not allege that Defendants' actions were "specifically *designed* to disrupt plaintiff's business expediencies."[3] (Mem. at 9.) The California Supreme Court has rejected this argument. *See Korea Supply*, 29 Cal. 4th at 1156 (rejecting that intentional interference "contains a requirement that a plaintiff plead and prove that the defendant acted with the specific intent, purpose, or design to interfere with the plaintiff's [contract] or prospective advantage."); *Quelimane*, 19 Cal. 4th at 56 (claim "does not require that the actor's primary purpose be disruption of the contract"). Defendants fail to square their argument with these holdings.

At a minimum, the Complaint satisfies the "substantially certain" standard. Plaintiffs describe multiple communications with Defendants in which they made Defendants aware of the "unlawful subleasing" at their properties, provided a copy of

---

[3] Defendants rely on *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002), but that case did not address *Korea Supply*'s "substantially certain" standard.

their standard lease and a list of apartments with offending listings, and sought assistance in preventing short-term rentals. (Compl. ¶¶ 46-51.) Despite Defendants' admission that policing buildings and evicting tenants "is an expensive proposition," and despite their earlier promise to "definitely" help, Defendants changed course and refused to do so. (*Id.*) Defendants try to ignore 10 paragraphs of detailed factual allegations showing the parties' pre-suit communications and Defendants' actions and omissions (*id*. ¶¶ 45-54) as "conclusory" and "legally irrelevant." (Mem. at 9.) The Court should reject Defendants' Rule 12 argument as improper.

Contrary to Defendants' argument, Plaintiffs do not allege that they provided Defendants "only" with a list of suspected violations. (Mem. at 10.) Rather, Plaintiffs detail the information and evidence they provided. Only the trier of fact can decide whether that evidence is enough. *See Aliya Medcare Fin., LLC v. Nickell*, 2015 WL 11072180, at *14 (C.D. Cal. Sept. 25, 2015). Defendants' supposed reliance on the lease's "prior written consent" requirement is nothing more than a post-hoc rationalization by their lawyers—not a point ever made pre-suit. More importantly, Plaintiffs clearly allege they told Defendants that their rentals violated their leases and were unauthorized. (Compl. ¶¶ 45-50.) The questions (a) whether Airbnb employees who supposedly read the lease believed that certain rentals were "authorized"—an unreasonable belief, if so—and (b) whether that supposed belief means that Defendants were unaware it was disrupting Plaintiffs' business relationships can be decided only by a trier of fact after considering the evidence, not on a Rule 12 motion.

## C.   Plaintiffs Plead Defendants' Independently Wrongful Acts

Plaintiffs allege facts showing that Defendants engaged in "independently wrongful acts" sufficient to state a claim for interference with prospective economic advantage. *See Korea Supply*, 29 Cal. 4th at 1158. An act is independently wrongful if, as alleged here, it is proscribed by a statute, regulation, the common law, or "other determinable legal standard." *Id*. at 1159. Plaintiffs allege that Defendants' conduct unjustly enriches Defendants at their expense, is unlawful and unfair in violation of

1  the UCL, constitutes trespass and nuisance, and aids and abets trespassing. (Compl. ¶¶
2  101-04, 118-37.) That is enough to plausibly establish a wrongful act.

3  **D.  Plaintiffs Allege Facts Showing Defendants Owe a Duty of Care**

4  Defendants erroneously claim that they owe no duty to curb their harmful
5  conduct because the parties have "no economic relationship." (Mem. at 11.) But
6  California has "eschewed overly rigid common law formulations of duty in favor of
7  allowing compensation for foreseeable injuries caused by a defendant's want of
8  ordinary care." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 805 (1979). "[W]hether one
9  owes a duty to another must be decided on a case-by-case basis," though "every case
10  is governed by the rule of general application that all persons are required to use
11  ordinary care to prevent others from being injured as a result of their conduct." *Id.* at
12  806. A duty arises "where the risk of harm is foreseeable and is closely connected
13  with the defendant's conduct, where damages are not wholly speculative and the
14  injury is not part of the plaintiff's ordinary business risk." *Id.* at 808.

