1  BRAD D. BRIAN (State Bar No. 79001)
   brad.brian@mto.com
2  HAILYN J. CHEN (State Bar No. 237436)
   hailyn.chen@mto.com
3  JORDAN D. SEGALL (State Bar No. 281102)
   jordan.segall@mto.com
4  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
5  Los Angeles, California 90071
   Telephone: (213) 683-9100
6
   JONATHAN H. BLAVIN (State Bar No. 230269)
7  jonathan.blavin@mto.com
   JOSHUA PATASHNIK (State Bar No. 295120)
8  josh.patashnik@mto.com
   MUNGER, TOLLES & OLSON LLP
9  560 Mission Street, 27th Floor
   San Francisco, California 94105
10 Telephone: (415) 512-4000

11 Attorneys for Defendants AIRBNB, INC.
   and AIRBNB PAYMENTS, INC.
12

13                    UNITED STATES DISTRICT COURT

14       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15 | LA PARK LA BREA A LLC, LA         Case No.: 2:17-cv-4885 DMG (ASx)
16 | PARK LA BREA B LLC, LA PARK
   | LA BREA C LLC, and AIMCO        **DEFENDANTS' OPPOSITION TO**
17 | VENEZIA, LLC                     **PLAINTIFFS' MOTION FOR**
                                      **EXPEDITED DISCOVERY**
18
19 |            Plaintiffs,           Judge:  Hon. Dolly M. Gee
                                      Date:   December 15, 2017
20 |       v.                         Time:   9:30 a.m.
                                      Ctrm:   8C
21
22 | AIRBNB INC. and AIRBNB
   | PAYMENTS, INC.,
23
24 |            Defendants.
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................2

III.   ARGUMENT ..............................................................................................3

     A.    Aimco's Motion Is Untimely and Highly Prejudicial ..........................3

     B.    All Discovery Should Continue to Be Stayed Pending Resolution of Airbnb's Motion to Dismiss, Including its CDA Immunity Defense ................................................................................................7

     C.    Aimco's Discovery Requests Are Irrelevant to its Preliminary Injunction Motion and Are Improper ...................................................9

         1.    Request No. 1:  Transactional Data ...........................................9

         2.    Requests Nos. 2–4:  Alleged CDA-Related Discovery.............12

         3.    Request 5:  Alleged Harm to Airbnb Guests ............................16

IV.    CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ........................................3, 4, 9

*Apple Inc. v. Samsung Elecs. Co.*,
    768 F. Supp. 2d 1040 (N.D. Cal. 2011) ..........................................5, 6

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
    2011 WL 2469822 (C.D. Cal. May 4, 2011) ....................................13

*Ben Ezra, Weinstein, & Co. v. AOL, Inc.*,
    1998 WL 896459 (D.N.M. July 16, 1998)........................................7, 8

*Black v. Google Inc.*,
    2010 WL 3222147 (N.D. Cal. Aug. 13, 2010) ..................................15

*In re Countrywide Fin. Corp. Derivative Litig.*,
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..........................................3, 4

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.*,
    2016 WL 9047162 (S.D. Cal. Aug. 11, 2016) ..................................4, 6

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. 2006)....................................................8

*El Pollo Loco, Inc. v. Hashim*,
    316 F.3d 1032 (9th Cir. 2003)..............................................................7

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
    No. 2:13-cv-07563-DMG-JCG, ECF No. 13 (C.D. Cal. Oct. 18, 2013) .............5

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)........................................................1, 7

*Fields v. Twitter, Inc.*, No. 3:16-cv-00213-WHO, ECF No. 28 (N.D.
    Cal. Apr. 7, 2016) ..............................................................................8

*FTC v. Inc21.com Corp.*,
    688 F. Supp. 2d 927 (N.D. Cal. 2010)................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

*Fuhu, Inc. v. Toys "R" US, Inc.*,
2012 WL 12870313 (S.D. Cal. Oct. 4, 2012) ......................................11

*Gibson v. Craigslist, Inc.*,
2009 WL 1704355 (S.D.N.Y. June 15, 2009) ....................................13

*Global Royalties, Ltd. v. Xcentric Ventures LLC*,
2007 WL 2949002 (D. Ariz. Oct. 10, 2007).....................................13

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009)............................................15

*Gonzalez v. Google, Inc.*,
2017 WL 4773366 (N.D. Cal. Oct. 23, 2017)...........................14, 16

*Gonzalez v. Twitter, Inc.*,
No. 4:16-cv-03282-DMR, ECF No. 47 (N.D. Cal. Sept. 21, 2016) .....................8

*Guttenberg v. Emery*,
26 F. Supp. 3d 88, 99 (D.D.C. 2014)..................................................9

*Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings Inc.*,
2013 WL 12142995 (C.D. Cal., Jan. 10, 2013) ..................................12

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...........................................................................7

*Herrick v. Grindr, LLC*,
2017 WL 744605 (S.D.N.Y. Feb. 24, 2017)......................................16

*Int'l Ass'n of Plumbing and Mech. Officials v. Int'l Conference of Bldg. Officials*, 79 F.3d 1153 (9th Cir. 1996) ...............................................3

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014).....................................................14, 15

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016).........................................................13

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982).........................................................................10

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*MCW, Inc. v. Badbusinessbureau.com, LLC*,
  2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ...................................................14

5

6

*Merle Norman Cosmetics, Inc. v. Martin*,
  914 F.2d 263 (9th Cir. 1990).............................................................................3

