Michael T. Williams (*pro hac vice*)
Kathryn A. Reilly (*pro hac vice*)
Allison R. McLaughlin (*pro hac vice*)
Michael N. Mulvania (*pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone:  303.244.1800
Facsimile:   303.244.1879
Email:        williams@wtotrial.com

Robert C. O'Brien (SBN 154372)
R.C. Harlan (SBN 234279)
Larson O'Brien LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:  213.436.4888
Facsimile:   213.623.2000
Email:        robrien@larsonobrienlaw.com

Attorneys for Plaintiffs LA Park La Brea A LLC,
LA Park La Brea B LLC, LA Park La Brea C LLC,
and AIMCO Venezia, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA PARK LA BREA A LLC, LA PARK LA BREA B LLC, LA PARK LA BREA C LLC, and AIMCO VENEZIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AIRBNB, INC. and AIRBNB PAYMENTS, INC., <br><br> Defendants | Case No.:  2:17-cv-04885-DMG-AS <br><br> The Honorable Dolly M. Gee <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED EXPEDITED DISCOVERY** <br><br> Date:  December 15, 2017 <br> Time: 9:30 a.m. <br> Courtroom: 8C |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION .............................................................................................1

ARGUMENT ...................................................................................................2

I.    OWNERS' MOTION FOR EXPEDITED DISCOVERY IS NEITHER UNTIMELY NOR PREJUDICIAL ...................................................................2

    A.    Owners' Motion Is Timely.............................................................2

    B.    Owners Did Not Unreasonably Delay in Bringing Their Motions for Expedited Discovery and Preliminary Injunction .............................4

    C.    Airbnb Will Suffer No Prejudice By Producing Owners' Limited Discovery Requests ...................................................................6

II.    AIRBNB'S PENDING MOTION TO DISMISS IS NO REASON TO DENY EXPEDITED DISCOVERY .......................................................................8

III.    THE REQUESTED DISCOVERY IS HIGHLY RELEVANT TO THE PRELIMINARY INJUNCTION DETERMINATION....................................10

    A.    The Transactional Data (Request No. 1) Is Relevant to Establishing Airbnb's Unlawful Conduct, Owners' Irreparable Harm, and Helps Refute Airbnb's Defense of "Reasonableness" ...................................10

    B.    CDA-Related Discovery (Request Nos. 2-4) Is Directly Relevant to Whether Airbnb Materially Contributes to the Illegal Bookings ........12

    C.    Documents Showing Customer Complaint and Refund Requests (Request No. 5) Are Relevant to Prove Harm to Airbnb's Consumers.................................................................15

CONCLUSION ...............................................................................................15

---

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>Cases</u>

*Airbnb, Inc. v. City & Cty. of S.F.,*
  217 F. Supp. 3d 1066 (N.D. Cal. 2016) ............................................................. 1, 8

*Am. LegalNet, Inc. v. Davis,*
  673 F.Supp. 2d 1063 (C.D. Cal. 2009) ......................................................... 1, 2, 3, 5

*Apple Inc. v. Samsung Elecs. Co.,*
  768 F. Supp. 2d 1040 (N.D. Cal. 2011) ................................................................. 7

*Arc of Cal. v. Douglas,*
  757 F.3d 975 (9th Cir. 2014) ............................................................................... 5

*Ayyash v. Bank Al-Madina,*
  233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................ 3

*Beeks v. ALS Lien Servs.,*
  2014 WL 7785745 (C.D. Cal. Feb. 18, 2014) ....................................................... 5

*Dimension Data North America, Inc. v. NetStar-1, Inc.,*
  226 F.R.D. 528 (E.D.N.C. 2005) ........................................................................ 3

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.,*
  2016 WL 9047162 (S.D. Cal. Aug. 11, 2016) ....................................................... 3

*Doe v. Bates,*
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ...................................................... 9

*Doe v. Internet Brands, Inc.,*
  824 F.3d 846 (9th Cir. 2016) ............................................................................... 9

*E. Coast Test Prep, LLC v. Allnurses.com, Inc.,*
  2016 WL 6997117 (D. Minn. Feb. 22, 2016) ....................................................... 8

*eBay, Inc. v. Bidder's Edge, Inc.,*
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................... 6

*Ezra v. Am. Online Inc.,*
  1998 WL 896459 (D.N.M. July 16, 1998) ............................................................ 9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) ................................................................... 10, 13, 14

*Fed. Trade Comm'n v. Kutzner,*
  2016 WL 9277319 (C.D. Cal. Aug. 24, 2016) ..................................................... 7

*Fields v. Twitter, Inc.,*
  No. 3:16-cv-00213-WHO, ECF Nos. 21 (N.D. Cal. Apr. 7, 2016) ........................ 9

*Franco-Gonzalez v. Napolitano*,
  2010 WL 11479349 (C.D. Cal. Nov. 24, 2010) ...................................................... 1

*Fuhu, Inc. v. Toys "R" US, Inc.*,
  2012 WL 12870313 (S.D. Cal. Oct. 4, 2012)....................................................... 11

