| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | JS-6 |
| CENTRAL DISTRICT OF CALIFORNIA | | |
| CIVIL MINUTES—GENERAL | | |

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 1 of 13 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs | Attorneys Present for Defendant |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [16, 17, 23, 41]**

**I.
PROCEDURAL BACKGROUND**

Currently before the Court is Defendants Airbnb, Inc.'s and Airbnb Payments, Inc.'s (collectively, "Airbnb") motion to dismiss ("MTD") [Doc. # 16] or, in the alternative, motion to strike ("MTS") [Doc. # 17].[1]  Plaintiffs La Park La Brea A LLC, La Park La Brea B LLC, La Park La Brea C LLC, and Aimco Venezia, LLC's (collectively, "Aimco") first amended putative class action complaint ("FAC") raises several state law causes of action related to short-term rentals of Aimco properties on Airbnb's website that purportedly violate Aimco's lease agreement with its tenants.  [Doc. # 1-1.]

Airbnb seeks dismissal of the FAC in its entirety on the following grounds:  (1) all claims are barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230 *et seq.*; and (2) the FAC fails to state a claim upon which relief may be granted.  In the alternative, Airbnb seeks to strike the FAC's class definition.[2]

While the MTD and MTS were pending, Aimco filed a motion for preliminary injunction and a motion for expedited discovery.  [Doc. # 23, 41.]

---

[1] Airbnb also requests that the Court take judicial notice of two certified transcripts of hearings in other cases.  [Doc. # 26.]  The first is a transcript of a case management conference in a parallel action that Aimco filed in Florida state court.  The second is a hearing transcript from Aimco's principal authority in support of one of its arguments.  The Court **DENIES as moot** Airbnb's request because the Court did not and need not rely on the requested documents in reaching its conclusion.

[2] Although Airbnb made separate motions to dismiss and strike, it states that its motion to strike is made "in the alternative" to its motion to dismiss.  MTS at 3 n.2.  All page references herein are to page numbers inserted in the header of the document at the time of filing in the CM/ECF filing system.

UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
|---|---|---|---|
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 2 of 13 |

For the reasons set forth below, the motion to dismiss is **GRANTED**. In light of the Court's ruling on the motion to dismiss, the Court **DENIES as moot** the motion to strike, motion for preliminary injunction, and motion to expedite discovery.

## II.
## FACTUAL BACKGROUND

**A.     Aimco**

Aimco owns and operates apartment buildings in Los Angeles County. FAC at ¶¶ 1–4, 24. It qualifies each prospective tenant through a lease application process and requires each approved tenant to execute a standard form lease. *Id.* at ¶ 26. Every tenant's lease includes an anti-subleasing clause.[3] *Id.* at ¶ 27. Aimco's standard form lease provides:

> **ASSIGNMENT.** Resident shall not sublet the Apartment or assign this Lease for any length of time, including, but not limited to, renting out the Apartment using a short term rental service such as Airbnb.com, VRBO.com or homeaway.com. Any purported assignment or sublet of this Lease or the Apartment Home without the prior written consent of Landlord is null and void.

*Id.* at ¶ 27.

**B.     Airbnb**

Airbnb provides an online marketplace for both short-term and long-term housing accommodations wherein "hosts" lease or sublease their living space to "guests." *Id.* at ¶¶ 5, 10–12. Prospective hosts must "sign up" with Airbnb and create a listing for the available space that then becomes publicly viewable to prospective guests. *Id.* at ¶ 12. The listings usually do not disclose hosts' real names or apartment numbers, which makes it hard for Aimco to enforce lessees' anti-assignment clause. *Id.* at ¶ 44.