15  Here, the Complaint alleges facts showing that Defendants owe Plaintiffs a duty
16  to control their conduct. Plaintiffs contacted Defendants for help in preventing
17  unlawful subleasing at their properties. (Compl. ¶¶ 45-50.) In response, Defendants
18  admitted that policing buildings was "an expensive proposition" and offered to
19  remove those listings. (*Id.* ¶¶ 46-48.) Then, Defendants reversed course after their
20  lawyer became involved (*id.* ¶ 49), leaving Plaintiffs to incur substantial monitoring
21  and enforcement costs (*id.* ¶ 29). This harm was "clearly foreseeable" and closely
22  connected with Defendants' business. *J'Aire*, 24 Cal. 3d at 804. Defendants' conduct
23  is "particularly blameworthy" because "it continued after the probability of damage
24  was drawn directly to respondent's attention" and because Defendants conditioned
25  assistance on Plaintiffs' joining their Friendly Buildings Program. *Id.* at 805.[4]

26
27  [4] Defendants incorrectly rely on *Housing Rights Committee of San Francisco v.
   HomeAway, Inc.*, 2017 WL 2730028, at *11 (Cal. Ct. App. June 26, 2017). That case
   affirmed dismissal of a <u>nuisance</u> claim because the plaintiff did not allege "facts
28  imposing a duty on HomeAway to take some affirmative action to control the <u>conduct
   of short-term renters</u>." *Id.* (emphasis added). That decision says nothing about whether

### III.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE UCL

Contrary to Defendants' suggestion, the UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and . . . is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The state legislature framed the UCL in "broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Id.* at 181. Defendants' unlawful and unfair business practices are the type of scheme prohibited by the UCL.[5]

#### A.   Plaintiffs Plead a UCL Claim Regardless Whether They Are Defendants' Consumers or Competitors

Defendants argue Plaintiffs are not consumers or competitors of Defendants' services, so they cannot (1) state a UCL claim or (2) prove that they lost money "*as a result* of the unfair competition." (Mem. at 11-12, 15.) But Plaintiffs allege that they are potential "consumers" of Defendants' services insofar as Airbnb targets property owners, like Plaintiffs, with their Friendly Buildings Program. (Compl. ¶¶ 23, 46.)

And California law does <u>not</u> require Plaintiffs to be consumers or competitors.[6] *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 6638929, at *4 (N.D. Cal. Oct. 30, 2015); *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1077 (C.D. Cal. 2003). "Any person," including corporations, may bring an action so long as that person "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17201, 17203-04. The UCL "grants standing

---

Defendants owe a duty to Plaintiffs to control Defendants' <u>own</u> commercial conduct.

[5] Plaintiffs do not seek to state any claim under UCL's "fraudulent" prong.

[6] Defendants cite inapposite cases. *See Almasi v. Equilon Enters., LLC*, 2012 WL 3945528, at *9 (N.D. Cal. Sept. 10, 2012) (granting summary judgment because, unlike here, plaintiffs "failed to provide any support for their argument that they can bring a UCL claim for unfair practices despite not being consumers or competitors"); *Ctr. for Neuro Skills v. Blue Cross of Cal.*, 2013 WL 5670889, at *9 (E.D. Cal. Oct. 15, 2013) (same); *IV Solutions, Inc. v. Conn. Gen. Life Ins. Co.*, 2015 WL 12843822, at *17-18 (C.D. Cal. Jan. 29, 2015) (granting summary judgment after finding that, unlike here, "this is a non-competitor business-to-business contract dispute" that "lacks any connection to the protection of fair competition or the general public").

to companies of varying size, to defend the rights of the general consuming public against unfair and fraudulent business practices." *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010). The question is whether (1) "the public at large, or consumers generally, are affected by the alleged unlawful business practice," *id.*, and (2) Plaintiffs suffered an "*economic injury*" "*caused by*[] the unfair business practice . . . that is the gravamen of the claim," *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

Plaintiffs satisfy both factors. First, they allege facts showing that this is <u>not</u> just a private dispute. This case is about stopping Defendants' conduct that harms different groups and aims to protect: (1) thousands of Plaintiffs' residents—and millions of other property owners' residents—who are forced to share their residential communities with unvetted trespassers; (2) Plaintiffs and other property owners who must incur substantial costs to ensure their residents' safety, quiet, and enjoyment; and (3) Airbnb Guests who are denied accommodations because they unwittingly booked apartments that are not authorized for short-term rental. (Compl. ¶¶ 28-29, 31-34, 56.) Second, Plaintiffs describe the "costs and damages" they have incurred "as a result of Defendants' continued actions in facilitating, brokering, and profiting from unlawful subleases," including for security patrols, evictions, repairing property damage, loss of rental income, and reputational harm. (*Id.* ¶¶ 29, 38, 42- 43.)