7

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,
  194 F.R.D. 618 (N.D. Ill. 2000) ........................................................................4

8

9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009)..............................................................................7

10

11

*Onuoha v. Facebook, Inc.*,
  No. 5:16-cv-06440-EJD, ECF No. 35 (N.D. Cal. April 7, 2017) .....................8

12

13

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015)................................................................15

14

15

*Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*,
  636 F.3d 1150 (9th Cir. 2011)..........................................................................11

16

17

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*,
  2012 WL 2068728 (S.D. Cal. June 8, 2012)......................................................4

18

19

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal.)........................................................................3

20

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for
  Clinical Research*, 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016)............9, 11, 12

21

22

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996)............................................................................7

23

24

*Rutman Wine v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987)..............................................................................8

25

26

*SanDisk Corp. v. Audio MPEG, Inc.*,
  2007 WL 30598 (N.D. Cal. Jan. 3, 2007)........................................................11

27

28

*Sas v. Sawabeh Info. Servs. Co.*,
  2011 WL 13130013 (C.D. Cal. May 17, 2011) .................................................5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

**TABLE OF AUTHORITIES**
(continued)

Page

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*,
  2015 WL 6680807 (C.D. Cal. Oct. 19, 2015)........................................5

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) .........................................................4

*Semper/exeter Paper Company LLC v. Henderson Specialty Paper LLC*,
  2009 WL 10670619 (C.D. Cal., Sept. 21, 2009)..................................5

*Top Rank, Inc. v. Haymon*,
  2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) .....................................9

*United States ex rel. Modglin v. DJO Global Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015) .................................................9

*Universal Commc'n Sys. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) .........................................................8, 13

STATE CASES

*J.S. v. Village Voice Media Holdings, LLC*,
  359 P.3d 714 (Wash. 2015)................................................................14

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ............................................................17

FEDERAL STATUTES

47 U.S.C. § 230 ....................................................................................1, 7, 8

47 U.S.C. § 230(f)(3) ..................................................................................13

STATE STATUTES

Cal. Bus. & Profs. Code § 17204 ...............................................................17

FEDERAL RULES

Fed. R. Civ. P. 16(b) ....................................................................................2

Fed. R. Civ. P. 26..........................................................................................2

Fed. R. Civ. P. 26(d) .....................................................................................3

-v-

# TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 26(d)(1) ................................................................................................2

Fed R. Civ. P. 26(f) ...................................................................................... 1, 2, 3, 9

Fed. R. Civ. P. 34(b)(2)(A) .........................................................................................6

## I.    INTRODUCTION

More than eight months after initiating this action, Aimco filed a motion for a preliminary injunction.  Now, nearly a month *after* filing that motion, Aimco seeks expedited discovery, which it claims is relevant to its request for an injunction.  For several independent reasons, Aimco has failed to demonstrate the good cause necessary to warrant early discovery before the parties' Rule 26(f) conference.

*First*, Aimco's demand for expedited discovery is untimely and highly prejudicial to Airbnb.  Aimco *already filed* its preliminary injunction motion, and Aimco never sought discovery in the eight months leading up to its filing.  If Aimco believed it needed expedited discovery to support its preliminary injunction motion, it should have sought such discovery first and *then* filed its motion.  Aimco's delay in seeking expedited discovery not only prejudices Airbnb's ability to oppose Aimco's preliminary injunction motion, but confirms that the discovery is unnecessary— especially in light of the fact that Aimco already has filed hundreds of pages of declarations and exhibits that ostensibly support its preliminary injunction motion.

*Second*, Airbnb has filed a case-dispositive motion to dismiss, including on the ground that Aimco's claims are entirely preempted under Section 230 of the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230.  The Ninth Circuit has emphasized that "section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles," *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc), and courts consistently have stayed discovery in actions pending resolution of the issue of CDA immunity.  If granted, Aimco's request for expedited discovery would directly undermine this grant of immunity.

*Third*, even if Aimco's motion were timely and there was not a pending case-dispositive motion to dismiss asserting CDA immunity, Aimco's motion would still fail because the proposed requests are not narrowly tailored to obtain information relevant to Aimco's preliminary injunction motion.  Aimco has utterly failed to

demonstrate the relevance of its requests to its pending motion, such as the issue of irreparable harm, and the requests are an improper and transparent end run around the requirements of Rule 26.  The Court should deny the motion.

## II.    BACKGROUND

Aimco filed its original complaint on February 14, 2017, and its First Amended Complaint ("FAC") on June 6, 2017.  (Blavin Decl. ¶ 2.)  Aimco did not seek a temporary restraining order upon filing either the original or amended complaints. Airbnb moved to dismiss the FAC on August 7, 2017.  (ECF No. 16.)  Because neither the Rule 16(b) scheduling conference nor the parties' Rule 26(f) conference has yet occurred, discovery is not yet open.  *See* Fed. R. Civ. P. 26(d)(1).

On a September 18, 2017 meet-and-confer call, Aimco's counsel disclosed for the first time that Aimco planned to file a motion for preliminary injunction.  (Blavin Decl. ¶ 3.)  Aimco's counsel explained that Aimco intended to file the preliminary injunction motion shortly after opposing Airbnb's motion to dismiss, and that it would need to take discovery to support the preliminary injunction motion.  (*Id.* ¶ 3.)