*Gilder v. PGA Tour, Inc.*,
  936 F.2d 417 (9th Cir. 1991) .................................................................................. 5

*Grace v. Apple Inc.*,
  2017 WL 3232464 (N.D. Cal. July 28, 2017) ..................................................... 15

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................... 4

*Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials*,
  79 F.3d 1153 (9th Cir. 1996) .................................................................................. 4

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982)............................................................................................... 11

*Merle Norman Cosmetics, Inc. v. Martin*,
  914 F.2d 263 (9th Cir. 1990) .................................................................................. 4

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................ 12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com*,
  591 F.3d 250 (4th Cir. 2009) .................................................................................. 9

*Onuoha v. Facebook, Inc.*,
  No. 5:16-cv-06440-EJD, ECF No. 35 (N.D. Cal. April 7, 2017)............................ 9

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*,
  2012 WL 2068728 (S.D. Cal. June 8, 2012) .......................................................... 4

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................ 7

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) .................................................................... 7

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*,
  2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) ........................................................ 2

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ................................................................................ 7

*SanDisk Corp. v. Audio MPEG, Inc.*,
  2007 WL 30598 (N.D. Cal. Jan 3, 2007)............................................................... 11

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999) ................................. 4

*Semper/exeter Paper Co. LLC v. Henderson Specialty Paper LLC*,
  2009 WL 10670619 (C.D. Cal. Sept. 21, 2009)................................................... 3, 4

iii

*Smith v. Microsoft Corp.*,
  2013 WL 6497073 (S.D. Cal. Dec. 10, 2013) .......................................... 7

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  93 Cal. App. 4th 700 (2001) .................................................................. 12

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
  1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ..................................... 9

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) .................................................................. 9

## **Statutes**

47 U.S.C. § 230(c)(1) ................................................................................... 1, 9

# **INTRODUCTION**

Expedited discovery is appropriate where, as here, a party seeks targeted information relevant to a preliminary injunction determination. *See Am. LegalNet, Inc. v. Davis*, 673 F.Supp. 2d 1063, 1067 (C.D. Cal. 2009). Further, this Court encouraged the parties in its Initial Standing Order "**to begin to conduct discovery actively before the Scheduling Conference**." (Initial Standing Order ¶ 3(b), ECF No. 11.) Flouting this clear authority, Airbnb opposes Plaintiffs' ("Owners") reasonable request for limited expedited discovery. The information sought by Owners is highly relevant and narrowly tailored to Owners' request for a preliminary injunction, is exclusively within Airbnb's possession, and is easy for Airbnb to produce. Yet Airbnb flatly refuses to produce even a single document.

As set forth in Owners' Motion for Expedited Discovery ("Motion"), each of the five factors relevant to evaluating a request for expedited discovery weighs in favor of permitting discovery here. *See Franco-Gonzalez v. Napolitano*, 2010 WL 11479349, at *3 (C.D. Cal. Nov. 24, 2010). Airbnb's Opposition ignores the factors entirely. Lacking any legitimate objection, Airbnb complains that Owners' request for discovery is untimely because it was not made in advance of the preliminary injunction motion. There is no such requirement. To the contrary, the case law supports the timing of Owners' request, given that the information will be produced in advance of the preliminary injunction hearing. Airbnb's cries of prejudice are equally baseless, particularly given Airbnb's ability to address its own documents in its forthcoming opposition brief or at the hearing on January 19.

Nor can Airbnb re-argue its motion to dismiss to defeat Owners' showing of good cause. The Communications Decency Act's ("CDA") "Good Samaritan" defense does not grant Airbnb blanket immunity for unlawful commercial conduct because this case happens to involve a website. *See* 47 U.S.C. § 230(c)(1); *Airbnb, Inc. v. City & Cty. of S.F.*, 217 F. Supp. 3d 1066, 1074 (N.D. Cal. 2016) ("Section 230(c) does not provide limitless immunity for online activity or conduct related to it."). In any event,

1

Airbnb's fixation on its CDA defense underscores why Owners should be permitted, in preparation for the preliminary injunction hearing, to conduct limited discovery regarding Airbnb's active role in brokering contracts and creating unlawful content in connection with its listings—i.e., conduct beyond the CDA's protection.

Owners' discovery requests are narrowly tailored to obtain information relevant to its request for a preliminary injunction. Airbnb does not contend that the requests are in any way burdensome. The Court should grant Owners' request.

## ARGUMENT

## I.   OWNERS' MOTION FOR EXPEDITED DISCOVERY IS NEITHER UNTIMELY NOR PREJUDICIAL

### A.   Owners' Motion Is Timely

Airbnb claims that Owners' requested discovery is untimely because Owners did not file the motion until "*after* moving for a preliminary injunction." (Opp'n at 3.) But Airbnb does not cite a single case holding that a motion for expedited discovery must be filed prior to seeking the preliminary injunction. No such rule exists.