Rather than charge fees for publishing hosts' listings, Airbnb collects commissions from both hosts and guests for booked accommodations. *Id.* at ¶¶ 13–14. To encourage and facilitate booking, Airbnb verifies personal profiles and listings; maintains a messaging system for hosts

---

[3] The FAC refers to the clause as both an "anti-subleasing" and "anti-assignment" clause. *See, e.g.*, FAC at ¶¶ 27 ("anti-subleasing clause"), 28 ("anti-assignment clause"). For the purpose of ruling on this motion, the Court makes no distinction between the two terms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
|---|---|---|---|
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 3 of 13 |

and guests; collects and transfers booking payments; offers free professional photography to hosts; calculates, collects, and remits local occupancy taxes on hosts' behalf in some jurisdictions; offers a "smart pricing" tool that automatically adjusts prices to match demand; provides a $1,000,000 "host guarantee" in the event of property damage; provides "Host Protection Insurance" for third-party claims against hosts and landlords for both property damage and bodily injury; and reimburses guests in the event of a "travel issue" such as hosts' failure to provide guests reasonable access to the accommodation. *Id.* at ¶¶ 15–20.

Airbnb generally refuses property owners' requests that Airbnb cease engaging in rental transactions with tenants whom Airbnb learns are violating their leases by engaging in short-term rentals. *Id.* at ¶ 23. "Aware of growing concerns among property owners and residential communities regarding illegal subleasing activity and disruptive guest behavior," Airbnb launched the "Friendly Buildings Program," which is directed at homeowner's associations ("HOAs") and owners of multi-unit residential buildings. *Id.* In exchange for being "friendly," *i.e.*, allowing rentals through Airbnb, the program provides participating HOAs and multi-unit property owners a commission on Airbnb activity within their communities, as well as tools to oversee and manage those rentals, none of which is available to non-participants. *Id.* at ¶ 23.

**C.     Subleasing Activities and Their Effects**

Short-term subleasing activities "brokered by Airbnb" have increased at Aimco's properties. *Id.* at ¶ 37. Aimco alleges that "Airbnb has brokered hundreds of unlawful subleases at [its properties] during the past several years." *Id.*

Aimco's tenants complain about unwanted noise, disturbances, property damage, and unspecified "other concerns" stemming from Airbnb guests, in breach of the Aimco lease. *Id.* at ¶ 28. As a result, Aimco incurs costs related to increased security patrols; evicting Airbnb guests, as well as tenants violating their leases by hosting through Airbnb; repairing property damage caused by Airbnb guests; providing customer service resolutions to tenants disturbed by Airbnb guests; and legal proceedings involving both Airbnb guests and tenants violating their leases by hosting through Airbnb. *Id.* at ¶ 29. Tenants frustrated with the Airbnb activity have left Aimco properties, and Aimco also alleges that Airbnb activities have caused Aimco and its properties "reputational harm." *See id.* at ¶ 43.

Because Airbnb listings provide host anonymity, Aimco contacted Airbnb to obtain information about how, through Airbnb's booking or payment processing services, it could prevent "unlawful subleasing" at Aimco's properties. *Id.* at ¶ 45. "Recognizing that policing buildings and evicting tenants for violating their leases by subletting through Airbnb 'is an

UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 4 of 13 |

expensive proposition,'" Airbnb responded with information about the Friendly Buildings Program. *Id.* at ¶ 46. Airbnb also advised that, even outside the Friendly Buildings Program, it could "definitely" help Aimco remove unwanted listings for Aimco properties. *Id.* at ¶ 47.

Aimco subsequently informed Airbnb that it was aware of several Airbnb listings violating its standard lease agreement and asked how to initiate the process for removing those listings and further precluding subleases breaching its lease agreements. *Id.* at ¶ 48. Airbnb requested, and Aimco provided, a copy of Aimco's lease agreement as well as copies of the pertinent listings and identification numbers. *Id.* at ¶¶ 48–49. Airbnb then "reversed course" and advised Aimco that it does not review lease agreements or mediate disputes between hosts and property owners regarding leases. *Id.* at ¶ 49.

Thereafter, Aimco notified Airbnb that any listings for its properties were in violation of Aimco's standard lease, requested that Airbnb cease and desist its "unlawful activities" and "tortious interference" with Aimco's lease agreements, and provided a list of every street address associated with Aimco's properties so that Airbnb could cease engaging in such rental transactions. *Id.* at ¶ 50. Airbnb reiterated that "[a]lthough [it is] unable to evaluate private contract terms and cannot arbitrate these disputes, [it] will share [Aimco's] letter with the user[s] responsible for the listing[s]," and stated that Airbnb is merely an "online platform" that "does not own, operate, manage or control accommodations" but "requires hosts to represent that they have all the rights to list their accommodations." *Id.* at ¶ 51.