Despite these allegations, Defendants incorrectly argue that Plaintiffs cannot satisfy the UCL's standing requirement because they plead harms suffered by "other landlord/property owners," not by "consumers or members of the general public."[7] (Mem. at 15-16.) As an initial matter, property owners <u>are</u> members of the public. Moreover, the UCL does not require that the harm suffered by the plaintiff be the same as that suffered by others. The UCL requires only that the plaintiff suffered harm

---

[7] Defendants also claim there is no standing because Plaintiffs have not pleaded a restitution claim (Mem. at 16), but *Kwikset* says otherwise. *See* 51 Cal. 4th at 337.

1  caused by the unfair practice that is the gravamen of the complaint.[8] *Kwikset*, 51 Cal.

2  4th at 322. That is what Plaintiffs allege here. *See, e.g.*, *James v. UMG Recordings*,

3  2011 WL 5192476, at *5 (N.D. Cal. Nov. 1, 2011) (denying motion to dismiss where

4  complaint alleged a connection to protection of the public); *Acad. of Mot. Pictures*

5  *Arts & Scis. v. GoDaddy.com, Inc.*, 2010 WL 11463989, at *3 (C.D. Cal. Dec. 15,

6  2010) (allowing claim even though the plaintiffs were not competitors or consumers

7  because wrongful conduct impacted the public).

8      Finally, Plaintiffs anticipate that Defendants will ask the Court to follow

9  *Gamache v. Airbnb, Inc.*, 2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017), an

10  unpublished decision that dismissed a UCL claim for lack of standing. This Court

11  should decline to do so. First, unlike here, the *Gamache* plaintiffs were <u>residents</u> of an

12  apartment building where Airbnb rentals occurred and could not allege that they "paid

13  any additional money for repair or upkeep of the common areas as a result of the

14  short-term renters." *Id*. at *4. Second, the *Gamache* court's conclusion that "any

15  damage allegedly from short-term renters was not caused by Airbnb," but by "short-

16  term renters," *id*., is contrary to *Kwikset's* holding that the UCL's "as a result of"

17  language requires only a "showing of a causal connection." 51 Cal. 4th at 326. That is,

18  the unfair practice must be "an immediate cause of the injury-producing conduct," not

19  "the sole or even the decisive cause." *Id.* at 327. Here, Plaintiffs plead facts showing

20  that Defendants' conduct was an immediate cause of their injuries.

21      **B.    Plaintiffs Allege that Defendants Engages in Unlawful Practices**

22      The unlawful practices prohibited by the UCL are "any practices forbidden by

23  law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or <u>court-</u>

24  <u>made</u>." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994) (emphasis

25  added); *accord Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (2006)

26

27  ───────────────
   [8] The *Webkinz* case is inapposite because that court dismissed without prejudice after
28  finding the allegations, unlike here, "fundamentally sound in contract" and "fail[] to
   state a connection to the protection of the general public." 695 F. Supp. 2d at 999.

───────────────

14

("common law" claims can serve as UCL predicate). Because Plaintiffs plead cognizable claims for interference, trespass, nuisance, and unjust enrichment, Plaintiffs adequately allege a violation of UCL's unlawful prong. *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (plaintiff "adequately alleged a violation" of the unlawful prong because "intentional interference with contract is a tortious violation of duties imposed by law").

Defendants also are subject to UCL liability for "enabling, encouraging, and profiting from tenants' illegally subleasing their apartments at the Properties in violation of the Los Angeles Municipal Code" and other municipal laws. (Compl. ¶ 90; *see Chen v. Kraft*, 243 Cal. App. 4th Supp. 13, 21-22 (2016) (subletting through Airbnb may violate the L.A. municipal code and be "unlawful").) A "plaintiff can allege a claim for aider and abettor liability under § 17200." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008); *accord In re First All. Mortg. Co.*, 471 F.3d 977, 996 (9th Cir. 2006). Plaintiffs may, therefore, rely on their tenants' municipal code violation.

### C.     Plaintiffs Allege that Defendants Engage in Unfair Business Practices

California courts have applied various tests to determine whether conduct is unfair under the UCL. The test most applicable here, the "balancing test," asks whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and then "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Grace v. Apple Inc*., 2017 WL 3232464, at *14 (N.D. Cal. July 28, 2017). This approach "involves an examination of [the practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Whether a practice is unfair is "a determination . . . of fact which requires a review of the evidence from both parties [and,] thus cannot usually be made on demurrer." *Nolte v. Cedars Sinai Med. Ctr*., 236 Cal. App. 4th 1401, 1408 (2015) (alteration in original).

Plaintiffs plausibly allege unfair acts. First, Defendants' conduct is the type of "unethical" and "unscrupulous" conduct prohibited by the UCL: profiting at the expense of California residents and property owners who are largely powerless to identify and stop the trespassing, and contracting with Hosts whom Defendants know have no legal right to rent their apartments to vacationers, whom may be evicted for breach and which may result in Guests being denied entry. *See Bekins v. Zheleznyak*, 2016 WL 1091057, at *10 (C.D. Cal. Mar. 21, 2016).