Aimco did not seek leave of Court to take expedited discovery in support of the planned preliminary injunction motion.  Instead, on October 18—more than eight months after filing its original complaint—Aimco moved for a preliminary injunction without seeking any discovery from Airbnb.  In support of its 25-page motion, Aimco filed five lengthy declarations and more than 100 exhibits.  (*See* ECF No. 23.)

Airbnb and Aimco stipulated to an extended briefing schedule for the motion. (*See* ECF No. 39.)  Under the current schedule, Airbnb's opposition is due on December 8, 2017; Aimco's reply is due on December 29, 2017; and the motion will be heard on January 19, 2018.  (*See* ECF No. 40.)

On November 7, 2017, Aimco filed the instant motion for expedited discovery. Aimco argues that its motion is "narrowly tailored to obtain information relevant and essential to Owners' motion for preliminary injunction," even though that motion was filed four weeks *before* this one.  (Mot. 1.)  Aimco noticed its motion for expedited

discovery for hearing on December 15, 2017—after Aimco's opposition is due, but before Aimco's deadline to reply.

## III.   ARGUMENT

### A.   Aimco's Motion Is Untimely and Highly Prejudicial

Aimco claims that expedited discovery is "essential" to its motion for a preliminary injunction.  (Mot. 8.)  But Airbnb could have sought to expedite this "essential" discovery at any time during the eight months that elapsed between the date Aimco filed its original complaint and the date it filed its motion for preliminary injunction.[1]  Instead, Aimco waited nearly a month *after* moving for a preliminary injunction to file this motion.  And it noticed this motion for hearing after Airbnb's opposition to the preliminary injunction motion is due, so that Airbnb will have no opportunity to respond to whatever use Aimco makes of any discovery it obtains. Aimco's motion for expedited discovery should be denied as untimely and prejudicial.

Rule 26(d) of the Federal Rules of Civil Procedure provides that formal discovery may not commence until after the parties have conferred as required by Rule 26(f).  Courts may permit expedited discovery before the Rule 26(f) conference only "upon a showing of good cause."  *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008); *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) ("'Expedited discovery is not the norm.

---

[1] As Airbnb will establish in its opposition to Aimco's motion for a preliminary injunction, this eight-month delay alone warrants a denial of Aimco's motion for a preliminary injunction.  *See, e.g., Merle Norman Cosmetics, Inc. v. Martin*, 914 F.2d 263, at *2 (9th Cir. 1990) (Table) (affirming district court's denial of plaintiff's preliminary injunction because appellant "failed to show the requisite irreparable harm necessitating issuance of a preliminary injunction" where he "waited a full six months after initiating this suit until moving for preliminary relief"); *Int'l Ass'n of Plumbing and Mech. Officials v. Int'l Conference of Bldg. Officials*, 79 F.3d 1153, at *2 (9th Cir. 1996) (Table) (holding that district court erred in granting preliminary injunction where plaintiff "waited seven months before seeking injunctive relief" which "undermines its claim of immediate threatened irreparable injury"); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal.), *aff'd*, 202 F.3d 278 (9th Cir. 1999) (where plaintiff waited "five months before filing its Motion For Preliminary Injunction," delay "demonstrate[d] the lack of any irreparable harm").

-3-

Plaintiff must make some *prima facie* showing of the *need* for the expedited discovery.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)).  "Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'"  *In re Countrywide*, 542 F. Supp. 2d at 1179.

Aimco's only argument that good cause exists to expedite discovery is that its requests are designed "to obtain information important to the … requested preliminary injunction."  (Mot. 3.)  As courts have held, however, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. LegalNet*, 673 F. Supp. 2d at 1066.  And here, Aimco's argument suffers from a fatal flaw: Aimco's demand for expedited discovery is untimely, because Aimco *already filed* its preliminary injunction motion.  Aimco's only conceivable use of expedited discovery in connection with its preliminary injunction motion at this stage would be to introduce the newly discovered evidence on reply.  But that is manifestly improper and prejudicial, and courts have denied motions for expedited discovery in precisely these circumstances.  *See, e.g.*, *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 2016 WL 9047162, at *1 (S.D. Cal. Aug. 11, 2016) (denying motion for expedited discovery as "untimely" where "Plaintiff wishes to use discovery … in its reply memorandum in support of its motion for a preliminary injunction" but "'could easily have asked to use this additional discovery at any time before it filed its motion here'"); *see also Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, 2012 WL 2068728, at *7 (S.D. Cal. June 8, 2012) ("[I]t is not proper for a party to submit new evidence in a reply brief."); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999).

Courts in the Ninth Circuit have emphasized that "adhering to the sequential briefing process" that prohibits new evidence on reply is particularly important in the context of motions for preliminary injunction, "where an opposing party faces the prospect of losing its rights without a full trial on the merits."  *Semper/exeter Paper Company LLC v. Henderson Specialty Paper LLC*, 2009 WL 10670619, at *3 (C.D.

Cal., Sept. 21, 2009) ("Plaintiff submitted moving papers to make its case that a preliminary injunction should issue.  Defendants attacked the sufficiency of Plaintiff's case …. Plaintiff should not be allowed to make a different case with different evidence in reply.").