As Airbnb's own cited case holds, "[t]he good cause standard may be satisfied where a party seeks a preliminary injunction." *Am. LegalNet*, 673 F. Supp. 2d at 1066; *see also Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*, 2016 WL 7325466, at *2 (S.D. Cal. Dec. 16, 2016) ("In cases where preliminary injunction motions are pending, courts often permit expedited discovery designed to obtain information required for the preliminary injunction."). "[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing," courts must examine "the reasonableness of the request in light of all the surrounding circumstances" by considering five non-exhaustive factors. *Am. LegalNet*, 673 F. Supp. 2d at 1067 (emphasis added). The first factor is "whether a preliminary injunction is pending." *Id.* Airbnb fails to explain how the first factor squares with its timeliness argument and, instead, just ignores the factors entirely.

1        The first factor—whether a preliminary injunction is pending—cannot be

2   ignored. The specific arguments made, and relief requested, in the motion for

3   preliminary injunction are precisely what justify and determine the scope of

4   permissible discovery. *See id.* at 1069 (denying expedited discovery motion filed <u>after</u>

5   the preliminary injunction motion because "the discovery plaintiff seeks is not

6   'narrowly tailored to obtain information relevant to a preliminary injunction'"). For

7   instance, in *Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528

8   (E.D.N.C. 2005), the plaintiff's request for expedited discovery was "premature"

9   because it was made <u>before</u> the plaintiff sought a preliminary injunction. *Id.* at 532.

10  The court explained that the relevant determination is whether expedited discovery is

11  necessary "in preparation for a *hearing* on preliminary injunction" and reserved the

12  option to consider such a request when a hearing was actually pending. *Id.*

13       Airbnb claims that "courts have denied motions for expedited discovery in

14  precisely these circumstances" (Opp'n at 4), but <u>none</u> of the cases Airbnb cites

15  involved a motion for expedited discovery, let alone held that the request must come

16  before seeking a preliminary injunction.[1] *See DNA Genotek Inc. v. Spectrum Sols.*

17  *L.L.C.*, 2016 WL 9047162, at *1 (S.D. Cal. Aug. 11, 2016) (denying the plaintiffs' *ex*

18  *parte* motion to use discovery from a parallel case in its reply brief); *Semper/exeter*

19  *Paper Co. LLC v. Henderson Specialty Paper LLC*, 2009 WL 10670619, at *3 (C.D.

20  Cal. Sept. 21, 2009) (striking declarations attached in the reply brief as "Plaintiff

21  should not be allowed to make a different case with different evidence in reply").

22  Airbnb's reliance on *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.* and

23  *Schwartz v. Upper Deck Co.* are even further afield as neither of those cases involved

---

[1] Airbnb's attempt to distinguish the cases cited by Owners on the basis that they involved parties seeking expedited discovery in conjunction with an *ex parte* temporary restraining order also fails. (Opp'n at 5.) Airbnb makes no attempt to explain why this distinction matters. In fact, other courts have explained that it is more, not less, difficult to obtain expedited discovery through an *ex parte* motion. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) ("Even applying such heightened scrutiny [because the motion was *ex parte*], however, plaintiff clearly has shown good cause for seeking expedited discovery.").

either a motion for expedited discovery <u>or</u> a motion for preliminary injunction. *See Peregrine*, 2012 WL 2068728, at *7 (S.D. Cal. June 8, 2012) (denying a motion to transfer under 28 U.S.C. § 1404); *Schwartz*, 183 F.R.D. 672, 682 (S.D. Cal. 1999)**Error! Bookmark not defined.** (denying a motion for class certification).

Rather, Airbnb's cited cases stand only for the unremarkable proposition that a party may not submit new evidence in a reply brief. Not only is Airbnb's concern premature (Owners' reply is not due until December 29),[2] but any evidence Owners will submit comes from <u>Airbnb's own files</u> to address issues narrowly tailored to the preliminary injunction determination. Indeed, as shown below, the discovery sought primarily relates to defenses likely to be asserted by Airbnb. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 955 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ("Evidence submitted in direct response to evidence raised in the opposition, however, is not 'new.'"). This situation is, thus, unlike *Semper/exeter*, in which the district court was concerned with fairness to the defendant after the plaintiff submitted three new declarations in reply that made it "a different case." 2009 WL 10670619, at *3.

## B.   Owners Did Not Unreasonably Delay in Bringing Their Motions for Expedited Discovery and Preliminary Injunction

Airbnb's argument that Owners should not have waited eight months since first filing this lawsuit (Opp'n at 3 & 3 n.1) is a red herring. That inquiry goes, if at all, to whether Owners are entitled to a preliminary injunction, not whether they are entitled to expedited discovery in connection with the preliminary injunction hearing.[3] Airbnb

---

[2] Airbnb asserts that Owners' requested discovery, if granted, will not be due until January 15, just four days before the hearing. (Opp'n at 6 n.2) Owners requested that the Court order Airbnb to produce the expedited discovery "within seven days of this Court's order" (Mot. at 1), not the standard 30 days precisely so that the parties have sufficient time to address the discovery produced in advance of the hearing.

[3] Airbnb relies on two pre-2007 unpublished Ninth Circuit opinions in support of its argument that the "eight-month delay alone warrants a denial" of the motion for preliminary injunction. (Opp'n at 3 n.1 (citing *Merle Norman Cosmetics, Inc. v. Martin*, 914 F.2d 263, at *2 (9th Cir. 1990) (Table); *Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials*, 79 F.3d 1153, at *2 (9th Cir. 1996)

1  undoubtedly would have argued that Owners' motion was premature had they sought

2  discovery when the case was first filed or removed. *See Am. LegalNet*, 673 F. Supp.