Airbnb allegedly "continues to actively promote, participate in, and receive compensation for" subleasing of apartments at Aimco's properties despite "know[ing] that all hosts who rent [Aimco's] apartments are not authorized to sublet their apartments to Airbnb guests and do not have [Aimco's] permission to do so." *Id.* at ¶¶ 52, 54; *see also id.* at ¶ 59 ("[W]hen it learns that a host is not the property owner and does not have the property owner's permission to rent or sublet the property," Airbnb "continues to allow the rental listing to persist" and "continues to contract with hosts they know to be in violation of the host's lease agreement.").

### III.
### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 5 of 13 |

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014); *see also Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) ("Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . .'" (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004))). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Holmes*, 966 F. Supp. 2d at 930; *see also Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

## IV.
## DISCUSSION

**A.     Motion to Dismiss**

Airbnb sets forth several grounds for dismissal. The Court first addresses the contention that the CDA preempts Aimco's state law claims.

Under Section 230(c)(1) of the CDA, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230's preemption provision further states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). For the CDA to shield a party from liability, the party must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009).

| | | | |
|---|---|---|---|
| | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | | JS-6 |
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 6 of 13 |

Notably, "section 230(c)(1) precludes liability that treats a website as the publisher or speaker of information users provide on the website."[4] *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016). "This grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*) (quoting 47 U.S.C. § 230(f)(3)).

Aimco challenges the preemption defense, arguing that Airbnb is an information content provider and that the FAC does not seek to treat Airbnb as a publisher or speaker but to hold Airbnb liable for its own conduct. Aimco also argues that it would be improper for the Court to dismiss the action at this early stage of litigation.

### 1. Propriety of Dismissal of Pleadings

First, insofar as Aimco argues that it would be premature for the Court to decide the CDA preemption issue at this stage of the litigation, the Court rejects that argument. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (holding that district court properly granted motion to dismiss based on the CDA); *Barnes*, 570 F.3d at 1105–06 (same). Unlike the District Court in *Pirozzi v. Apple Inc.*, cited by Aimco, the Court here is not faced with such a "scant record" that it is "premature to decide whether the CDA bars Plaintiff's claims" based on the allegations in the FAC. 913 F. Supp. 2d 840, 849 (N.D. Cal. 2012).

### 2. Information Content Provider[5]

Aimco argues that Airbnb is an "information content provider" that "contributes materially to the alleged illegality of the conduct"—lease-violating short-term rentals—and thus falls outside of the CDA's grant of immunity. Opp'n at 32 (quoting *Roommates.Com*, 521 F.3d at 1168). In support, Aimco asserts that Airbnb's "conduct includes more than posting listings." *Id.*

---

[4] "The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party. Courts have recognized that 'many causes of action might be premised on the publication or speaking of what one might call "information content."'" *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) (quoting *Barnes*, 570 F.3d at 1101). "[C]ourts have invoked the prophylaxis of section 230(c)(1) in connection with a wide variety of causes of action." *Id.*

[5] The parties do not dispute that Airbnb is an interactive computer service.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KTI |

UNITED STATES DISTRICT COURT      JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
|---|---|---|---|
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 7 of 13 |

First, the mere fact that Airbnb's conduct "includes more than posting listings" does not *per se* mean that section 230 immunity is unavailable. Opp'n at 32. Immunity is not foreclosed simply because a website offers more than a "bulletin board" service, or an online site "on which Internet subscribers post comments and respond to comments posted by others." *Kimzey*, 836 F.3d at 1266 (quoting *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009)); *see, e.g.*, *Carafano v. Metrosplash.com. Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."). "While the majority of cases addressing CDA immunity may fit the bulletin board description, nothing in those cases or in the statutory language so limits the CDA's application." *Stoner v. eBay, Inc.*, No. 305666, 2000 WL 1705637, at *3 (Cal. Super. Ct. Nov. 1, 2000).