Second, Plaintiffs allege substantial harm to several groups: property owners who incur costs to prevent their buildings from turning into de facto hotels; residents who deal with unwanted disturbances, safety concerns, and increased use of common areas; and Airbnb Guests who are denied entry. (Compl. ¶¶ 28-34, 43, 46.) Defendants focus only on the latter group, claiming that Guests "appear to have gotten exactly what they bargained for" and are unharmed because of Defendants' Guest Refund Policy. (Mem. at 13.) But that argument ignores Plaintiffs' well-pled facts showing that Plaintiffs prevent Guests from accessing the properties whenever Guests can be identified. (Compl. ¶¶ 29, 56, 60.) And when Guests are denied accommodations <u>after</u> their arrival, they <u>are</u> harmed and inconvenienced regardless of any later refund.

Defendants also argue that disclaimers in their Terms of Service somehow prevent a finding that Defendants' conduct is unfair. (Mem. at 13.) Defendants' Terms of Service have no or little impact on owners and residents, and any impact on consumers cannot be resolved at the pleadings stage. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) (court could not "conclude at this stage that Apple's practices are not injurious to consumers as a matter of law"). Defendants' disclaimers are buried in "fine print" and not "likely" to be read. (Compl. ¶¶ 60-61.) A trier of fact could find that they have no impact on the alleged harm.

Finally, the Complaint plausibly shows that the harm to residents, property owners, and consumers outweighs the utility of Defendants' conduct. Defendants claim that this Court should hold as a matter of law that the "enormous benefits of

1  Airbnb's platform . . . vastly outweigh those injuries." (Mem. at 14.) As courts

2  repeatedly have held, "[t]he cost-benefit analysis this test calls for is not properly

3  suited for resolution at the pleading stage." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d

4  1051, 1117 (N.D. Cal. 2015). The proper analysis <u>at trial</u> would weigh the claimed

5  justifications and benefits of the <u>challenged</u> business practices—not the benefits of the

6  entire platform—against the harm caused by the <u>challenged</u> practices. *See, e.g.*,

7  *Grace*, 2017 WL 3232464, at *14-15 (argument that "injury is outweighed by Apple's

8  business justifications is not suitable for resolution on a motion to dismiss"); *In re*

9  *Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016); *Gomez*

10 *v. Nationstar Mortg., LLC*, 2015 WL 966224, at *12 (E.D. Cal. Mar. 4, 2015).

11 **IV.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT**

12        Defendants urge dismissal of the unjust enrichment claim because "California

13 law does not recognize a cause of action for unjust enrichment" and the claim is

14 "superfluous" given the UCL claim. (Mem. at 16.) The Ninth Circuit has squarely

15 rejected this argument. *See Bruton v. Gerber Prod. Co.*, 2017 WL 3016740, at *1 (9th

16 Cir. July 17, 2017); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th

17 Cir. 2016); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).

18 In *Astiana*, the district court dismissed the unjust enrichment claim, ruling that "it is

19 not a standalone cause of action in California." 783 F.3d at 756. The Ninth Circuit

20 reversed: "When a plaintiff alleges unjust enrichment, a court may construe the cause

21 of action as a quasi-contract claim seeking restitution." *Id*. at 762. And courts cannot

22 dismiss the claim as "duplicative of or superfluous to . . . other claims" because a

23 party may set out claims "alternatively or hypothetically." *Id*. at 762-63.

24        Defendants cite to <u>pre</u>-*Astiana* cases and ignore controlling precedent, running

25 afoul of their duty of candor to the Court. *See Transamerica Leasing, Inc v. Compania*

26 *Anonima Venezolana de Navegacion*, 93 F.3d 675, 675-76 (9th Cir. 1996). Under

27 Ninth Circuit precedent, the Court should deny Defendants' Motion. *See In re Vizio,*

28 *Inc., Consumer Privacy Litig.*, 2017 WL 1836366, at *18 (C.D. Cal. Mar. 2, 2017).