The cases Aimco cites involve the very different situation of a party seeking a temporary restraining order on an emergency, *ex parte* basis, and simultaneously moving for expedited discovery to support a more permanent preliminary injunction. *See Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. 2:13-cv-07563-DMG-JCG, ECF No. 13, at 7 (C.D. Cal. Oct. 18, 2013) (Gee, J.) (Mot. 3) (granting motion for expedited discovery upon *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (Mot. 8) (same); *Sas v. Sawabeh Info. Servs. Co.*, 2011 WL 13130013, at *7 (C.D. Cal. May 17, 2011) (Mot. 7) (granting *ex parte* TRO and ordering expedited discovery because, "[b]y conducting expedited discovery, Plaintiffs will be able to gather evidence for their motion for preliminary injunction").

The procedural posture of Aimco's motion is decidedly different.  Aimco filed its original complaint in February, disclosed its intention to move for a preliminary injunction in mid-September, and filed that motion in mid-October.  The motion was not filed on an emergency basis; rather, it was elaborately briefed and supported by five declarations.  Aimco could have—and should have—sought this ostensibly essential discovery by moving for expedited discovery at any time from February to October.  *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011) (noting that Apple "has indicated that it may seek a preliminary injunction to prevent Samsung from introducing allegedly infringing products into the U.S. market" and so "sought expedited discovery in support of this *potential* motion" (emphasis added)).  The untimeliness of Aimco's motion alone is grounds for denying

1   it.  *See DNA Genotek*, 2016 WL 9047162, at *1.[2]

2         Aimco's expedited discovery motion is not just untimely, but also highly

3   prejudicial to Airbnb.  Aimco's motion is noticed for hearing on December 15, 2017,

4   a week *after* Airbnb's opposition to the preliminary injunction motion is due.  The

5   effect of this hearing and briefing schedule would be to deprive Airbnb of the ability

6   to address the discovery in its opposition to Aimco's preliminary injunction motion, or

7   to take discovery of its own—which Airbnb reserves the right to do, and must be

8   allowed to do, if Aimco's motion for expedited discovery is granted.[3]  *See, e.g.*, *Apple*,

9   768 F. Supp. 2d at 1047 ("The Court … agrees that Samsung should be entitled to

10  parity in discovery related to the preliminary injunction motion."); *FTC v. Inc21.com

11  Corp.*, 688 F. Supp. 2d 927, 931 (N.D. Cal. 2010) (setting an "expedited discovery

12  schedule" involving document production and depositions in order "[t]o ensure that

13  both parties ha[ve] the opportunity to substantiate their respective claims in

14  preparation for the preliminary injunction hearing").  Further briefing on Aimco's

15  preliminary injunction motion also would be required.  *See Provenz v. Miller*, 102

16  F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a

17  ────────────────

18  [2] The timing of Aimco's motion raises the question whether this discovery is simply a
    fishing expedition with no relation to the preliminary injunction motion whatsoever.
19  Even if the Court grants Aimco's motion on the day it is heard (December 15, 2017),
    Airbnb's responses under the default federal rules will be due on January 15, just four
20  days before the hearing.  *See* Fed. R. Civ. P. 34(b)(2)(A) (time to respond to document
    requests is 30 days).  Yet Aimco does not ask the Court to postpone the preliminary
21  injunction hearing, extend its reply brief due date, or shorten Airbnb's time to respond
    to the proposed discovery.

22  [3] For example, Airbnb anticipates that it would seek discovery such as (but not
    necessarily limited to): (1) depositions of the witnesses whose declarations Aimco
23  submitted in support of its motion; (2) documents reflecting Aimco's policies and
    practices regarding subletting and any requests Aimco has received from tenants
24  seeking its consent to sublets; (3) documents reflecting tenant complaints and
    feedback about the properties at issue in this case, including documents underlying
25  tenant survey evidence Aimco relies upon in its motion; (4) documents reflecting
    Aimco's ability to identify hosts who are in breach of their leases and take appropriate
26  action; and (5) documents showing the costs Aimco claims to have incurred as a result
    of allegedly unlawful subletting at the properties at issue in this case.  Airbnb
27  anticipates that such discovery would be relevant to, among other things, whether
    Aimco can establish injury or irreparable harm as a result of Airbnb rentals, and
28  whether the balance of equities and public interest favor a preliminary injunction.

motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond."); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003) (*Provenz* rule applies in preliminary injunction context). The effect of all this—which Aimco fails to mention—inevitably would be to delay significantly the hearing on the preliminary injunction motion. The Court should reject this unnecessary, protracted, burdensome venture, particularly in the absence of any justification for Aimco's months-long delay in seeking expedited discovery. Instead, the Court can and should simply resolve Aimco's motion for a preliminary injunction without discovery on either side.

## B.  All Discovery Should Continue to Be Stayed Pending Resolution of Airbnb's Motion to Dismiss, Including its CDA Immunity Defense

Discovery should continue to be stayed for an additional reason beyond the fact that Aimco's motion is untimely and prejudicial: Airbnb's motion to dismiss, based in part on its CDA immunity, remains pending and is likely to dispose of all Aimco's claims.

As the Ninth Circuit has emphasized, "section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Roommates.com, LLC*, 521 F.3d at 254. Thus, "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Nemet Chevrolet, Ltd. v. Consumeraffairs. com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009). Courts have analogized CDA immunity to the qualified immunity context, in which a defendant's motion to dismiss on immunity grounds must be resolved prior to discovery. *See id.* at 254–55; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (in qualified immunity context, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed"); *Ben Ezra, Weinstein, & Co. v. AOL, Inc.*, 1998 WL 896459, at *2 (D.N.M. July 16, 1998), *aff'd*, 206 F.3d 980, 987 (10th Cir. 2000).