3  2d at 1067 (factor in weighing reasonableness of expedited discovery request is "how

4  far in advance of the typical discovery process the request was made").

5        More importantly, Owners did not unreasonably delay in seeking a preliminary

6  injunction or expedited discovery. (*See* Decl. of Michael T. Williams ¶¶ 2-17,

7  attached as Ex. 1.) As Airbnb knows well, the first six months of this case involved

8  repeated settlement discussions and the replacement of Airbnb counsel after the initial

9  discussions failed. (*Id.* ¶¶ 3-8.) Owners believed this lawsuit could be amicably

10 resolved without the need for this Court's involvement and actively worked to achieve

11 that goal. (*Id.* ¶¶ 2-4, 8, 13-14, 16-17.) Owners only filed their motions once it became

12 clear that Owners were experiencing a substantial increase of harm, including an

13 increase in the number of move-outs attributable to illegal Airbnb rentals, that

14 Owners' extensive self-help measures were incapable of eliminating unlawful Airbnb

15 activity, and that Airbnb would not stop brokering rentals of Owners' residential

16 apartments absent a court order. (*Id.* ¶¶ 8-17.)

17       Under such circumstances, Owners' timing represents not unjustified tardiness

18 but a prudent respect for this Court's limited time and resources. *See Arc of Cal. v.*

19 *Douglas*, 757 F.3d 975, 991 (9th Cir. 2014) (two-year delay in commencing action

20 does not preclude irreparable harm finding because "waiting to file for preliminary

21 relief until a credible case for irreparable harm can be made is prudent rather than

22 dilatory"); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (five-to-seven

23 month delay did not undermine irreparable harm finding because plaintiff used time to

24 seek meetings with the defendant and assess evidence); *eBay, Inc. v. Bidder's Edge,*

25

26 (Table)). But "[u]npublished dispositions and orders [the Ninth Circuit] are not
   precedent" and "may not be cited to the courts of this circuit." 9th Cir. Rule 36-3.
27 Airbnb's "conduct in citing and discussing an unpublished decision of the Ninth
   Circuit issued prior to 2007 [] is improper." *Beeks v. ALS Lien Servs.*, 2014 WL
28 7785745, at *19 n.5 (C.D. Cal. Feb. 18, 2014).

1  *Inc.*, 100 F. Supp. 2d 1058, 1068 (N.D. Cal. 2000) (finding that the plaintiff's

2  "attempt[s] at self-help," such as attempting blocking software, "convince[] the court

3  that [plaintiff's] delay in seeking preliminary relief was justified").

4      **C.    Airbnb Will Suffer No Prejudice By Producing Owners' Limited**

5          **Discovery Requests**

6        Despite not disputing that the requested discovery is kept in the ordinary course

7  of Airbnb's business and that production poses only a minimal (if any) burden, Airbnb

8  claims that Owners' Motion is "highly prejudicial" because it is not noticed until after

9  Airbnb will file its opposition to the motion for preliminary injunction. (Opp'n at 6-7.)

10  This argument fails.

11        First, Airbnb ignores that Owners first requested this discovery back in mid-

12  September and then provided Airbnb with the specific narrowed requests on

13  October 31, even repeatedly offering reasonable compromises to avoid motion

14  practice. (Williams Decl. ¶ 17.) Airbnb could have produced the documents well in

15  advance of their opposition, but instead chose to delay Owners' filing of this motion

16  by more than a week, and then flatly refused to produce any documents at all. (*Id.*)

17  Airbnb cannot now claim they are prejudiced by the timing of Owners' Motion.

18        Second, none of this evidence is "new" or unknown <u>to Airbnb</u>. <u>The requested</u>

19  <u>documents are Airbnb's own documents</u>. Airbnb solely possesses the documents and

20  is free to address the documents in its forthcoming opposition brief. For instance, only

21  Airbnb knows the number of Users it has sent to Owners' properties or how much

22  money Airbnb has made off Owners' properties. Airbnb is free to address the impact

23  of that data or its supposed irrelevance in its opposition or at the January 19 hearing.

24        To the extent Airbnb wants to rebut Owners' use of Airbnb's documents,

25  Airbnb may do so at the preliminary injunction hearing or, if necessary, in a surreply.[4]

26

27  _____

  [4] While Owners do not believe a surreply will be necessary, Owners will not oppose a

28  <u>reasonable</u> request for supplemental briefing to address Owners' use of Airbnb's
documents, so long as any request does not delay the preliminary injunction hearing.

1  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (courts may consider

2  evidence presented in a reply where the non-movant has an opportunity to respond);

3  *Fed. Trade Comm'n v. Kutzner*, 2016 WL 9277319, at *10 (C.D. Cal. Aug. 24, 2016)

4  (even if rebuttal evidence were considered "new" evidence, the defendant "was given

5  a chance to respond to the evidence at the hearing"); *Smith v. Microsoft Corp.*, 2013

6  WL 6497073, at *2 (S.D. Cal. Dec. 10, 2013) ( "an opportunity for rebuttal need not

7  be in writing; rather, such opportunity might be the chance to orally rebut the new

8  evidence during a hearing on the issue").