The conduct alleged in the FAC, to which Aimco points in support of its content provider argument, consists of (1) requiring prospective hosts to include specific information about the property and themselves; (2) collecting payments and commissions; and (3) offering ancillary services, such as user information verification, messaging systems, photography, local occupancy tax collection and remittance, a pricing tool, host insurance, and a guest refund policy. *See* FAC at ¶¶ 12–20. The FAC also alleges conduct that includes operation of the "Friendly Buildings Program" and continued rental transactions with tenants whom Airbnb learns are violating their lease agreements by engaging in short-term rentals. *Id.* at ¶ 23. Finally, the FAC alleges that Airbnb offers an autocomplete search function and complains to Aimco properties when Airbnb guests are denied access to such reserved properties. *Id.* at ¶¶ 54–56.

This conduct does not make Airbnb an information content provider. As stated above, an information content provider is statutorily defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). The Ninth Circuit has narrowly interpreted this definition of "development" to provide "immunity for passive conduits" and preclude such immunity for "co-developers" who do "not merely . . . augment[] the content generally, but . . . materially contribut[e] to [the website's] alleged unlawfulness." *Roommates.Com*, 521 F.3d at 1167–68; *see id.* at 1167 ("It's true that the broadest sense of the term 'develop' could include . . . just about any function performed by a website. But to read the term so broadly would defeat the purposes of section 230 by swallowing up every bit of the immunity that the section otherwise provides.").

Accordingly, requiring prospective hosts to include information such as home type, room type, location, description, name, email address, and phone number when creating listings does not "materially contribut[e] to [the] alleged unlawfulness" of the listings because it does not

UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 8 of 13 |

"contribute[] materially to the alleged *illegality of* the conduct," *i.e.*, the violation of the Aimco lease. *Roommates.Com*, 521 F.3d at 1168 (emphasis added). Similarly, offering ancillary services such as user information verification, messaging systems, photography, local occupancy tax collection and remittance, a pricing tool, host insurance, a guest refund policy, or an autocomplete search function does not materially contribute to the alleged unlawfulness. *See id.* at 1169 ("[P]roviding neutral tools to carry out what may be unlawful . . . does not amount to 'development' for purposes of the immunity exception."). Nor does operating the Friendly Buildings Program.

Here, what allegedly makes the listings "unlawful," "illegal," or "offending" is that they advertise rentals that violate Aimco's lease agreements. Airbnb hosts—not Airbnb—are responsible for providing the actual listing information. Airbnb "merely provide[s] a framework that could be utilized for proper or improper purposes." *Id.* at 1172. Thus, Airbnb "cannot be considered an 'information content provider' under the statute because no [listing] has any content until a user actively creates it." *Carafano*, 339 F.3d at 1124. "[T]he critical information was provided by a third party," and there is no indication that it was significantly developed or transformed by Airbnb. *Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1148 (D. Ariz. 2005).

Finally, liability based on "information content provider" status necessarily requires "information content."[6] Aimco does not explain how Airbnb's failure to cease engaging in rental transactions with tenants whom Airbnb learns are violating their lease agreements, or Airbnb's complaints to Aimco when Airbnb guests are denied access to Aimco's properties, transforms Airbnb into an information content provider. Aimco would be hard-pressed to do so.

Consequently, the Court concludes that Airbnb is not an information content provider under the CDA.

---

[6] Additionally, continued rental transactions with tenants whom Airbnb learns are violating their lease agreements does not disqualify Airbnb from Section 230 immunity. "[S]everal courts have held that immunity is not vitiated because a defendant fails to take action despite notice of the problematic content." *Black v. Google Inc.*, No. 10-02381 CW, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010), *aff'd*, 457 F. App'x 622 (9th Cir. 2011) (collecting cases); *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) (rejecting notice-based liability in the interactive computer service context); *Stoner*, 2000 WL 1705637 at *3 ("The courts have recognized that imposing liability based on notice of content in the interactive computer service context would create an incentive for providers to restrict speech and abstain from self-regulation, thereby defeating the purposes of section 230."). Here, as in *Black*, "Plaintiffs offer no persuasive argument that their theory presents an exception." *Black*, 2010 WL 3222147 at *3.