## V.    PLAINTIFFS ADEQUATELY PLEAD THEIR TRESPASS CLAIMS

### A.    Defendants Caused the Unauthorized Entry of Third Parties

Defendants wrongly argue that Plaintiffs must "allege that Airbnb itself entered onto its properties" to state a trespass claim. (Mem. at 17.) "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1177-78 (2014). The defendant itself need not enter the property. Rather, a trespass may be committed "by [the defendant's] causing the entry of some other person." *Martin Marietta Corp. v. Ins. Co. of N. Am.*, 40 Cal. App. 4th 1113, 1132 (1995); *see also Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events LP*, 2009 WL 10671400, at *5 (C.D. Cal. Aug. 12, 2009) ("If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters."). Because Plaintiffs allege facts showing that Defendants caused third parties to enter their properties without permission, Defendants' Motion fails.

### B.    Plaintiffs Adequately Allege Aiding and Abetting Trespass

Defendants claim that they cannot be held liable for aiding and abetting trespass because (1) Airbnb Guests and Plaintiffs' tenant-Hosts "are not trespassers in the first place"; (2) Plaintiffs do not allege that Defendants gave "substantial assistance" to the trespassers; and (3) Plaintiffs fail to allege that Defendants intended to facilitate the trespass. (Mem. at 17-18 & 17 n.5.) Defendants are wrong on each point.

First, Defendants misconstrue California law when they claim Airbnb Guests are "authorized to enter the properties" until they are forced to vacate. (*Id.* at 17.) "A trespass requires that the entry be without permission." *Cobb v. City of Stockton*, 192 Cal. App. 4th 65, 73 (2011). Although Guests initially may enter with help from Plaintiffs' breaching tenants, the Guests do not enter with permission of the <u>property owner</u>. A person "who takes and holds possession of another's land is, as to all the world except one having a superior right . . . the owner. However, as against those having superior rights, the possessor remains a trespasser, and his rights and liabilities,

as to such persons, are those of a trespasser only." *Yee Chuck v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 179 Cal. App. 2d 405, 410-11 (1960). That is, under California law Airbnb Guests are trespassers <u>as to Plaintiffs</u>.[9] *Cf. Rex Inv. Co. Ltd v. S.M.E., Inc.*, 2016 WL 4507463, at *4 (S.D. Cal. Aug. 29, 2016) (unpermitted assignment is a valid conveyance only "as to all other parties"). Moreover, even if Defendants were correct that Guests become trespassers only after they are told to leave, the Complaint satisfies that standard. Plaintiffs allege that they have "denied" Airbnb Guests' access to the properties. (Compl. ¶¶ 29, 42, 56.)

Second, Plaintiffs' tenants-Hosts are trespassers when they engage in short-term subletting. "Where one has permission to use land for a particular purpose and proceeds to abuse the privilege, or commits any act hostile to the interests of the lessor, he becomes a trespasser." *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1780 (1993); *accord Donahue Schriber*, 232 Cal. App. 4th at 1178. Plaintiffs authorize their residents to live in their apartments and to use the common areas, but forbid tenants from "renting out the Apartment using . . . airbnb.com." (Compl. ¶ 27.) When a tenant sublets through Airbnb, he acts outside the scope of authorization and is a trespasser. *Cf. M&M Media Grp., Inc. v. Regency Outdoor Advert., Inc.*, 2013 WL 5533189, at *5 n.4 (Cal. Ct. App. Oct. 8, 2013) (tenant trespasses when he remains in possession after lease expiration "without the consent of the landlord").

Third, Plaintiffs allege more than Defendants "operat[e] an online platform through which some hosts transact with guests." (Mem. at 18.) Plaintiffs describe the "range of services and guarantees" that Defendants provide. (*See* Compl. ¶¶ 15-20, 54-55.) Thus, Plaintiffs allege facts showing substantial assistance.

Finally, Plaintiffs allege that Defendants acted with the requisite intent. Aiding

---

[9] Defendants' reliance on *Vallely Invs., L.P. v. BancAmerica Comm. Corp.* and *Klee v. United States* is misplaced. *Vallely Investments* does not even use the word "trespass." 88 Cal. App. 4th 816 (2001). And *Klee* is a 1931 criminal case where the court construed a Washington statute concerning "tenants in sufferance" to find that the police engaged in an illegal search and seizure. 53 F.2d 58, 61 (9th Cir. 1931).

and abetting liability "depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Upasani v. State Farm Gen. Ins. Co.*, 227 Cal. App. 4th 509, 519 (2014); *In re First All. Mortg.*, 471 F.3d at 993 ("actual knowledge, not specific intent" required). Plaintiffs allege that Defendants know that Hosts who rent their apartments are unauthorized but nevertheless continues to substantially assist them. (Compl. ¶¶ 45-54.) That is enough.