Here, for the reasons set forth in Airbnb's motion to dismiss briefing (Mot. 20–

25; Reply at 18–25), Airbnb's case-dispositive CDA immunity defense is likely to succeed.  While that motion remains pending, Airbnb should not be subjected to the burdens of discovery.  Indeed, courts routinely stay discovery pending a potentially case-dispositive CDA defense asserted in a motion to dismiss.  *See, e.g.*, *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 425 (1st Cir. 2007) (affirming stay of all discovery); *Onuoha v. Facebook, Inc.*, No. 5:16-cv-06440-EJD, ECF No. 35, at 1–2 (N.D. Cal. April 7, 2017) (Blavin Decl. Ex. A) (staying discovery given that "§ 230 'must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles'" and "if Facebook prevails on its § 230 argument, all of Plaintiffs' claims will be dismissed"); *Fields v. Twitter, Inc.*, No. 3:16-cv-00213-WHO, ECF No. 28 (N.D. Cal. Apr. 7, 2016) (Blavin Decl. Ex. B) ("discovery stay is appropriate" pending resolution of motion to dismiss based on CDA immunity); *Gonzalez v. Twitter, Inc.*, No. 4:16-cv-03282-DMR, ECF No. 47 (N.D. Cal. Sept. 21, 2016) (Blavin Decl. Ex. C) (staying discovery pending resolution of CDA defense); *Ben Ezra*, 1998 WL 896459, at *2–3 (CDA is a "congressionally mandated special immunity" that "free[s]" websites "from the burdens of discovery"); *Doe v. Bates*, 2006 WL 3813758, at *10 (E.D. Tex. 2006) ("fundamental purpose[] of [CDA] immunity" is to "insulate service providers … from the burdens of litigation, including those associated with discovery").

Apart from the CDA, Aimco's claims fail more generally because the allegations in the FAC make clear that Aimco has not established, and cannot establish, the elements of its tort claims.  Where, as here, a pending motion is potentially case-dispositive and can be decided without discovery, the "sounder practice" is to resolve the defendant's motion to dismiss "before forcing the parties to undergo the expense of discovery." *Rutman Wine v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  Courts in this district and elsewhere routinely follow this approach. *See, e.g.*, *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *3 (C.D. Cal. Sept. 17, 2015) (granting motion to stay discovery where arguments raised in motion

to dismiss were "compelling and deserve careful consideration before allowing the parties to proceed with costly and time-consuming discovery"); *United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 997 (C.D. Cal. 2015) (court granted motion to stay discovery "until it decided [defendants'] pending motion to dismiss"); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014) ("[I]f the Court were to grant plaintiff['s] discovery motion, and then grant defendant['s] motion to dismiss for failure to state a claim, defendant[] would have been forced to expend significant resources responding to discovery requests in a case where plaintiff[] did not have a viable cause of action."). This Court should do the same here.

### C.   Aimco's Discovery Requests Are Irrelevant to its Preliminary Injunction Motion and Are Improper

Even if Aimco's motion were timely and there was not a pending motion to dismiss warranting a discovery stay on CDA immunity and other grounds, the motion would still fail because the proposed discovery requests are not "narrowly tailored to obtain information relevant to a preliminary injunction determination." *Am. LegalNet*, 673 F. Supp. 2d at 1069. As set forth below, rather than being "relevant to Plaintiff's motion for preliminary injunction," the requests "appear to be aimed at conducting substantial discovery related to the merits of this dispute prior to the Rule 26(f) conference." *Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*, 2016 WL 7325466, at *3 (S.D. Cal. Dec. 16, 2016) (denying motion for expedited discovery).

### 1.   Request No. 1:  Transactional Data

Aimco's first request seeks detailed personal information about every homesharing transaction on Airbnb's platform involving the subject properties in the last three years, including the date of the booking, the name, address, and apartment number of the host, the amount of the rental fee paid by the guest, and the amount of the fees collected by Airbnb in connection with each transaction. Aimco argues that it needs this information to rebut Airbnb's anticipated argument in opposition to the

injunction that "there have been only 'isolated instances' of *problems by Airbnb Users*." (Mot. 5 (emphasis added).) The data Aimco seeks in its first request, however, has no bearing on the number of "problems" caused by Airbnb users at Aimco's properties. The assertion that there have only been "isolated incidents" of such problems was based on Aimco's own pleadings regarding its alleged nuisance injuries, which amount to one loud party, one incident of somebody knocking on the wrong door late at night, and "excessive" use of the pool at one of the properties by non-residents. (*See* Mot. to Dismiss [ECF No. 16] at 20.) Aimco's argument that "Airbnb's own data will show that Airbnb's short-term rentals"—rather than the number of *problems* caused by those rentals—"are not sporadic or 'isolated'" is simply a non sequitur. (Mot. 5.) The frequency of homesharing at Aimco's properties will not reveal whether there have been any "problems" at the properties—which is information that, at any rate, should be in Aimco's own possession.