9        Third, Airbnb's claim of prejudice is frivolous as to the three CDA-related

10  document requests because <u>Airbnb</u> has the burden of proving a likelihood of success

11  on its affirmative defense under the CDA.[5] *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d

12  840, 848 (N.D. Cal. 2012) ("The CDA is an affirmative defense."). Airbnb must prove

13  that it is not responsible, in whole or in part, for the alleged tortious conduct, i.e.,

14  unvetted Users being sent to Owners' properties in violation of Owners' prohibition

15  on short-term rentals. Airbnb's refusal to produce documents showing the extent to

16  which Airbnb is responsible for the listings deprives <u>Owners</u> of a meaningful ability to

17  fully address Airbnb's affirmative defense, not the other way around.

18        Finally, this Court is not <u>required</u> to allow Airbnb to conduct its own expedited

19  discovery even if the Court grants Owners' motion, contrary to Airbnb's claim.

20  (Opp'n at 6.) If Airbnb believes it needs discovery to oppose Owners' motion for

21  preliminary injunction, the proper course is to confer with Owners to obtain the

22  discovery Airbnb believes is necessary, relevant, and tailored to the preliminary

23  injunction issues and then, if necessary, file a motion with this Court. *See, e.g., Apple

24  Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1047 (N.D. Cal. 2011) (Samsung's

25

26  [5] *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007)
   ("Because the burdens at the preliminary injunction stage track the burdens at trial,

27  once the moving party has carried its burden of showing a likelihood of success on the
   merits, the burden shifts to the non-moving party to show a likelihood that its

28  affirmative defense will succeed.").

1    ability to obtain expedited discovery determined not by fact that Apple already

2    received expedited discovery, but by Samsung's <u>own</u> need for such discovery, which

3    was lacking). Given that Airbnb is now one week away from filing its opposition brief

4    and has neither approached Owners with its "anticipated" needs nor sought this

5    Court's assistance, Airbnb's claim for reciprocal discovery rings hollow.

6    **II.    AIRBNB'S PENDING MOTION TO DISMISS IS NO REASON TO**

7    **DENY EXPEDITED DISCOVERY**

8        Airbnb urges the Court to deny expedited discovery based on the CDA defense

9    advanced in Airbnb's motion to dismiss. (Opp'n at 7-9.) Airbnb's confidence in its

10   CDA defense (and other defenses) is unfounded. Far from a slam dunk, Airbnb's

11   CDA defense has proven to be a loser. *See Airbnb, Inc.*, 217 F. Supp. 3d at 1076

12   (denying Airbnb's argument that section 230(c) immunized Airbnb from liability for

13   providing booking services for certain unlawful listings). Indeed, Airbnb asserted an

14   <u>identical</u> CDA defense in Owners' parallel lawsuit in Florida state court. There, the

15   Florida court denied Airbnb's motion to dismiss on that basis. *See* Airbnb's Mot. to

16   Dismiss Pls.' 1st Am. Compl. at 16-20, *Bay Parc Plaza Apts., L.P. v. Airbnb, Inc.*, No.

17   2017-003624-CA-01 (Fla. Cir. Ct. Aug. 7, 2017) (attached as Ex. 2); Order on Defs.'

18   Mot. to Dismiss Pls.' 1st Am. Compl., *Bay Parc Plaza Apts., L.P. v. Airbnb, Inc.*, No.

19   2017-003624-CA-01 (Fla. Cir. Ct. Nov. 27, 2017) (attached as Ex. 3).

20       Contrary to Airbnb's claim, its assertion of a CDA defense does not alter the

21   normal presumption against a stay of discovery. "[T]here is no language in the CDA

22   which directs the Court to stay discovery in the event a motion to dismiss is brought,

23   nor is [such claim of] 'immunity' under the CDA the sort of 'immunity' that might

24   support a motion to stay." *E. Coast Test Prep, LLC v. Allnurses.com, Inc.*, 2016 WL

25   6997117, at *4 (D. Minn. Feb. 22, 2016). Congress could have included special

26   discovery rules in the CDA but chose not to. The cases Airbnb cites do <u>not</u> support an

27   automatic stay here. Some of those cases do not even address discovery stays, but

28   instead dismissed lawsuits that unquestionably sought to impose liability on a website

1  based solely on the defendant's status as a "publisher" or "speaker" of third-party

2  speech.[6] Airbnb's other cases are distinguishable because, unlike here, the claims at

3  issue on their face were subject to the CDA's "Good Samaritan" defense or discovery

4  would have had no impact on the court's analysis of that defense.[7]

5         In contrast, as set forth in the motion to dismiss briefing, Owners' claims are

6  not subject to the CDA's "Good Samaritan" defense. Far from the blanket immunity

7  Airbnb advances, the CDA provides a far "narrower defense," barring "only liability

8  that treats a website as a publisher or speaker of content provided by somebody else."