UNITED STATES DISTRICT COURT        JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
|---|---|---|---|
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 9 of 13 |

### 3. Treatment as Publisher or Speaker of User-Provided Information

The parties dispute the second and third elements of the test for CDA immunity. Airbnb argues that the FAC treats Airbnb as the publisher or speaker of information (Airbnb listings) that users (Airbnb hosts) provide on its website. *See* MTD at 32–34. Aimco counters that the FAC is not premised on the Airbnb listings, but on Airbnb's own misconduct—contracting with Aimco's tenants (or failing to refrain from contracting with Aimco's tenants) and processing payments for rentals of Aimco-owned apartments. Opp'n at 32–33; *see also, e.g.*, FAC at ¶ 63 ("Information posted by prospective hosts on Airbnb's website is not the basis for Airbnb's liability here. Plaintiffs do not seek to hold Airbnb liable as a publisher or speaker of any such information generated by third parties."). Aimco's argument fails, and its "creative pleading" does not place this case outside the CDA's purview. *Kimzey*, 836 F.3d at 1266.

Aimco bases its argument on Airbnb's profit from listings that violate Aimco's lease agreements. *See* Opp'n at 32 (listing alleged misconduct as "intentionally encouraging and profiting from breaches of Plaintiffs' leases, trespasses, and nuisance and interfering with Plaintiffs' and their tenants' contractual relationships"). This does not foreclose CDA protection. Courts have granted CDA protection to websites that process payments and transactions in connection with third-party listings, including Airbnb. In *Donaher, III v. Vannini*, for example, plaintiff property owners alleged that tenants violated their lease agreement by renting their property through Airbnb's website. No. CV-16-0213, 2017 WL 4518378 (Me. Super. Ct. Aug. 18, 2017). The plaintiffs' complaint alleged that co-defendant Airbnb "facilitate[d] 'the posting of rental opportunities at the host's property, by providing the means for guests to locate and book host properties, and by processing payments from guests to hosts, from which Airbnb derive[d] revenue.'" *Id.* at *1 (quoting the complaint). The Maine state court held that "the processing or receipt of payments associated with posts does not strip a provider or user of an interactive computer service of immunity under the CDA" and granted Airbnb's motion to dismiss. *Id.* at *3, *4.

In *Hill v. StubHub, Inc.*, upon which *Donaher* relied in part, purchasers brought an action against an online marketplace that acts as an intermediary between buyers and sellers of tickets to events. 219 N.C. App. 227, 229–30 (2012). Just as Airbnb charges a commission when a rental occurs, StubHub charges a commission when a sale occurs. *Id.* at 229. The *Hill* plaintiffs alleged that they purchased tickets sold unlawfully, in "excess of face value." *Id.* at 230. Noting that the website "assumed responsibility for handling the mechanics required to complete the transaction," the trial court determined that StubHub was not entitled to take advantage of section 230 immunity. *Id.* at 245–46. Reversing the trial court's decision on the basis that the website was "entitled to immunity," the appellate court held that the website's payment processing responsibilities were "irrelevant for purposes of determining the extent to which

Case 2:17-cv-04885-DMG-AS Document 55 Filed 12/29/17 Page 10 of 13 Page ID #:2505

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
|---|---|---|---|
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 10 of 13 |

Defendant was entitled to immunity" because the ticket seller using the website had complete control over the content at issue—the ticket price.[7] *Id.* at 245–46, 249.

Aimco cites two cases—*Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010), and *NPS LLC v. StubHub, Inc.*, No. 06-4874-BLS1, 2009 WL 995483, at *13 (Mass. Super. Jan. 26, 2009)—to argue that *Hill* is contrary to persuasive authority. *See* Opp'n at 33 n.10. Yet, Aimco fails to explain why these cases support its position, or to address the *Hill* Court's reason for declining to follow both cases. *See Hill*, 219 N.C. App. at 247 ("In [*NPS*], although denying that it had acted on the basis of an improper motive, the defendant 'essentially concede[d]' that it had knowingly induced season ticket holders to breach their contract with the plaintiff, a professional football team. Aside from the fact that the evidentiary and procedural context present in *NPS* is substantially different from that before the Court in this case, we simply do not find the reasoning employed by *NPS* persuasive, believe that it is inconsistent with the decisions concluding that knowledge of unlawful content does not strip a website of the immunity from liability granted under 47 U.S.C. § 230, and decline to follow it in deciding the present case."); *id.* at 247 n.4 ("[*Chicago v. StubHub*] has no real bearing upon the proper resolution of this case given that the issue before the Seventh Circuit in that case was the extent, if any, to which Defendant was required to remit certain taxes rather than the extent, if any, to which Defendant was liable for allegedly unlawful third party content.").