## VI.   PLAINTIFFS STATE A CLAIM FOR NUISANCE

### A.   A Duty of Care Is Not Required to State a Claim for Nuisance

Defendants incorrectly claim that Plaintiffs must allege a duty to state a nuisance claim. "[A] nuisance requires some sort of conduct, i.e. intentional and unreasonable, reckless, negligent . . . that unreasonably interferes with another's use and enjoyment of his property." *Lussier v. San Lorenzo Valley Water Dist.*, 206 Cal. App. 3d 92, 102 (1988). Only a negligence-based nuisance claim requires a duty. *Id.* at 106 (for intentional nuisance, plaintiff "need only show that the defendant committed the acts that caused injury" and need not "establish a duty to act"). Here, Plaintiffs allege that Defendants intentionally engaged in conduct that caused their injuries. (Compl. ¶¶ 51-53, 85, 108, 120, 126.) Proof of a duty is unnecessary. *See Lussier*, 206 Cal. App. 3d at 106.

However, even if an omission-based nuisance claim requires proof of negligence, *id.* at 104, the claim survives because (1) it is based on intentional conduct, and (2) Plaintiffs allege Defendants owe them a duty. Defendants argue that a duty to protect others from third-party conduct arises "only" where the parties are in a "special relationship" (Mem. at 18-19), but neither case cited for that proposition holds a duty is so limited. In *Delgado v. Trax Bar & Grill*, the court explained that "a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct," that one of the "exceptions to the general no-duty-to-protect rule" is the "special relationship" doctrine, and that "foreseeability is a 'crucial factor' in determining the existence and scope of a legal duty." 36 Cal. 4th 224, 235-37 (2005).

Defendants also wrongly claim that courts "consistently" hold that defendants whose services "facilitate nuisances by third parties owe no duty to plaintiffs." (Mem. at 19 (citing two cases).) In *Martinez v. Pacific Bell*, however, the court recognized that a duty may arise where the tortious conduct of third parties is foreseeable and the defendant can control or prevent that conduct. 225 Cal. App. 3d 1557, 1565 (1990). That is the situation here. After Plaintiffs reached out to Defendants to inform them of the problem, Defendants could have stopped the unauthorized rentals but instead made a business decision to continue booking those rentals. (Compl. ¶¶ 21-22, 45-51.) Defendants' Motion is based on a straw man: Plaintiffs do <u>not</u> ask Defendants to control the behavior of Airbnb Guests while Guests stay at Plaintiffs' apartments; rather, Plaintiffs ask Defendants to stop renting Plaintiffs' apartments altogether so that no Guest shows up there. The latter absolutely <u>is</u> within Defendants' control and subjects it to liability. *Cf. Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1552 (2009) (landlord "facilitated the creation" of nuisance and made "business decision not to restrict smoking cigarettes").

## B.   Plaintiffs Allege that Defendants' Conduct Caused Their Harm

Defendants erroneously argue that Plaintiffs fail to plead causation because they allege that third parties caused their harm. (Mem. at 19.) That mischaracterizes the Complaint, as shown above. Further, "[i]t has long been the law in California that [n]ot only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation are responsible for the ensuing damages." *City of Modesto Redev. Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 38 (2004) (citation omitted) (alteration in original). Plaintiffs plead adequate facts showing that Defendants "created or assisted in the creation of the nuisance" (Compl. ¶¶ 10-19, 54-56, 132), thus causing Plaintiffs' damages. *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 306, 309 (2006). Plaintiffs also allege that Defendants' conduct caused them to incur substantial burdens and costs to monitor and prevent Airbnb rentals, including additional security and legal fees, as well as reputational

1  harm, loss of rental income, and property damage. (Compl. ¶¶ 28-29, 38, 135.)

2  Plaintiffs' facts distinguish this case from the recent unpublished decisions in

3  which the California Court of Appeals dismissed nuisance claims brought against

4  Airbnb and HomeAway by affected residents and a nonprofit tenants' rights entity,

5  respectively. *See Gamache*, 2017 WL 3431651, at \*2; *HomeAway*, 2017 WL

6  2730028, at \*11. There, the plaintiffs claimed the nuisances—disturbances, increased

7  noise, smoking, and traffic and lack of security—were caused by the short-term

8  renters, not by the booking services companies. *Gamache*, 2017 WL 3431651, at \*2-

9  3; *HomeAway*, 2017 WL 2730028, at \*10. Here, the alleged nuisances—Defendants'

10  insistence on contracting with Plaintiffs' tenants and facilitating unlawful bookings—

11  directly interfere with Plaintiffs' free use of their properties and cause their damages.