Putting aside this fundamental disconnect, Aimco's other arguments also flounder. Aimco argues that this request is "highly relevant" to "whether Airbnb is stripping Owners of their ability to control their own premises … which constitutes irreparable harm." (Mot. 5.) As set forth in Airbnb's motion to dismiss, Aimco is legally incorrect that "Airbnb is stripping Owners of their ability to control their premises." (*Id.*) [4] But at any rate, Aimco's chief authority for that proposition, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436 (1982), held that the size or extent of a property invasion is *irrelevant* to whether it constitutes a deprivation of a protectable interest. *See id.* ("[C]onstitutional protection for the rights of private property cannot be made to depend on the size of the area permanently occupied."). The *number* of Airbnb bookings at Aimco's properties is not relevant to whether operating a homesharing platform causes a "loss of an interest in real

---

[4] Aimco has not pleaded a viable claim for trespass, aiding-and-abetting any trespass, or nuisance, and thus any cognizable loss of its property interests. (*See* Mot. to Dismiss 17–20; Reply ISO Mot. to Dismiss [ECF No. 24] at 12–15.) Nonetheless, because *Aimco* argues that the loss of an interest in real property is an irreparable injury *per se*, the *volume* of Airbnb transactions is plainly irrelevant.

property" sufficient to constitute an irreparable injury.  (Mot. 5 n.2 (quoting *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011)).)

In addition, Aimco's similar claim that the "rental transactions data are relevant to Owners' proving the scope and repeated, systematic nature of Airbnb's rentals," (Mot. 4–5), at best, would go to the issue of *damages*, not irreparable harm, and thus is irrelevant to the pending motion.  Where the "purpose of the requested discovery is to determine the *scope of the alleged harm*," there "is no need to conduct such discovery on an expedited basis" in connection with a preliminary injunction motion. *Profil Institut*, 2016 WL 7325466, at *4 (emphasis added).

Finally, Aimco argues that the data it seeks in Request 1 is "relevant to showing that Airbnb activity has been so substantial as to impact Owners' reputation and goodwill, cause the loss of residents, and create an enormous distraction for Owners' employees."  (Mot. 5.)  But these are factual questions on which Aimco bears the burden to produce its *own evidence*.  Either Aimco has evidence that homesharing on Airbnb has diminished its reputation, driven away its residents, and distracted its employees, or it does not.  *See, e.g.*, *Fuhu, Inc. v. Toys "R" US, Inc.*, 2012 WL 12870313, at *4 (S.D. Cal. Oct. 4, 2012) (denying request for expedited discovery where plaintiffs are "in possession of the information" they claim to need); *SanDisk Corp. v. Audio MPEG, Inc.*, 2007 WL 30598, at *6 (N.D. Cal. Jan. 3, 2007) (denying motion for expedited discovery where requested "documents, if any, should already be in [plaintiff's] possession").  Airbnb's transactional records of homesharing at Aimco properties have no bearing on these issues.

Even if the data Aimco seeks in Request 1 were marginally relevant to the preliminary injunction motion, the request is overbroad and should be denied for that reason.  *Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings Inc.*, 2013 WL 12142995, at *3 (C.D. Cal., Jan. 10, 2013) (denying motion to expedite discovery where requests went "far beyond what … would be necessary to support" motion).  Aimco only argues for the relevance of the *number* of homesharing transactions to its

preliminary injunction motion.  (*See* Mot. 4 ("Owners request Airbnb's rental transactions data for Owners' apartments *to show the extent* of Airbnb activity" (emphasis added).)  Aimco makes no attempt to explain why it needs the other data called for by the request, such as the names, addresses, and apartment numbers of Airbnb hosts, or the amounts of the fees paid by Airbnb guests or collected by Airbnb. Nor could it: both the identities of Aimco's tenants who have hosted on Airbnb in the past and the financial details of those past transactions are obviously immaterial to a motion seeking to enjoin Airbnb from permitting listings at Aimco's properties in the future.[5]  *Profil Institut*, 2016 WL 7325466, at \*3 (denying motion for expedited discovery where "Plaintiff's expedited discovery requests are broad, burdensome, and directed toward the merits of the dispute").

### 2.      Requests Nos. 2–4:  Alleged CDA-Related Discovery

Aimco's second, third, and fourth requests seek information that Aimco claims is relevant to responding to Airbnb's CDA immunity defense, including all documents "concerning Airbnb's communications, encouragement, assistance, or incentives to Hosts to create, modify, or complete a Listing" (Request 2); all communications "between Airbnb and any Host regarding the creation, modification, or completion of any Listing" (Request 3); and all documents "that constitute, refer to, or relate to photographs of the Properties paid for by Airbnb or taken on Airbnb's behalf or at Airbnb's direction" (Request 4).  Aimco is wrong to claim that this discovery will help it refute Airbnb's CDA immunity defense.  The problem for Aimco is that it does not (and cannot) allege, nor could it conceivably establish, that Airbnb is responsible for the *allegedly tortious* component of the listings at issue: the decision to list a property in purported violation of the terms of a tenant's lease agreement.  Because *that* decision rests entirely with Aimco's tenants, Airbnb cannot possibly be responsible for it under the CDA.

---

[5] Airbnb questions whether Aimco seeks such discovery not for its preliminary injunction motion, but rather to identify and evict *en masse* anyone at its properties who has used Airbnb in purported violation of their lease agreements.