9  *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016). The title of section

10  230(c) confirms the narrow scope and purpose of the defense: to provide "Protection

11  for 'Good Samaritan' blocking and screening of offensive material." 47 U.S.C. §

12  230(c)(1). Section 230 was enacted in 1998 to overrule *Stratton Oakmont, Inc. v.*

13  *Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), which

14  imposed liability on a defendant for removing offensive and unlawful content from its

15  internet message board. H.R.Rep. No. 104–458 (1996), at 194 (Conf. Rep.), as

16  reprinted in 1996 U.S.C.C.A.N. 10 (section 230 was intended to overrule cases

17  "which have treated such providers and users as publishers or speakers of content that

18  is not their own because they have restricted access to objectionable material").

19  

20  [6] *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 257-58 (4th Cir.
    2009) (dismissing claims based on allegedly defamatory comments made by third

21  parties on website where the allegations of authorship were too vague to satisfy Rule
    8); *Doe v. Bates*, 2006 WL 3813758, at *10, *16, *20 (E.D. Tex. Dec. 27, 2006)

22  (dismissing claims where plaintiffs conducted discovery for six months and still
    sought to hold Yahoo liable for permitting third parties to post pornographic

23  photographs and not screening or blocking those posts).

    [7] *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419-20, 425 (1st Cir.

24  2007) (affirming dismissal and stay order where claims were based on defamatory
    postings on message board and plaintiff "has not pointed to any discovery that would

25  support a viable claim" that falls outside CDA immunity); *Onuoha v. Facebook, Inc.*,
    No. 5:16-cv-06440-EJD, ECF No. 35, at 1-2 (N.D. Cal. April 7, 2017) (finding

26  discovery was not necessary based on two-part stay test); *Ezra v. Am. Online Inc.*,
    1998 WL 896459, at *1 (D.N.M. July 16, 1998) (granting stay where plaintiff sued

27  Internet message board for posting defamatory comments); *Fields v. Twitter, Inc.*, No.
    3:16-cv-00213-WHO, ECF Nos. 21, 28 (N.D. Cal. Apr. 7, 2016) (granting stay where

28  the plaintiffs sued Internet platform for allowing posts by alleged members of ISIS).

Owners' claims are not based on Airbnb's publishing of listings by Owners' tenants or failure to remove content from its website. Rather, Owners' claims challenge Airbnb's own misconduct in soliciting, brokering, and profiting off infringement of Owners' private property, interference with Owners' contracts, trespassing on Owners' properties, aiding and abetting others' trespasses, and causing a nuisance. Airbnb's pending motion to dismiss provides no basis for denying limited expedited discovery here, particularly where the discovery is directly targeted at whether Airbnb can prove it does not contribute materially to the tortious conduct at issue. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) ("[A] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.").

## III.   THE REQUESTED DISCOVERY IS HIGHLY RELEVANT TO THE PRELIMINARY INJUNCTION DETERMINATION

Contrary to Airbnb's claims, Owners' discovery requests are narrowly tailored to obtain information essential to resolving Owners' preliminary injunction request.

### A.   The Transactional Data (Request No. 1) Is Relevant to Establishing Airbnb's Unlawful Conduct, Owners' Irreparable Harm, and Helps Refute Airbnb's Defense of "Reasonableness"

Owners seek Airbnb's rental transactions data showing the rentals of Owners' properties. Significantly, Airbnb identifies no burden in providing this information, tacitly conceding that Airbnb easily can run a spreadsheet report of rental transactions by address. Contrary to Airbnb's arguments (Opp'n at 9-12), this information is highly relevant to the preliminary injunction determination.

First, the requested information establishes Airbnb's violations of Owners' property and contractual rights—the central issue in this action. Airbnb has no response to Owners' obvious entitlement to present evidence regarding the specific violations that have occurred.

1    Second, by revealing the frequency and total number of Airbnb transactions at

2    Owners' properties, the transactional data will prove the nature and extent of Owners'

3    irreparable harm. Airbnb's argument that the number of transactions is irrelevant to

4    the irreparable harm inquiry misses the point. While Airbnb is correct that, under

5    *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436 (1982), and

6    similar authority, Airbnb's ongoing trespasses automatically establish irreparable

7    harm, Airbnb presumably will take a different position in its opposition to the

8    preliminary injunction. Unless Airbnb is willing to stipulate to a finding of irreparable

9    harm, Owners are entitled to gather and present evidence to support their claim.

10    In any event, Owners' irreparable harm is not limited to Airbnb's trespasses in

11    violation of Owners' real property rights, but also includes reputational harm, loss of

12    current and prospective residents, and the enormous distraction that Airbnb activity

13    imposes on Owners' employees. Although Airbnb suggests Owners must rely solely

14    on their internal information to establish such harm (Opp'n at 11), there is no

15    authority for that position.[8] In fact, only Airbnb—and not Owners—has access to the

16    transactional data showing the quantity of short-term rentals that Airbnb has brokered

17    at Owners' properties and the number of Users that Airbnb has sent to Owners'

18    properties. This information is key to understanding the full scope of harm suffered by

19    Owners and the likelihood and magnitude of future harm.[9]

20

21

22    [8] The cases cited by Airbnb stand for an entirely different proposition—that expedited discovery should be denied where, unlike here, the party seeking discovery already

23    has access to the documents it claims to need. *See Fuhu, Inc. v. Toys "R" US, Inc.*, 2012 WL 12870313, at *4 (S.D. Cal. Oct. 4, 2012); *SanDisk Corp. v. Audio MPEG,*

24    *Inc.*, 2007 WL 30598, at *6 (N.D. Cal. Jan 3, 2007).