This Court agrees with *Hill*'s reasoning. Moreover, the "information content provider" prong of the CDA immunity analysis is irrelevant to the "publisher or speaker" prong. Assuming *arguendo* that it is relevant, the *NPS* Court's reliance on the existence of a genuine issue of material fact as to whether StubHub "encourage[d] others to violate" the law is contrary to this Circuit's CDA precedent. *NPS*, 2009 WL 995483 at *11. In the Ninth Circuit, "if the alleged content provider is not a creator of the challenged content, *it must have done more than merely 'encourage[d]'* the creation of the challenged conduct; the alleged provider must have *required* another to create that content." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015) (emphasis added) (discussing the Ninth Circuit's reasoning in *Roomates.com*).

Several other courts considering the issue at bar have come out the same way with respect to the CDA's coverage on analogous facts. *See, e.g.*, *Inman v. Technicolor USA, Inc.*, No. 11-666, 2011 WL 5829024 at *6–7 (W.D. Pa. Nov. 18, 2011) (CDA barred plaintiff's suit against defendant eBay relating to the purchase of defective vacuum tube products and parts from a third-party, despite plaintiff's attempt to hold eBay responsible for its "conduct" not its

---

[7] The appellate court also held that "knowledge of unlawful content does not strip a website of the immunity from liability granted under 47 U.S.C. § 230." *Id.* at 247.

UNITED STATES DISTRICT COURT **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 11 of 13 |

online "communications") (discussing and citing *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008); *Green v. Am. Online, Inc.*, 318 F.3d 465 (3d Cir. 2003); *Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735(RMB), 2009 WL 1704355 (S.D.N.Y. June 15, 2009); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002)); *Stoner*, 2000 WL 1705637, at *2 (rejecting plaintiff's argument that eBay's facilitation of third-party sales of sound recordings—which may not be lawfully sold— was independent conduct subject to the CDA's immunity exception, and noting specifically that eBay's advertising and commissions do not strip eBay of section 230 immunity).

Here, as in the above-cited cases, Airbnb hosts who use Airbnb's website have complete control over the content at issue—listing rentals in violation of Aimco's leases. *See* FAC at ¶ 12 (prospective hosts create the listing, including the location and description of the accommodations being offered to prospective guests). Thus, it is with Airbnb's publication of this content that Aimco takes issue. Aimco's "apparent[] hope[] to plead around the CDA to advance the same basic argument that the statute plainly bars[—]that [Defendant] published user-generated speech that was harmful to [Plaintiff]"—fails. *Kimzey*, 836 F.3d at 1266.[8]

### 4. *Airbnb, Inc. v. City and County of San Francisco*

One last point deserves discussion. Aimco relies almost entirely on *Airbnb, Inc. v. City and County of San Francisco*, 217 F. Supp. 3d 1066 (N.D. Cal. 2016), in urging the Court to find that section 230 immunity does not apply here. That case is readily distinguishable.

There, Airbnb challenged San Francisco's ordinance that made it a misdemeanor to "provide, and collect a fee for, [b]ooking [s]ervices in connection with short-term rentals for [r]esidential [u]nits" within San Francisco city and county when those residential units were not registered with the San Francisco Office of Short-Term Residential Rental Administration.[9] *Airbnb*, 217 F. Supp. 3d at 1071. Airbnb sought to enjoin the ordinance and argued in part that section 230 of the CDA preempted the law because, according to Airbnb, the ordinance

---

[8] Tellingly, in Aimco's original complaint it was the "listings that appeared on Airbnb's platform" that were in violation of Aimco's lease agreement. Exhibit C to Notice of Removal at ¶ 28 ("Original Complaint") [Doc. # 1-3]; *see also id.* at ¶ 51 ("listing apartments" was a "wrongful act[] that disrupted the relationship between [Aimco] and their tenants"); *id.* at ¶ 65 (requesting a declaration that "Airbnb shall not participate in, or assist Plaintiffs' tenants . . . in subletting apartments in [Aimco's] Properties," which implicitly includes listing Aimco-owned apartments). Only when Aimco became aware of the CDA did it amend its complaint to shift its focus to payment and transaction processing. *Compare* Original Compl. (silent regarding the CDA), *with* FAC at ¶¶ 62–67 (discussing the CDA).