12  More importantly, *Gamache* and *Homeaway* are not binding precedent (having

13  been decided by intermediate courts) and misapply California law. *Gamache* found

14  causation missing because "the direct cause of the harm" was the Guests' conduct and

15  because the plaintiffs made "no allegations that Airbnb encouraged the *nuisance*

16  *activity*." 2017 WL 3431651, at \*2-3; *see HomeAway*, 2017 WL 2730028, at \*11. A

17  plaintiff need prove only "a 'connecting element' or a 'causative link'" between the

18  defendant's conduct and the threatened harm." *Citizens for Odor Nuisance Abatement*

19  *v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017); *see also Bank of N.Y.*, 523 F.3d

20  at 910 (focus is on whether "there is a factual chain of causation," "not whether there

21  has been an intervening act" by a third party); CACI No. 2021 (conduct must be "a

22  substantial factor"). The *Gamache* and *HomeAway* courts ignored this standard and

23  imposed an overly restrictive view that the plaintiffs must allege that Airbnb

24  "instructed renters to smoke, make excessive noise, or engage in any of the other

25  harmful activities." *Gamache*, 2017 WL 3431651, at \*3. California law does not use

26  such a standard. *See Ileto*, 349 F.3d at 1212-13 (gun manufacturer could be liable for

27  nuisance despite its lack of "control over the gun," as "a reasonable jury [could]

28  conclude that the defendants' acts were the cause" of the shooting injury).

### C.    Plaintiffs Adequately Allege a Substantial Property Invasion

Defendants wrongly claim that Plaintiffs identify only a few "isolated incidents" of damage. (Mem. at 19.) Plaintiffs allege that Airbnb activity defeats their "ability to control the identity of the residents" and "results in property damage, reputational harm, and disruption to lawful tenants." (Compl. ¶ 132.) The "hundreds" of illegal subleases have caused numerous residents to complain, and Plaintiffs have lost tenants "who were frustrated by the Airbnb activity," have "increase[d] security patrols and sweeps," repaired damage, and evicted breaching tenants. (*Id.* ¶¶ 29, 37-43, 135.) Whether a jury will agree that "normal persons" would be "substantially annoyed or disturbed by" Airbnb "is, of course, a question of fact" that cannot be decided now. *San Diego Gas & Elec. Co. v. Super. Ct.*, 13 Cal. 4th 893, 938 (1996).

## VII.    THE CDA DOES NOT IMMUNIZE DEFENDANTS' CONDUCT

As the Ninth Circuit has made clear, the CDA "does not provide a general immunity against all claims derived from third-party content" on a website, and courts "must be careful not to exceed the scope of the immunity provided by Congress." *Internet Brands*, 824 F.3d at 853-54; *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1164 (9th Cir. 2008) (the CDA "was not meant to create a lawless no-man's-land on the Internet"). Immunity is only available for those claims where the plaintiff seeks to treat the website as a publisher or speaker of information exclusively created by a third party. *See* 47 U.S.C. § 230(c)(1) (narrowly defining the statutory immunity); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

Defendants cannot prove, especially at this stage, that the CDA bars Plaintiffs' claims. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 848-49 (N.D. Cal. 2012) (denying CDA defense as "premature"). First, just because Plaintiffs' allegations refer or relate to content published by third parties does not mean that Plaintiffs seek to hold Defendants liable as the publisher of that content. Contrary to Defendants' argument, this case is not "premised on . . . the listings on Airbnb" and not about what

1   those listings say. (Mem. at 22.) This case is about Defendants' <u>own misconduct</u>—

2   e.g., intentionally encouraging and profiting from breaches of Plaintiffs' leases,

3   trespasses, and nuisances and interfering with Plaintiffs' and their tenants' contractual

4   relationships. (Compl. ¶¶ 53, 83-137.) The Ninth Circuit has made clear that CDA

5   immunity is not available where, as here, the claims stem from the Internet business's

6   own conduct. *See Internet Brands*, 824 F.3d at 854; *Barnes*, 570 F.3d at 1107-09;

7   *Roommates*, 521 F.3d at 1170. The "correct test" is "not whether a challenged activity

8   merely bears some connection to online content. It is whether a . . . claim 'inherently

9   requires the court to treat' the 'interactive computer service' as a publisher" of

10  information provided by another. *Airbnb*, 217 F. Supp. 3d at 1074.

11      Second, Plaintiffs allege that Airbnb <u>is</u> an "information content provider"—

12  someone who is "responsible, in whole or in part, for the creation or development of"

13  offending content. 47 U.S.C. § 230(f)(3). Immunity is unavailable where the website

14  "contributes materially to the alleged illegality of the conduct," as here. *Roommates*,

15  521 F.3d at 1168; *id.* at 1171 ("[E]ven if the data are supplied by third parties, a

16  website operator may still contribute . . . and thus be liable."). Defendants' conduct

17  includes more than posting listings. (Compl. ¶¶ 12-20, 23, 54-56.)