1    Thus, as the discovery Aimco seeks would not help it refute Airbnb's CDA

2  immunity defense, Aimco's motion should be denied.  Courts consistently have

3  rejected similar requests for CDA-related discovery where the applicability of CDA

4  immunity is clear on the pleadings.  *See Universal Commc'ns Sys.*, 478 F.3d at 425–

5  26 (where operator on motion to dismiss was "entitled to immunity for its decisions

6  about how to construct its web sites," rejecting plaintiff's request for discovery as

7  based on "sheer speculation" and holding that "plaintiffs should not be permitted to

8  conduct fishing expeditions"); *Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 WL

9  2469822, at *9 (C.D. Cal. May 4, 2011) (denying request for discovery where

10  requested discovery would not overcome CDA immunity); *Gibson v. Craigslist, Inc.*,

11  2009 WL 1704355, at *2 (S.D.N.Y. June 15, 2009) (dismissing claims against

12  Craigslist based on CDA immunity and rejecting requests for discovery "to determine

13  what efforts, if any [Craigslist] made to the stop the selling of illegal goods and

14  services on its website"); *Global Royalties, Ltd. v. Xcentric Ventures LLC*, 2007 WL

15  2949002, at *2 (D. Ariz. Oct. 10, 2007) (denying request for discovery where "given

16  the allegations, the application of the CDA is a question of law and will not be

17  affected by discovery").

18    Aimco's theory is that Airbnb is an "information content provider" with respect

19  to listings at the properties at issue.  *See* 47 U.S.C. § 230(f)(3).  As the Ninth Circuit

20  has recognized, "the immunity in the CDA is broad enough to require plaintiffs

21  alleging such a theory to state the facts plausibly suggesting" that the defendant in fact

22  played that role.  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).  "Here

23  there are no such facts," *id.*, and the requested discovery would not change that

24  reality.[6]  Aimco argues that the requested discovery would help it show "that Airbnb

25

26  ───────────────────

[6] Aimco cites two cases in which courts believed that discovery was necessary to

27  determine whether the defendant was an "information content provider" for CDA
purposes.  (Mot. 7.)  But in these cases, unlike here, the plaintiffs had actually *alleged*
facts suggesting that the defendant materially contributed *to what made the content

28  unlawful*.  *See MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 WL 833595, at *9
(N.D. Tex. Apr. 19, 2004) (defendant website operators allegedly "personally wr[o]te

materially contributes to the illegal listings of Owners' apartments" because "Airbnb is an active participant in creating and developing listings." (Mot. 6.) This reflects Aimco's fundamental misunderstanding of what it means to be an "information content provider" under the CDA. The question is not (as Aimco apparently believes) whether Airbnb helps or facilitates the development of content that may be allegedly unlawful or tortious—rather, the question is whether Airbnb is "*responsible for what makes the displayed content allegedly unlawful*." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014) (emphasis added); *see also Roommates*, 521 F.3d at 1167–68 (relevant question is not whether website offers services that "augment[] ... content generally," but whether it "materially contribute[s] to [the] alleged unlawfulness [of the content]"). As one recent case noted in holding Google immune under the CDA against a claim that videos posted by ISIS on YouTube promoted terrorism, Google was not an information content provider because the plaintiffs did "not allege that Google's own actions—here, its targeted ad algorithm—contribute in any way *to what makes the ISIS-related videos unlawful*." *Gonzalez v. Google, Inc.*, ___ F. Supp. 3d ___, 2017 WL 4773366, at *14 (N.D. Cal. Oct. 23, 2017) (emphasis added).

As explained in Airbnb's motion to dismiss briefing, here it is clear on the face of the allegations of the complaint that Aimco's tenants alone are responsible for what makes the listings at issue allegedly unlawful: the decision to list a unit at Aimco's properties in purported violation of the terms of a tenant's lease. Only such hosts are in a position to know whether their leases contain anti-subletting clauses, whether Aimco has consented to a particular sublet, or whether any refusal to consent is reasonable and valid. (*See* Reply ISO Mot. to Dismiss 19–21.)

None of the discovery Aimco seeks could conceivably change that outcome.

---

and create[d] numerous disparaging and defamatory messages"); *J.S. v. Village Voice Media Holdings, LLC*, 359 P.3d 714, 718 (Wash. 2015) (defendant website allegedly "require[d]" users to create content resulting in unlawful sex trafficking). Here, Aimco's only allegations are that Airbnb provides to users *neutral tools* that some of Aimco's tenants may use in the course of posting listings that breach their leases.

Aimco seeks documents and communications regarding Airbnb's alleged assistance or encouragement to hosts to create or modify listings.  (Requests 2–3.)  But Aimco does not allege, nor could it, that Airbnb's policies or communications specifically assisted or encouraged the creation of listings *that violate leases*.  Absent such an allegation, at most, the requested discovery would show that Airbnb provides "neutral tools" and listings assistance services that some of Aimco's tenants may use to post listings in purported breach of their leases.  *Roommates*, 521 F.3d at 1169.  Even if true, this does not deprive Airbnb of its CDA immunity.  *See, e.g.*, *id.* at 1169 n.24 (website retains CDA immunity "even if the users committed their misconduct using electronic tools of general applicability provided by the website operator"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (website retains CDA immunity "when it merely provides third parties with neutral tools to create web content, even if the website knows that the third parties are using such tools to create illegal content"); *Black v. Google Inc.*, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010), *aff'd*, 457 F. App'x 622 (9th Cir. 2011) ("several courts have considered and rejected theories that an interactive computer service could be held liable merely because its programming facilitated the creation of the content at issue").[7]

Aimco's request for information regarding the photography services Airbnb allegedly provides (Request 4) is equally irrelevant under the CDA.  Aimco never even attempts to explain how *photography services* make listings purportedly unlawful—because they obviously do not.  That squarely forecloses any argument that such photography services deprive Airbnb of its CDA immunity.  *Cf. Herrick v.*

---

[7] While Aimco does not (and cannot) allege that Airbnb specifically encourages hosts to post listings in violation of their leases, even if it did make such an allegation, that would still not be sufficient to displace Airbnb's CDA immunity.  Courts have repeatedly held that a website retains CDA immunity *even if* it allegedly encourages users to post unlawful content.  *See, e.g.*, *Jones*, 755 F.3d at 414 (rejecting "encouragement test of immunity under the CDA"); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015) (same).  Only if a website "*require[s]*" users to post illegal content does it become an information content provider with respect to that content.  *Goddard*, 640 F. Supp. 2d at 1198–99.  Aimco does not, and most certainly cannot, make such an allegation here.

*Grindr, LLC*, 2017 WL 744605, at *4 (S.D.N.Y. Feb. 24, 2017) (dating app immune under CDA for harassment stemming from fake user profiles because "to the extent Grindr has 'contributed' to the harassment by providing functionality such as geo-location assistance, *that is not what makes the false profiles tortious*" (emphasis added)); *Gonzalez*, 2017 WL 4773366, at *14 (Google's ad-targeting services do not "contribute in any way to what makes the ISIS-related videos unlawful").  And at any rate, photography assistance is the quintessential type of "neutral tool," *Roommates*, 521 F.3d at 1169, that is available equally to the many users who post lawful listings and to Aimco's tenants who allegedly post listings in violation of their leases.

### 3.     Request 5:  Alleged Harm to Airbnb Guests

Aimco's fifth request seeks irrelevant information about Airbnb's communications with guests who booked accommodations at Aimco's properties but were turned away when they arrived.  Aimco argues that these communications are relevant to a claim it has never pleaded: a UCL claim on behalf of "Users who were refused entry to, or removed from, Owners' Properties[.]"  (Mot. 7.)  The UCL allegations in Aimco's FAC focused exclusively on Airbnb's injury to *Aimco* and other property owners, and in fact alleged that Airbnb's actions *enriched* its guests at Aimco's expense.  (*See, e.g.*, FAC ¶ 92 ("Airbnb's misconduct … is designed to defraud and violate the property and contractual right of California property owners and enrich Airbnb, *along with its hosts and guests*." (emphasis added)).)  The FAC prayed solely for UCL relief for Aimco's own alleged injuries, and those of other property owners, and not for the alleged injuries of Airbnb guests turned away by Aimco's property managers.  (*Id.* ¶ 95.)  It was only after Airbnb moved to dismiss Aimco's UCL claim on the ground that Aimco lacked standing as a non-competitor and non-consumer (Mot. to Dismiss 15–16; Reply ISO Mot. to Dismiss 10–11) that Aimco shifted to arguing—in contravention of the allegations in its FAC—that it was suing on behalf of "Airbnb Guests who are denied accommodations because they unwittingly booked apartments that are not authorized for short-term rental."  (Opp. to

1    Mot. to Dismiss [ECF No. 20] at 13.)

2          Even if such a claim appeared on the face of Aimco's complaint, Aimco lacks

3    standing to bring it.  As set forth in Airbnb's motion to dismiss papers, a UCL claim

4    will not lie where "the alleged victims are neither competitors nor powerless, unwary

5    consumers."  *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115,

6    135 (2007).  To the extent Aimco's UCL cause of action consists of a claim that

7    Airbnb has harmed "unwitting" guests by failing to warn them when they are booking

8    an "unauthorized accommodation" (Mot. 7), whatever injury *Aimco* has allegedly

9    suffered was not "a result of" that alleged unfair competition.  Cal. Bus. & Profs.

10   Code § 17204.

11         In any case, putting aside the merits of Aimco's reimagined UCL claim, Aimco

12   has failed to offer any reason why Airbnb's communications with users denied entry

13   to Aimco's properties matter for purposes of the preliminary injunction.  Aimco

14   argues that documents "relating to complaints and refund requests by Users who were

15   ejected from Owners' properties are relevant to whether Airbnb's conduct

16   substantially harms its own customers."  (Mot. 7.)  As Aimco thus concedes, such

17   discovery is not relevant to any injury *Aimco* itself claims to have suffered—if

18   anything, this is harm that *Airbnb* suffers from Aimco's actions.  Moreover, Airbnb

19   does not dispute that Aimco does in fact eject some Airbnb users from its properties,

20   nor does it dispute that its users are aggrieved when that occurs.  (Indeed, the simplest

21   way to ameliorate harm to such guests would be for *Aimco* to stop ejecting them from

22   its properties.)  Aimco never explains how Airbnb's communications with such users

23   would be relevant to Aimco's preliminary injunction motion.

24   **IV.   CONCLUSION**

25         The Court should deny Aimco's motion for expedited discovery.

26

27

28

1          Respectfully submitted,

2   DATED:  November 24, 2017          MUNGER, TOLLES & OLSON LLP
3                                          BRAD D. BRIAN
                                           JONATHAN H. BLAVIN
4                                          HAILYN J. CHEN
                                           JORDAN D. SEGALL
5                                          JOSHUA PATASHNIK

6

7                                      By:      */s/ Jonathan H. Blavin*
8                                      Attorneys for Defendants AIRBNB, INC. and
9                                      AIRBNB PAYMENTS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28