    [9] The frequency and timing of past transactions is strongly probative of prospective

25    trends in Airbnb short-term rentals, which is directly relevant to the existence of irreparable harm. In his declaration in support of Owners' motion for preliminary

26    injunction, Aimco employee Matthew Holmes was able to infer the systematic and increasing number of Airbnb rentals from the increasing number of move-outs related

27    to unauthorized short-term rentals. (*See* Decl. of Matthew Holmes ¶¶ 16-20, ECF No. 23-95.) But Owners should be permitted to present direct evidence of Airbnb's actual

28    transactions at Owners' properties to support its showing of harm.

---

11

Similarly, only Airbnb has complete records revealing which of Owners' tenants are Hosts. Access to this information is the best way for Owners to cross-reference their own records to prove that problems at Owners' properties were caused by Airbnb Users and assess the likelihood and scope of future harm.

Third, the financial information requested by Owners—namely, the amount of fees paid by Airbnb's customers and collected by Airbnb—is essential to the Court's analysis as to whether Owners are likely to succeed on their claims for aiding and abetting trespass and violation of California's Business & Professions Code 17200 (the "UCL"). *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003) (holding that "financial gain" by the defendant is "evidence that the aider and abettor knew of and substantially assisted the primary violator's" tort). *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001) (whether a business practice is "unfair" under the UCL requires the court to weigh the "reasons, justifications, and motives of the alleged wrongdoer" against the challenged practice's "impact on its alleged victim").

Finally, the transactions data is necessary to refute Airbnb's defense that Owners' tortious-interference claim must fail because Owners' contractual prohibition of short-term rentals is unreasonable and unenforceable. (*See* Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss ("Mot. to Dismiss.") 6, ECF 16.) Although Owners disagree that Airbnb's reasonableness defense is legally viable, Owners are entitled to present a factual rebuttal of that defense as well. Data showing the number, frequency, and trends of short-term rentals and number of unvetted Users Airbnb has sent to Owners' properties is related to whether Owners are reasonable in refusing to allow their residential apartment buildings to be converted into hotels.

## B.    CDA-Related Discovery (Request Nos. 2-4) Is Directly Relevant to Whether Airbnb Materially Contributes to the Illegal Bookings

Airbnb does not dispute that it intends to oppose Owners' motion for preliminary injunction by arguing that Airbnb is immune under the CDA. Nor does

1   Airbnb dispute that Owners' second, third, and fourth discovery requests are narrowly

2   tailored to obtain documents relating to Airbnb's assistance and involvement in

3   creating, modifying, and improving Hosts' listings for Owners' properties. Instead,

4   Airbnb claims that such documents are irrelevant because the documents would not

5   help Owners refute Airbnb's CDA immunity defense. (Opp'n at 12.) Not only is

6   Airbn's relevance argument wrong, but Airbnb improperly devotes pages to rearguing

7   the merits of its CDA defense. (*Id*. at 12-16.)

8        Contrary to Airbnb's assertion, it is <u>Airbnb</u> that "fundamentally

9   misunderstand[s]" what it means to be an "information content provider." (*Id*. at 14.)

10  The question is whether Airbnb was "'responsible, in whole or in part, for the . . .

11  development of' the offending content," which occurs "if it contributes materially to

12  the alleged illegality of the conduct." *Roommates.com*, 521 F.3d at 1162, 1168

13  (quoting 47 § 230(f)(3)). Here, Airbnb takes an unreasonably narrow view of what

14  tortious conduct is at issue. What makes the listings unlawful is not the mere "decision

15  to list a unit at Aimco's properties in purported violation of the terms of a tenant's

16  lease," as Airbnb claims. (Opp'n at 14.) Rather, it is the fact that the listings lead to

17  unauthorized bookings of Owners' residential apartments, which in turn leads to

18  unidentified, unvetted, and unauthorized transient renters coming to Owners'

19  residential apartments to convert Owners' apartment homes into hotel rooms. These

20  short-term rentals strip Owners of their fundamental rights to control their own

21  properties, undermine the intended purpose of Owners' properties, cause disruption

22  and dissatisfaction to Owners' residents, pose significant safety concerns, and require

23  Owners to devote substantial resources to control their own properties. (*See* 1st Am.

24  Compl. ¶¶ 28-29, 27-43, ECF No. 1-1; Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 1-

25  4, 7-13, ECF No. 23.)

26        Airbnb's own statements—made both publicly and directly to Owners'

27  tenants—confirm that Airbnb takes (or offers to take) an active role in creating,

28  developing, and pricing Hosts' listings so that those listings get booked more often

13

1  and generate greater profits for Hosts <u>and</u> Airbnb, and that Airbnb does so despite

2  knowing that Owners prohibit those rentals. (*See, e.g.*, Decl. of Anthony Tanner Exs.

3  F-G, ECF No. 23-14, 23-15 (offering to help Owners' tenants "every step of the way,"

4  including providing "free professional photography" so that Owners' tenants will

5  "hear[] from guests in no time").) As Airbnb's Head of Content Strategy explains,

6  "[w]e want to <u>shape messaging from end-to-end</u>: we can introduce Airbnb to someone

7  who's never used it before, <u>guide every action they take in our app</u>, offer tips as

8  they're traveling or <u>hosting</u>, and provide clear solutions if they need help." (Decl. of

9  Michael T. Williams Ex. N, ECF No. 23-31 (emphasis added).) Without discovery,

10  Owners have no way to confirm the extent to which Airbnb has contributed materially

11  to the illegal bookings at Owners' properties and cannot refute Airbnb's assertion that

12  it is not an "information content provider" as effectively as Owners can refute that

13  argument with Airbnb's own documents that show otherwise. (Opp'n at 13.)

14       Relying primarily on a single footnote in the Ninth Circuit's *Roommates.Com*

15  decision, Airbnb argues that the CDA-related requests would show only that Airbnb

16  provides neutral tools of general applicability to all users. (Opp'n at 15.) But Airbnb

17  fails to cite the salient portion of that footnote, which states:

18       Requiring website owners to refrain from taking <u>affirmative acts that</u>

19       <u>are unlawful</u> does not strike us as an undue burden. These are, after

20       all, businesses that are being held responsible only for their own

21       conduct; there is no vicarious liability for the misconduct of their

22       customers. . . . Insofar, however, as a plaintiff would bring a claim

23       under state or federal law based on a website operator's <u>passive</u>

24       <u>acquiescence in the misconduct of its users</u>, the website operator

25       would likely be entitled to CDA immunity.

26  *Roommates.Com*, 521 F.3d at 1169 n.24. The problem for Airbnb here is that it does

27  not "passively acquiesce[]" in the unlawful bookings. To the contrary, with full

28  knowledge that Owners' prohibit short-term rentals at their properties, Airbnb calls

1  and emails Owners' tenants offering to help them complete and improve their listings

2  so that Airbnb's customers will book Owners' properties. To the extent that Airbnb

3  assists tenants in developing and promoting the unlawful listings—and only Airbnb is

4  in possession of documents to prove or disprove whether that is so—Airbnb is an

5  information content provider unprotected by the CDA.

6  **C.  Documents Showing Customer Complaint and Refund Requests**

7  **(Request No. 5) Are Relevant to Prove Harm to Airbnb's Consumers**

8  Similar to its argument on the CDA-related discovery, Airbnb's objection to

9  Owners' request for documents showing customer complaints and refund requests by

10  Airbnb Users who were refused entry to or removed from Owners' properties is

11  simply a retread of its motion to dismiss argument. Leaving aside that (incorrect)

12  merits argument (*see* Pls.' Opp'n to Defs.' Mot. to Dismiss 12-17, ECF No. 20),

13  Airbnb does not and cannot contest the relevance of this information.

14  Owners' UCL claim depends, in part, on a showing that consumers—including

15  Airbnb Users and Owners' full-time residents— are substantially harmed by Airbnb's

16  insistence on brokering short-term rentals at Owners' properties despite knowing that

17  those rentals are prohibited. *See Grace v. Apple Inc*., 2017 WL 3232464, at *14 (N.D.

18  Cal. July 28, 2017) (an "unfair" claim "requires the court to weigh the utility of the

19  defendant's conduct against the gravity of the harm to the alleged victim."). Because

20  Airbnb argues that its Users are not harmed by Airbnb's business practices (*see* Mot.

21  to Dismiss at 13), the requested data are relevant to Owners' likelihood of success on

22  the merits of their UCL claim. The requested documents will confirm instances of

23  harm to Users who booked illegal accommodations and subsequently were denied

24  access to or removed from Owners' properties.

25  **CONCLUSION**

26  For all these reasons, the Court should grant Owners' Motion for Limited

27  Expedited Discovery and order Airbnb to produce documents responsive to Owners'

28  expedited discovery requests within seven days of the Court's order.

1

2    Dated:  December 1, 2017          By:  *s/ Allison R. McLaughlin (pro hac vice)*

3                                          Allison R. McLaughlin (pro hac vice)
                                          Wheeler Trigg O'Donnell LLP
4
                                          Attorneys for Plaintiffs,
5                                          LA Park La Brea A LLC, LA Park La Brea B
                                          LLC, LA Park La Brea C LLC,
6                                          and AIMCO Venezia, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED EXPEDITED DISCOVERY
CASE NO. 2:17-cv-04885-DMG-AS

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on December 1, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*Allison R. McLaughlin*
Allison R. McLaughlin

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED EXPEDITED DISCOVERY
CASE NO. 2:17-cv-04885-DMG-AS