[9] San Francisco enacted the ordinance out of concerns over the loss of affordable permanent housing due, in part, to increased tourist or transient rentals. *Airbnb*, 217 F. Supp. 3d at 1070.

---

CV-90 **CIVIL MINUTES—GENERAL** Initials of Deputy Clerk KTI

| | | | |
|---|---|---|---|
| | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | | JS-6 |
| Case No. | **CV 17-4885 DMG (AS)** | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 12 of 13 |

"'inherently require[s] the court to treat' [it] as the 'publisher or speaker' of content provided by another." *Id.* at 1072 (quoting *Barnes*, 570 F.3d at 1102); *see id.* at 1072 ("In [Airbnb's] view, the threat of a criminal penalty for providing and receiving a fee for [b]ooking [s]ervices for an unregistered unit requires that [it] actively monitor and police listings by third parties to verify registration," which "is tantamount to treating [Airbnb] as a publisher because it involves the traditional publication functions of 'reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.'" (quoting *Roomates.com*, 521 F.3d at 1170–71)).

The Court rejected Airbnb's argument, concluding that the ordinance "does not regulate what can or cannot be said or posted in the listings," "creates no obligation on [Airbnb's] part to monitor, edit, withdraw or block the content supplied by hosts," and "holds [Airbnb] liable only for [its] own conduct, namely for providing, and collecting a fee for, [b]ooking [s]ervices in connection with an unregistered unit." *Id.* at 1072–73; *see also id.* at 1073–74 ("[Airbnb] [is] perfectly free to publish any listing [it] get[s] from a host and to collect fees for doing so— whether the listing is lawfully registered or not—without threat of prosecution or penalty under the Ordinance. . . . The challenged Ordinance regulates [Airbnb's] own conduct as [a] [b]ooking [s]ervice provider[] and cares not a whit about what is or is not featured on [its] website[].").

Here, by contrast, Airbnb's website features are central to Aimco's claims, as this Order makes clear. *See also* FAC at ¶¶ 48-51 (To prevent unauthorized subleases, Aimco contacted Airbnb about *removing listings* for Aimco-owned properties, and when Aimco did not do so, Aimco sued to prevent the unauthorized subleases.), 59 (alleging that when Airbnb learns a host is not a property owner, Airbnb, *inter alia*, "continues to allow the listing to persist"). As the *Airbnb* Court explained, the correct test under section 230 "is not whether a challenged activity merely bears some connection to online content" but whether the claim "'inherently requires the court to treat' the 'interactive computer service' as a publisher or speaker of information provided by another." 217 F. Supp. 3d at 1074 (quoting *Barnes*, 570 F.3d 1102. Here, Aimco's claims do so require.

Given this analysis, as well as Congress' goal of "promot[ing] the development of e-commerce," the Court concludes that the CDA's section 230 immunity preempts Aimco's claims as a matter of law. *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). The Court therefore must grant the MTD.

B.     **Motion to Strike**

Given the Court's ruling on the MTD, Airbnb's request to strike the class definition in the FAC is **DENIED as moot**.

UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-4885 DMG (AS) | Date | December 29, 2017 |
| Title | *La Park La Brea A LLC, et al. v. Airbnb, Inc., et al.* | Page | 13 of 13 |

## V.
## CONCLUSION

      For the foregoing reasons, the Court **GRANTS with prejudice** Airbnb's motion to dismiss [Doc. # 16]. Airbnb's motion to strike [Doc. # 17] is **DENIED as moot**. The pending motions for preliminary injunction [Doc. # 23] and expedited discovery [Doc. # 41] are also **DENIED as moot**.

**IT IS SO ORDERED.**