18      Defendants urge this Court to take the unreasonable position that their

19  "transaction processing" business is an immaterial "extension of the publication itself"

20  and find that Plaintiffs' claims "require recourse to that [third-party] content." (Mem.

21  at 24.) The Northern District recently rejected Defendants' argument. *See Airbnb*, 217

22  F. Supp. 3d at 1073-76. There, Defendants argued that the CDA preempted a San

23  Francisco ordinance that made it a misdemeanor to provide, and collect a fee for

24  providing, booking services for certain short-term rentals. *Id.* at 1070-72. The court

25  disagreed, finding that the ordinance "in no way treats plaintiffs as the publishers or

26  speakers of the rental listings provided by hosts," "does not regulate what can or

27  cannot be said or posted in the listings," and "creates no obligation on plaintiffs' part

28  to monitor, edit, withdraw or block the content supplied by hosts." *Id.* at 1072. The

1  ordinance makes Defendants "liable only for their own conduct, namely for providing,

2  and collecting a fee for, Booking Services." *Id*. at 1073.

3          The same is true here. Plaintiffs' claims do not "inevitably or necessarily treat

4  [Airbnb] as publishers or speakers of user content, or force [it] to edit or remove

5  postings." *Id*. at 1075. Although Defendants might "voluntarily choose to screen

6  listings" if the Court finds for Plaintiffs, the claims do "not compel that result." *Id*.

7  Plaintiffs ask for an order enjoining Defendants from <u>contracting</u> with their tenants

8  (i.e., refraining from brokering rental transactions for Plaintiffs' apartments) and

9  <u>processing payments</u> for rentals of Plaintiffs' apartments. (Compl. ¶ 96.) This Court,

10  too, should reject Defendants' CDA defense. *See Airbnb*, 217 F. Supp. 3d at 1073.

11         Defendants' other case citations are contrary to persuasive authority[10] or

12  "readily distinguishable,"[11] as the *Airbnb* court correctly found.[12] (*See* Mem. at 23-24

13  & n.8.) 217 F. Supp. 3d at 1073. "Much more germane, and of course controlling, are

14  the Ninth Circuit's recent decisions denying preemption under Section 230(c)." *Id*.

15                                    **CONCLUSION**

16         For all these reasons, the Court should deny Defendants' Motion to Dismiss. If

17  the Court dismisses any claims, Plaintiffs respectfully request leave to amend.

18

19  _____

20  [10] *Compare Hill v. StubHub, Inc.*, 727 S.E.2d 550 (N.C. App. 2012) (relied on by Airbnb), *with Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) (CDA "is

21  irrelevant" because regulation "does not depend on who 'publishes'" information), *and NPS LLC v. StubHub, Inc.*, 2009 WL 995483, at *13 (Mass. Super. Jan. 26, 2009)
   (interference claim not barred; StubHub "contributed to the illegal 'ticket scalping'").

22  [11] *See Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 (S.D. Miss. 2014)

23  (CDA applied where plaintiff sought to hold eBay liable for selling recalled products listed by third parties but "failed to allege any facts" showing eBay helped develop

24  listings); *Evans v. Hewlett-Packard Co.*, 2013 WL 5594717, at *3 (N.D. Cal. Oct. 10, 2013) (plaintiff asserted only "conclusory" allegations about defendant's conduct);

25  *Inman v. Techn. USA, Inc.*, 2011 WL 5829024, at *1, 7-8 (W.D. Pa. Nov. 18, 2011) (plaintiff did not plead sufficient facts to demonstrate that eBay "engaged in any direct

26  conduct by which it could be held liable" and barely mentioned eBay in complaint).

27  [12] The court ruled that Airbnb's other citations "are inapposite for the same reason" as the expressly-discussed cases because they "turned on facts showing that the service

28  provider would necessarily be held liable as the publisher or speaker" of third-party content and the cases are inconsistent with Ninth Circuit law. 217 F. Supp. 3d at 1073.

Dated:  September 27, 2017          WHEELER TRIGG O'DONNELL LLP

                                    By: *s/ Michael T. Williams*
                                    Michael T. Williams

                                    Attorneys for Plaintiffs,
                                    LA PARK LA BREA A LLC, LA PARK LA
                                    BREA B LLC, LA PARK LA BREA C LLC,
                                    and AIMCO VENEZIA, LLC

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on September 27, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Michael T. Williams*
Michael T. Williams

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS